# EXHIBIT A

March 30, 2023

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov



**RE:   FOIA Request, Electronic Legal Research Media to
        Immigration and Customs Enforcement (ICE)**

*FEE WAIVER REQUESTED*

*SUBMITTED VIA EMAIL AND U.S.P.S.*

Dear Freedom of Information Act Officer:

The American Civil Liberties Union (ACLU) submits this Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*.**, request for records related
to electronic legal research media** provided by Immigration and Customs
Enforcement (ICE) Enforcement and Removal Operations (ERO) to people held
in ICE detention facilities. The ACLU also requests a fee waiver, pursuant to 5
U.S.C. § 552 (a)(4)(A)(iii). The justification for the fee waiver is set out in detail
following the request.

## I.      Background

On a daily basis, ICE detains over 24,000 people in detention centers
nationwide. [1] On average, only 14 percent of people detained in ICE custody are
represented by an attorney in their immigration proceedings.[2] Although
immigrants have a right to counsel in immigration proceedings, courts have not yet
recognized a right to government-appointed counsel as there is in the criminal
legal system.[3] Without legal counsel, detained people are left to argue their cases
against government lawyers, with limited knowledge of the immigration laws. For
this reason, access to legal resources, including a law library, is even more critical
in the absence of counsel.

ICE detention standards require facilities to ensure detainees access to
comprehensive legal materials, including an electronic law library, to protect their

rights. Facilities have a responsibility to provide a "properly equipped law library" which may be available in electronic format.[4] Because paper versions of legal materials are now optional and all facilities must have an electronic version, either on a CD-ROM or external hard drive, we request the electronic version of legal materials distributed to detention facilities for use by detained people in facility law libraries.

ICE holds immigrants at approximately 200 detention facilities in the United States, all of which are subject to the agency's detention standards.[5] A detention facility may be operated by National Detention Standards (NDS), 2008 Performance-Based National Detention Standards (PBNDS 2008), Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011), ICE National Detention Standards 2019 (NDS 2019), or Family Residential Standards revised in 2020 (FRS 2020). The five standards generally require detention centers to provide detainees access to law libraries for at least five hours per week, equipped with computers, printers, and photocopiers.[6] Detention facilities provide electronically available law library materials, which "may include CD-ROMs or External Hard Drives developed by legal research vendors utilized by ICE."[7] Facilities governed by PBNDS 2011 that utilize electronic law libraries are required to provide the materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities."[8] ICE's detention standards require facilities to update, maintain, inspect, and replace the required legal materials on a routine basis.[9]



In light of the significant number of detained people without representation, the requested records will inform the public of the quality and availability of legal materials available to people held in ICE detention facilities. Insufficient information is publicly available regarding  the issue in this Request, so the records sought are certain to contribute  significantly to the public's understanding of ICE's provision of electronic legal materials in detention facilities.

## Definitions

For purposes of this request, the terms listed below are defined as follows:

"DETENTION STANDARDS" means applicable standards to establish consistent conditions of confinement, program operations, and management expectations, and which prescribe expected outcomes and expected practices required to achieve them at ICE detention facilities, including the National Detention Standards (NDS),[10] 2008 Performance-Based National Detention Standards (PBNDS 2008),[11] Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011),[12] National Detention Standards 2019 (NDS 2019),[13] or Family Residential Standards, revised in 2020 (FRS 2020).[14]

"ELECTRONIC LAW LIBRARY" means all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries. Electronic law library materials may include, but are not limited to, materials available on CD-ROMs or External Hard Drives, materials developed by legal research vendors such as Lexis Nexis, and/or materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities" and "Appendix 6.3.B: Optional Legal Reference Materials."

"SUPPORTING MATERIALS" means any usage guides, instructions on the basic use of the system, any accompanying written training or reference materials, and/or any other supporting materials supplied by ICE to immigration detention facilities.



"DHS" means the Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

"DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

"ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

"IMMIGRATION DETENTION FACILITY" means Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more.

"THIRD-PARTY CONTRACTOR" means any entity that provides services or personnel to immigration detention facilities.

**Requested Records**

The ACLU seeks the release of the following records, dated March 30, 2023, to the present. Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

1. Electronic Law Library materials provided at any Immigration Detention Facility;
2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility;
3. Any document related to software requirements for use of Electronic Law Library materials.



With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided via mail in their **native file format**, including CD-ROMs or External Hard Drives as described in, for example, FRS 2020, PBNDS 2011 – Revisions 2016, and NDS 2019.[15]

Notably, the Electronic Freedom of Information Act Amendments of 1996 requires federal agencies to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format" and to "make reasonable effort to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(B) and (C); *see also* Pub.L. No. 104-231 (HR 3802). The requested electronic records are reasonably and readily reproducible, as ICE reproduces these materials CD-ROM or external hard drives for distribution to immigration detention facilities. *TPS, Inc. v. U.S. Dept. of Defense*, 330 F.3d 1191, 1192 (9th. Cir. 2003); *see also Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 36 (D.D.C. 2014) (noting that "whenever agency already maintains a record in more than one form or format, the requester can choose the one in which it will be disclosed").

**Fee Waiver Request**

The ACLU requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. The ACLU also requests a waiver or reduction of fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

1. *Disclosure is in the public interest as it is likely to contribute*

> *significantly to the public's understanding of access to legal*
> *resources in detention centers and its impact on immigration court*
> *proceedings and backlog.*

ICE Detention Standards require that detainees are provided at least five hours of access per week to a detention facility law library.[16] The quality of legal materials provided to detained people in ICE custody, particularly those without counsel, may often determine the outcome of a legal case.

The issue of legal access in ICE detention centers has garnered significant public interest. Congress has expressed concern about access to counsel issues and has directed ICE to facilitate the improved communication between pro bono providers and detained people.[17] For example, Congress recently authorized an appropriation of ten million dollars to the Department of Homeland Security to improve legal resources at ICE detention centers, including improved law libraries and legal materials.[18]



Concern over access to legal resources and protecting constitutional rights of detained people remains an ongoing problem. In 2017, the Southern Poverty Law Center, sent a letter to ICE officials highlighting detainees' lack of regular meaningful access to law libraries and a violation of due process rights.[19] An October 29, 2021 letter to ICE from a coalition of 88 immigrants' rights advocates lists the multiple barriers faced by counsel to have effective communication with their clients which hinders the constitutional rights of detained people.[20] The barriers listed in that letter are still persistent based on a recent research report on barriers to access to counsel published by the ACLU.[21]

Given the ongoing barriers to legal access and representation, the need for a better understanding of ICE detention electronic law library materials is a significant public interest. These materials represent possibly the only and last resort for a majority of detained people to exercise their legal rights. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of the available legal resources to detained people that ensure their right to due process and increase court efficiency.

### 2. Disclosure is not primarily in the commercial interest of the ACLU.

Second, the ACLU is not filing this request to further a commercial interest. The ACLU is a 501(c)(3) nonprofit organization and therefore has no commercial interest. The ACLU intends to make any relevant information obtained through this FOIA available to the public. *See* 6 C.F.R. § 5.11(k)(1)(ii). The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee.

The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU website also includes many features on information obtained through FOIA requests. For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.



The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, in February 2017 the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program. The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the ACLU plans to disseminate the information disclosed as a result of this Request to the public at no cost.

    1.   *The ACLU also qualifies for a fee waiver because it is representative of the news media and the records are not sought for commercial use.*

The ACLU is also entitled to a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. For example, the ACLU regularly publishes *ACLU Magazine* that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 950,000 households. The ACLU

also publishes regular updates and alerts via email to approximately four million subscribers (both ACLU members and nonmembers). These updates are additionally broadcast to 5.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through our FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests. Similarly, ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.



The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.

Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's are "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[22]

As a representative of the news media, the ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media." A fee waiver would fulfill Congress's legislative intent in amending FOIA.[23] Additionally, on account of these factors, the ACLU has not been charged fees associated with responding to FOIA requests on numerous occasions.[24]

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the requester, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide me with prior notice so that we can discuss arrangements.

* * * * *

Thank you for your prompt attention to this Request. We look forward to your reply to this Request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i), or a written notice of an additional ten (10) business if there is an unusual circumstance pursuant to 5 U.S.C § 552(a)(6)(B)(i).

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees.

Please call Marisol Dominguez-Ruiz at 202-393-4930 or email at mdominguez-ruiz@aclu.org if you have any questions or wish to obtain further information about the nature of the records in which we are interested. Please furnish the applicable records via email (mdominguez-ruiz@aclu.org).

If the records must be sent via U.S. Mail, please send to the following address. Our offices are not fully reopened due to the pandemic; if any responsive records are sent by U.S. Mail, please call or email:

Marisol Dominguez-Ruiz
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111

Sincerely yours,

Marisol Dominguez-Ruiz                  Eunice Cho
Justice Catalyst Fellow                  Sr. Staff Attorney
ACLU National Prison Project             ACLU National Prison Project

ACLU

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

[1] *See* Transactional Records Access Clearinghouse (TRAC), Syracuse University, *Immigration: Quick Facts*, https://trac.syr.edu/immigration/quickfacts/ (last updated Feb. 26, 2023).
[2] *See* American Immigration Council, *Special Report: Access to Counsel in Immigration Court*, 4-5 (Sept. 2016) access_to_counsel_in_immigration_court.pdf (americanimmigrationcouncil.org).
[3] *See* 8 U.S.C.A. § 1362 (provides the right to counsel in any removal proceedings before an immigration judge); U.S.C.A § 1229a(b)(4)(A) (providing that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel" in removal proceedings); *see also Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (court points to Congress's recognition of right to counsel in removal proceedings grounded in "the Fifth Amendment guarantee of due process").
[4] *See* ICE, National Detention Standards 2000, *Access to Legal Material*, 1-2 (Sept. 20, 2000), https://www.ice.gov/doclib/dro/detention-standards/pdf/legal.pdf ("facility shall provide a law library" which "shall contain the materials listed in Attachment A ["List of Legal Reference Materials for Detention Facilities"]") [hereinafter "ICE, *NDS 2000*"]; ICE, Performance-Based National Detention Standards, *Law Libraries and Legal Material*, 2-4 (Dec. 2, 2008), https://www.ice.gov/doclib/dro/detention_standards/pdf/law_libraries_and_legal_material.pdf ("facility shall provide a properly equipped law library" and "may substitute the Lexis/Nexis publications on CDROM) [hereinafter "ICE, *PBNDS 2008*"]; ICE, Performance-Based National Detention Standards 2011, *6.3 Law Libraries and Legal Material*, 422-23 (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf ("facility shall provide a properly equipped law library" and "[r]regardless of whether paper versions are provided, facilities must make available in the law library any electronic media provided by ICE/ERO…may include CD-ROMs OR External Hard Drives.") [hereinafter "ICE, *PBNDS 2011*"]; ICE, National Detention Standards 2019, *Standard 6.3 Law Libraries and Legal Materials*, 185-86 (Revised 2019), https://www.ice.gov/doclib/detention-standards/2019/6_3.pdf ("facility shall provide a law library" and "ICE/ERO shall provide each facility an electronic version of required ICE/ERO law library reference materials") [hereinafter "ICE, *NDS 2019*"]; ICE, Family Residential Standards, *6.3 Law Libraries and Legal Material*, 3 (revised 2020), https://www.ice.gov/doclib/frs/2020/6.3_LawLibrariesLegalMaterial.pdf ("Centers may make available in the law library the LexisNexis CD-ROM (or the ICE/ERO-approved equivalent) provided by ICE/ERO containing the required publications") [hereinafter, "ICE, *FRS 2020*"].
[5] *See*, ICE, ERO Custody Management Division, *List of ICE Dedicated and Non-Dedicated Facilities*, https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx (last updated Oct. 11, 2022).
[6] *See* ICE, *NDS 2000*, *supra* note 4, at 1,3 ("[t]he law library shall provide an adequate number of typewriters and/or computers" and detainees "shall be permitted to use the law library for a minimum of five (5) hours per week"); ICE, *PBNDS 2008*, *supra* note 4, at 3 ("[t]he law library shall provide an adequate number of computers with printers, access to one or more photocopiers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[t]he law library shall have an adequate number of computers and printers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *NDS 2019*, *supra* note 4, at 185-86 (the law library must be equipped with an adequate number of computers, a printer, a copier, and other writing supplies and each detainee must have access to use the law library for a minimum of five hours per week); ICE, *FRS 2020*, *supra* note 4, at 3 (the law library "will have an adequate number of computers, printers" and "[e]ach resident will be permitted to use the law library for a minimum of 10 hours per week").
[7] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423.
[8] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[e]ach law library shall contain the materials listed in "Appendix 6.3.A.: List of Legal Reference Materials for Detention Facilities); ICE, *Legal Access in Detention At A Glance*, 2 (Aug. 2021), https://www.ice.gov/doclib/detention/LegalAccessAtAGlance.pdf (citing ICE, *PBNDS 2011* Appendix 6.3.A. for list of legal materials available in law library).
[9] *See* ICE, *NDS 2000*, *supra* note 4, at 3 (requires the facility to "designate an employee with responsibility for updating legal materials, inspecting them weekly, maintaining them in good

condition, and replacing them promptly as needed"); ICE, *PBNDS 2008*, *supra* note 4, at 3 (requires "a facility law library coordinator to be responsible for updating legal materials, inspecting them weekly, maintaining them in good condition and replacing them promptly as needed"); ICE, *PBNDS 2011*, *supra* note 4, at 424 ("a facility law library coordinator to be responsible for inspecting legal materials weekly, updating them, maintaining them in good condition and replacing them promptly as needed"); ICE, *NDS 2019*, *supra* note 4, at 186 ("ICE/ERO will provide updated electronic materials to facilities on a regular basis" and an employee is responsible for "updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *FRS 2020*, *supra* note 4, at 4 (a "Center Law Library Coordinator" is "responsible for inspecting legal materials weekly, updating them, maintaining them in good condition, and replacing them promptly as needed").



[10] *See* ICE, *2000 National Detention Standards for Non-Dedicated Facilities*, https://www.ice.gov/detain/detention-management/2000.

[11] *See* ICE, *2008 Operations Manual ICE Performance-Based National Detention Standards*, https://www.ice.gov/detain/detention-management/2008.

[12] *See* ICE, *Performance-Based National Detention Standards 2011* (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[13] *See* ICE, *National Detention Standards for Non-Dedicated Facilities* (revised 2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf.

[14] *See* ICE, *Family Residential Standards* (revised 2020), https://www.ice.gov/doclib/frs/2020/2020family-residential-standards.pdf.

[15] *See also* 5 U.S.C. § 552(a)(3)(C) (requiring the agency to make reasonable efforts to search for the records in electronic form or format).

[16] *See supra* note 6.

[17] *See* H.R. Rep. No. 116-458, at 9 (2021) and H.R. Rep. No. 11-9, at 480 (2019).

[18] *See* 168 Cong. Rec. 198-11, S8562 (daily ed. Dec. 20, 2022) (explanatory statement by Mr. Leahy, Chair of the Sen. Comm. On Appropriations, regarding H.R. 2617, Consolidated Appropriations Act, 2023).

[19] *See* Letter from Eunice Cho, Staff Attorney at Southern Poverty Law Center, and Ericka Curran, Clinical Professor at Florida Coastal School of Law, to ICE and Folkston ICE Processing Center (Aug. 22, 2017), folkston_law_library_letter_2017-8-22.pdf (splcenter.org).

[20] *See* ACLU, *Coalition Letter to DHS and ICE on Access to Counsel in Immigration Detention* (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

[21] *See* Aditi Shah and Eunice Hyunhye Cho, ACLU Research Report, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (2022), https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers.

[22] Courts have found these organizations to be "representatives of the news media" even  though they engage in litigation and lobbying activities beyond their dissemination of information  and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[23] *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requestors.'") (citation omitted); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) ("[FOIA's] purpose . . . is to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers.") (internal quotation marks and citation omitted).

[24] For example, in August 2016, the ICE FOIA Office and DHS Privacy Office both granted  fee waivers to the ACLU for a FOIA request seeking a DHS OIG super-memorandum and ICE's response to that memorandum. Similarly, in March 2016, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about selected deaths in detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office. In July 2015, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA

request seeking records about the use of segregation in ICE detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office.



# EXHIBIT B

| **From:** | Marisol Dominguez-Ruiz |
| **To:** | foia@hq.dhs.gov |
| **Cc:** | Eunice Cho |
| **Subject:** | RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE) |
| **Date:** | Friday, April 28, 2023 7:56:00 AM |
| **Attachments:** | 3.30.2023 ELL FOIA.pdf |
| | USPS Tracking Senior Director of FOIA Operations - 04.05.2023.png |
| | image003.png |
| | image004.png |

Dear DHS Freedom of Information Act Officer:

I am writing to inquire about the FOIA request sent on March 30, 2023 via email and United States Postal Service ("USPS") Priority Certified Mail. The USPS tracking system confirms the FOIA request was received at your office on April 5, 2023. *See* attachment. However, we have not received confirmation of receipt, a case file number associated with our request, or response to the request.

We request prompt confirmation of receipt, the FOIA  case tracking number for the request and the agency's response pursuant to 5 U.S.C. § 552(a)(6)(B)(i).

Thanks for your assistance with this matter.

Sincerely,
Mari Dominguez-Ruiz
Pronouns: she, her

Justice Catalyst Fellow, National Prison Project
American Civil Liberties Union
915 15th St. NW, Washington, DC 20005
mdominguez-ruiz@aclu.org
aclu.org 



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

**From:** Marisol Dominguez-Ruiz
**Sent:** Thursday, March 30, 2023 9:10 AM
**To:** ICE-FOIA@dhs.gov; foia@hq.dhs.gov
**Cc:** Eunice Cho <ECho@aclu.org>
**Subject:** RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)

March 30, 2023

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office

500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov

RE:   **FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)**

*FEE WAIVER REQUESTED*

*SUBMITTED VIA EMAIL AND U.S.P.S.*

Dear Freedom of Information Act Officer:

The American Civil Liberties Union (ACLU) submits this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*., **request for records related to electronic legal research media** provided by Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) to people held in ICE detention facilities. The ACLU also requests a fee waiver, pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii). The justification for the fee waiver is set out in detail following the request.

## I.   Background

On a daily basis, ICE detains over 24,000 people in detention centers nationwide. [i] On average, only 14 percent of people detained in ICE custody are represented by an attorney in their immigration proceedings. [ii] Although immigrants have a right to counsel in immigration proceedings, courts have not yet recognized a right to government-appointed counsel as there is in the criminal legal system. [iii] Without legal counsel, detained people are left to argue their cases against government lawyers, with limited knowledge of the immigration laws. For this reason, access to legal resources, including a law library, is even more critical in the absence of counsel.

ICE detention standards require facilities to ensure detainees access to comprehensive legal materials, including an electronic law library, to protect their rights. Facilities have a responsibility to provide a "properly equipped law library" which may be available in electronic format. [iv] Because paper versions of legal materials are now optional and all facilities must have an electronic version, either on a CD-ROM or external hard drive, we request the electronic version of legal materials distributed to detention facilities for use by detained people in facility law libraries.

ICE holds immigrants at approximately 200 detention facilities in the United States, all of which are subject to the agency's detention standards. [v] A detention facility may be operated

by National Detention Standards (NDS), 2008 Performance-Based National Detention Standards (PBNDS 2008), Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011), ICE National Detention Standards 2019 (NDS 2019), or Family Residential Standards revised in 2020 (FRS 2020). The five standards generally require detention centers to provide detainees access to law libraries for at least five hours per week, equipped with computers, printers, and photocopiers.[vi] Detention facilities provide electronically available law library materials, which "may include CD-ROMs or External Hard Drives developed by legal research vendors utilized by ICE."[vii] Facilities governed by PBNDS 2011 that utilize electronic law libraries are required to provide the materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities."[viii] ICE's detention standards require facilities to update, maintain, inspect, and replace the required legal materials on a routine basis.[ix]

In light of the significant number of detained people without representation, the requested records will inform the public of the quality and availability of legal materials available to people held in ICE detention facilities. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of ICE's provision of electronic legal materials in detention facilities.

## Definitions

For purposes of this request, the terms listed below are defined as follows:

"DETENTION STANDARDS" means applicable standards to establish consistent conditions of confinement, program operations, and management expectations, and which prescribe expected outcomes and expected practices required to achieve them at ICE detention facilities, including the National Detention Standards (NDS),[x] 2008 Performance-Based National Detention Standards (PBNDS 2008),[xi] Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011),[xii] National Detention Standards 2019 (NDS 2019),[xiii] or Family Residential Standards, revised in 2020 (FRS 2020).[xiv]

"ELECTRONIC LAW LIBRARY" means all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries. Electronic law library materials may include, but are not limited to, materials available on CD-ROMs or External Hard Drives, materials developed by legal research vendors such as Lexis Nexis, and/or materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities" and "Appendix 6.3.B: Optional Legal Reference Materials."

"SUPPORTING MATERIALS" means any usage guides, instructions on the basic use of the system, any accompanying written training or reference materials, and/or any other supporting materials supplied by ICE to immigration detention facilities.

"DHS" means the Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

"DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil

Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

"ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

"IMMIGRATION DETENTION FACILITY" means Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more.

"THIRD-PARTY CONTRACTOR" means any entity that provides services or personnel to immigration detention facilities.

### Requested Records

The ACLU seeks the release of the following records, dated March 30, 2023, to the present. Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

1. Electronic Law Library materials provided at any Immigration Detention Facility;
2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility;
3. Any document related to software requirements for use of Electronic Law Library materials.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided via mail in their **native file format**, including CD-ROMs or External Hard Drives as described in, for example, FRS 2020, PBNDS 2011 – Revisions 2016, and NDS 2019.[xv]

Notably, the Electronic Freedom of Information Act Amendments of 1996 requires federal agencies to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format" and to "make reasonable effort to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(B) and (C); *see also* Pub.L. No. 104-231 (HR 3802). The requested electronic records are reasonably and readily reproducible, as ICE reproduces these materials CD-ROM or external hard drives for distribution to immigration detention facilities. *TPS, Inc. v. U.S. Dept. of Defense*, 330

F.3d 1191, 1192 (9th. Cir. 2003); *see also Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 36 (D.D.C. 2014) (noting that "whenever agency already maintains a record in more than one form or format, the requester can choose the one in which it will be disclosed").

**Fee Waiver Request**

The ACLU requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. The ACLU also requests a waiver or reduction of fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (II).

1. *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of access to legal resources in detention centers and its impact on immigration court proceedings and backlog.*

ICE Detention Standards require that detainees are provided at least five hours of access per week to a detention facility law library.[xvi] The quality of legal materials provided to detained people in ICE custody, particularly those without counsel, may often determine the outcome of a legal case.

The issue of legal access in ICE detention centers has garnered significant public interest. Congress has expressed concern about access to counsel issues and has directed ICE to facilitate the improved communication between pro bono providers and detained people.[xvii] For example, Congress recently authorized an appropriation of ten million dollars to the Department of Homeland Security to improve legal resources at ICE detention centers, including improved law libraries and legal materials.[xviii]

Concern over access to legal resources and protecting constitutional rights of detained people remains an ongoing problem. In 2017, the Southern Poverty Law Center, sent a letter to ICE officials highlighting detainees' lack of regular meaningful access to law libraries and a violation of due process rights.[xix] An October 29, 2021 letter to ICE from a coalition of 88 immigrants' rights advocates lists the multiple barriers faced by counsel to have effective communication with their clients which hinders the constitutional rights of detained people.[xx] The barriers listed in that letter are still persistent based on a recent research report on barriers to access to counsel published by the ACLU.[xxi]

Given the ongoing barriers to legal access and representation, the need for a better understanding of ICE detention electronic law library materials is a significant public interest. These materials represent possibly the only and last resort for a majority of detained people to exercise their legal rights. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of the available legal resources to detained people that ensure their right to due process and increase court efficiency.

2. *Disclosure is not primarily in the commercial interest of the ACLU.*

Second, the ACLU is not filing this request to further a commercial interest. The ACLU is a 501(c)(3) nonprofit organization and therefore has no commercial interest. The ACLU intends to make any relevant information obtained through this FOIA available to the public. *See* 6 C.F.R. § 5.11(k)(1)(ii). The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee.

The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU website also includes many features on information obtained through FOIA requests. For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, in February 2017 the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program. The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the ACLU plans to disseminate the information disclosed as a result of this Request to the public at no cost.

1. *The ACLU also qualifies for a fee waiver because it is representative of the news media and the records are not sought for commercial use.*

The ACLU is also entitled to a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. For example, the ACLU regularly publishes *ACLU Magazine* that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 950,000 households.

The ACLU also publishes regular updates and alerts via email to approximately four million subscribers (both ACLU members and nonmembers). These updates are additionally broadcast to 5.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through our FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests. Similarly, ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.

Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's are "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[xxii]

As a representative of the news media, the ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media." A fee waiver would fulfill Congress's legislative intent in amending FOIA.[xxiii] Additionally, on account of these factors, the ACLU has not been charged fees associated with responding to FOIA requests on numerous occasions.[xxiv]

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the requester, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide me with prior notice so that we can discuss arrangements.

* * * * *

Thank you for your prompt attention to this Request. We look forward to your reply to this Request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i), or a written notice of an additional ten (10) business if there is an unusual circumstance pursuant to 5 U.S.C § 552(a)(6)(B)(i).

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees.

Please call Marisol Dominguez-Ruiz at 202-393-4930 or email at mdominguez-ruiz@aclu.org if you have any questions or wish to obtain further information about the nature of the records in which we are interested. Please furnish the applicable records via email (mdominguez-ruiz@aclu.org).

If the records must be sent via U.S. Mail, please send to the following address. Our offices are not fully reopened due to the pandemic; if any responsive records are sent by U.S. Mail, please call or email:

Marisol Dominguez-Ruiz
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111

Sincerely yours,

Marisol Dominguez-Ruiz
Justice Catalyst Fellow
ACLU National Prison Project

Eunice Cho
Sr. Staff Attorney
ACLU National Prison Project

---

---

[i] *See* Transactional Records Access Clearinghouse (TRAC), Syracuse University, *Immigration: Quick Facts*, https://trac.syr.edu/immigration/quickfacts/ (last updated Feb. 26, 2023).

[ii] *See* American Immigration Council, *Special Report: Access to Counsel in Immigration Court*, 4-5 (Sept. 2016) access_to_counsel_in_immigration_court.pdf (americanimmigrationcouncil.org).

[iii] *See* 8 U.S.C.A. § 1362 (provides the right to counsel in any removal proceedings before an immigration judge); U.S.C.A § 1229a(b)(4)(A) (providing that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel" in removal proceedings); *see also Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (court points to Congress's recognition of right to counsel in removal proceedings grounded in "the Fifth Amendment guarantee of due process").

[iv] *See* ICE, National Detention Standards 2000, *Access to Legal Material*, 1-2 (Sept. 20, 2000), https://www.ice.gov/doclib/dro/detention-standards/pdf/legal.pdf ("facility shall provide a law library" which "shall contain the materials listed in Attachment A ["List of Legal Reference Materials for Detention Facilities"]")

[hereinafter "ICE, *NDS 2000*"]; ICE, Performance-Based National Detention Standards, *Law Libraries and Legal Material*, 2-4 (Dec. 2, 2008), https://www.ice.gov/doclib/dro/detention-standards/pdf/law_libraries_and_legal_material.pdf ("facility shall provide a properly equipped law library" and "may substitute the Lexis/Nexis publications on CDROM) [hereinafter "ICE, *PBNDS 2008*"]; ICE, Performance-Based National Detention Standards 2011, *6.3 Law Libraries and Legal Material*, 422-23 (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf ("facility shall provide a properly equipped law library" and "[r]egardless of whether paper versions are provided, facilities must make available in the law library any electronic media provided by ICE/ERO…may include CD-ROMs OR External Hard Drives.") [hereinafter "ICE, *PBNDS 2011*"]; ICE, National Detention Standards 2019*, Standard 6.3 Law Libraries and Legal Materials*, 185-86 (Revised 2019), https://www.ice.gov/doclib/detention-standards/2019/6_3.pdf ("facility shall provide a law library" and "ICE/ERO shall provide each facility an electronic version of required ICE/ERO law library reference materials") [hereinafter "ICE, *NDS 2019*"]; ICE, Family Residential Standards, *6.3 Law Libraries and Legal Material*, 3 (revised 2020), https://www.ice.gov/doclib/frs/2020/6.3_LawLibrariesLegalMaterial.pdf ("Centers may make available in the law library the LexisNexis CD-ROM (or the ICE/ERO-approved equivalent) provided by ICE/ERO containing the required publications") [hereinafter, "ICE, *FRS 2020*"].

[v] *See*, ICE, ERO Custody Management Division, *List of ICE Dedicated and Non-Dedicated Facilities*, https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx (last updated Oct. 11, 2022).

[vi] *See* ICE, *NDS 2000*, *supra* note 4, at 1,3 ("[t]he law library shall provide an adequate number of typewriters and/or computers" and detainees "shall be permitted to use the law library for a minimum of five (5) hours per week"); ICE, *PBNDS 2008*, *supra* note 4, at 3 ("[t]he law library shall provide an adequate number of computers with printers, access to one or more photocopiers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[t]he law library shall have an adequate number of computers and printers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *NDS 2019*, *supra* note 4, at 185-86 (the law library must be equipped with an adequate number of computers, a printer, a copier, and other writing supplies and each detainee must have access to use the law library for a minimum of five hours per week); ICE, *FRS 2020*, *supra* note 4, at 3 (the law library "will have an adequate number of computers, printers" and "[e]ach resident will be permitted to use the law library for a minimum of 10 hours per week").

[vii] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423.

[viii] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[e]ach law library shall contain the materials listed in "Appendix 6.3.A.: List of Legal Reference Materials for Detention Facilities); ICE, *Legal Access in Detention At A Glance*, 2 (Aug. 2021), https://www.ice.gov/doclib/detention/LegalAccessAtAGlance.pdf (citing ICE*, PBNDS 2011* Appendix 6.3.A. for list of legal materials available in law library).

[ix] *See* ICE, *NDS 2000*, *supra* note 4, at 3 (requires the facility to "designate an employee with responsibility for updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *PBNDS 2008*, *supra* note 4, at 3 (requires "a facility law library coordinator to be responsible for updating legal materials, inspecting them weekly, maintaining them in good condition and replacing them promptly as needed"); ICE, *PBNDS 2011*, *supra* note 4, at 424 ("a facility law library coordinator to be responsible for inspecting legal materials weekly, updating them, maintaining them in good condition and replacing them promptly as needed"); ICE, *NDS 2019*, *supra* note 4, at 186 ("ICE/ERO will provide updated electronic materials to facilities on a regular basis" and an employee is responsible for "updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *FRS 2020*, *supra* note 4, at 4 (a "Center Law Library Coordinator" is "responsible for inspecting legal materials weekly, updating them, maintaining them in good condition, and replacing them promptly as needed").

[x] *See* ICE, *2000 National Detention Standards for Non-Dedicated Facilities*, https://www.ice.gov/detain/detention-management/2000.

[xi] *See* ICE, *2008 Operations Manual ICE Performance-Based National Detention Standards*, https://www.ice.gov/detain/detention-management/2008.

[xii] *See* ICE, *Performance-Based National Detention Standards 2011* (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[xiii] *See* ICE, *National Detention Standards for Non-Dedicated Facilities* (revised 2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf.

[xiv] *See* ICE, *Family Residential Standards* (revised 2020), https://www.ice.gov/doclib/frs/2020/2020family-

residential-standards.pdf.

[xv]  *See also* 5 U.S.C. § 552(a)(3)(C) (requiring the agency to make reasonable efforts to search for the records in electronic form or format).

[xvi]  *See supra* note 6.

[xvii]  *See* H.R. Rep. No. 116-458, at 9 (2021) and H.R. Rep. No. 11-9, at 480 (2019).

[xviii]  *See* 168 Cong. Rec. 198-11, S8562 (daily ed. Dec. 20, 2022) (explanatory statement by Mr. Leahy, Chair of the Sen. Comm. On Appropriations, regarding H.R. 2617, Consolidated Appropriations Act, 2023).

[xix]  *See* Letter from Eunice Cho, Staff Attorney at Southern Poverty Law Center, and Ericka Curran, Clinical Professor at Florida Coastal School of Law, to ICE and Folkston ICE Processing Center (Aug. 22, 2017), folkston_law_library_letter_2017-8-22.pdf (splcenter.org).

[xx]  *See* ACLU, *Coalition Letter to DHS and ICE on Access to Counsel in Immigration Detention* (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

[xxi]  *See* Aditi Shah and Eunice Hyunhye Cho, ACLU Research Report*, No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (2022), https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers.

[xxii]  Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[xxiii]  *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requestors.'") (citation omitted); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) ("[FOIA's] purpose . . . is to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers.") (internal quotation marks and citation omitted).

[xxiv]  For example, in August 2016, the ICE FOIA Office and DHS Privacy Office both granted fee waivers to the ACLU for a FOIA request seeking a DHS OIG super-memorandum and ICE's response to that memorandum. Similarly, in March 2016, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about selected deaths in detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office. In July 2015, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about the use of segregation in ICE detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office.



| | |
|---|---|
| **From:** | Marisol Dominguez-Ruiz |
| **To:** | ICE-FOIA@dhs.gov |
| **Cc:** | Eunice Cho |
| **Subject:** | RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE) |
| **Date:** | Friday, April 28, 2023 7:56:00 AM |
| **Attachments:** | 3.30.2023 ELL FOIA.pdf |
| | USPS Tracking US ICE - Delivery Receipt - 04.05.2023.png |
| | image003.png |
| | image004.png |

Dear ICE Freedom of Information Act Officer:

I am writing to inquire about the FOIA request sent on March 30, 2023 via email and United States Postal Service ("USPS") Priority Certified Mail. The USPS tracking system confirms the FOIA request was received at your office on April 5, 2023. *See* attachment. However, we have not received confirmation of receipt, a case file number associated with our request, or response to the request.

We request prompt confirmation of receipt, the FOIA case tracking number for the request and the agency's response pursuant to 5 U.S.C. § 552(a)(6)(B)(i).

Thanks for your assistance with this matter.

Sincerely,

Mari Dominguez-Ruiz
Pronouns: she, her

Justice Catalyst Fellow, National Prison Project
American Civil Liberties Union
915 15th St. NW, Washington, DC 20005
mdominguez-ruiz@aclu.org
 aclu.org



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

**From:** Marisol Dominguez-Ruiz
**Sent:** Thursday, March 30, 2023 9:10 AM
**To:** ICE-FOIA@dhs.gov; foia@hq.dhs.gov
**Cc:** Eunice Cho <ECho@aclu.org>
**Subject:** RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)

March 30, 2023

U.S. Immigration and Customs Enforcement

Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov

      **RE:**    **FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)**

       *FEE WAIVER REQUESTED*

       *SUBMITTED VIA EMAIL AND U.S.P.S.*

Dear Freedom of Information Act Officer:

    The American Civil Liberties Union (ACLU) submits this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*., **request for records related to electronic legal research media** provided by Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) to people held in ICE detention facilities. The ACLU also requests a fee waiver, pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii). The justification for the fee waiver is set out in detail following the request.

## I.    Background

    On a daily basis, ICE detains over 24,000 people in detention centers nationwide. [i] On average, only 14 percent of people detained in ICE custody are represented by an attorney in their immigration proceedings. [ii] Although immigrants have a right to counsel in immigration proceedings, courts have not yet recognized a right to government-appointed counsel as there is in the criminal legal system. [iii] Without legal counsel, detained people are left to argue their cases against government lawyers, with limited knowledge of the immigration laws. For this reason, access to legal resources, including a law library, is even more critical in the absence of counsel.

    ICE detention standards require facilities to ensure detainees access to comprehensive legal materials, including an electronic law library, to protect their rights. Facilities have a responsibility to provide a "properly equipped law library" which may be available in electronic format. [iv] Because paper versions of legal materials are now optional and all facilities must have an electronic version, either on a CD-ROM or external hard drive, we request the electronic version of legal materials distributed to detention facilities for use by detained people in facility law libraries.

    ICE holds immigrants at approximately 200 detention facilities in the United States, all of

which are subject to the agency's detention standards.[v] A detention facility may be operated by National Detention Standards (NDS), 2008 Performance-Based National Detention Standards (PBNDS 2008), Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011), ICE National Detention Standards 2019 (NDS 2019), or Family Residential Standards revised in 2020 (FRS 2020). The five standards generally require detention centers to provide detainees access to law libraries for at least five hours per week, equipped with computers, printers, and photocopiers.[vi] Detention facilities provide electronically available law library materials, which "may include CD-ROMs or External Hard Drives developed by legal research vendors utilized by ICE."[vii] Facilities governed by PBNDS 2011 that utilize electronic law libraries are required to provide the materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities."[viii] ICE's detention standards require facilities to update, maintain, inspect, and replace the required legal materials on a routine basis.[ix]

In light of the significant number of detained people without representation, the requested records will inform the public of the quality and availability of legal materials available to people held in ICE detention facilities. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of ICE's provision of electronic legal materials in detention facilities.

## **Definitions**

For purposes of this request, the terms listed below are defined as follows:

"DETENTION STANDARDS" means applicable standards to establish consistent conditions of confinement, program operations, and management expectations, and which prescribe expected outcomes and expected practices required to achieve them at ICE detention facilities, including the National Detention Standards (NDS),[x] 2008 Performance-Based National Detention Standards (PBNDS 2008),[xi] Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011),[xii] National Detention Standards 2019 (NDS 2019),[xiii] or Family Residential Standards, revised in 2020 (FRS 2020).[xiv]

"ELECTRONIC LAW LIBRARY" means all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries. Electronic law library materials may include, but are not limited to, materials available on CD-ROMs or External Hard Drives, materials developed by legal research vendors such as Lexis Nexis, and/or materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities" and "Appendix 6.3.B: Optional Legal Reference Materials."

"SUPPORTING MATERIALS" means any usage guides, instructions on the basic use of the system, any accompanying written training or reference materials, and/or any other supporting materials supplied by ICE to immigration detention facilities.

"DHS" means the Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

"DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every  type and description and every tangible thing that is or has been in the possession,  custody, or control of the federal agency or agencies that are the subject of this  request and their employees, to which they have access, or of which they have  knowledge, including, but not limited to, newspaper articles, magazine articles,  news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications,  books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail  solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries,  models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and  statistical compilations, regardless of whether a particular DOCUMENT is  privileged or confidential, and regardless of the form of storage (including, but  not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

"ICE" means Immigration and Customs Enforcement, and any  components, subcomponents, offices, or personnel therein.

"IMMIGRATION DETENTION FACILITY" means Service Processing  Centers, Contract Detention Facilities, Family Residential Facilities,  Intergovernmental Service Agreement (IGSA) Facilities, Dedicated  Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental   Agreement (IGA) Facilities, and any other facilities where individuals may be  held in ICE custody for 72 hours or more.

"THIRD-PARTY CONTRACTOR" means any entity that provides  services or personnel to immigration detention facilities.

### **Requested Records**

The ACLU seeks the release of the following records, dated March 30,  2023, to the present. Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

1. Electronic Law Library materials provided at any Immigration Detention Facility;
2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility;
3. Any document related to software requirements for use of Electronic Law Library materials.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided via mail in their **native file format**, including CD-ROMs or External Hard Drives as described in, for example, FRS 2020, PBNDS 2011 – Revisions 2016, and NDS 2019.[xv]

Notably, the Electronic Freedom of Information Act Amendments of 1996 requires federal agencies to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format" and to "make reasonable effort to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(B) and (C); *see also* Pub.L. No. 104-231 (HR 3802). The requested electronic records are reasonably and readily reproducible, as ICE reproduces these materials CD-ROM or external hard drives

for distribution to immigration detention facilities. *TPS, Inc. v. U.S. Dept. of Defense*, 330 F.3d 1191, 1192 (9th. Cir. 2003); *see also Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 36 (D.D.C. 2014) (noting that "whenever agency already maintains a record in more than one form or format, the requester can choose the one in which it will be disclosed").

## **Fee Waiver Request**

The ACLU requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. The ACLU also requests a waiver or reduction of fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (II).

1. *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of access to legal resources in detention centers and its impact on immigration court proceedings and backlog.*

ICE Detention Standards require that detainees are provided at least five hours of access per week to a detention facility law library.[xvi] The quality of legal materials provided to detained people in ICE custody, particularly those without counsel, may often determine the outcome of a legal case.

The issue of legal access in ICE detention centers has garnered significant public interest. Congress has expressed concern about access to counsel issues and has directed ICE to facilitate the improved communication between pro bono providers and detained people.[xvii] For example, Congress recently authorized an appropriation of ten million dollars to the Department of Homeland Security to improve legal resources at ICE detention centers, including improved law libraries and legal materials.[xviii]

Concern over access to legal resources and protecting constitutional rights of detained people remains an ongoing problem. In 2017, the Southern Poverty Law Center, sent a letter to ICE officials highlighting detainees' lack of regular meaningful access to law libraries and a violation of due process rights.[xix] An October 29, 2021 letter to ICE from a coalition of 88 immigrants' rights advocates lists the multiple barriers faced by counsel to have effective communication with their clients which hinders the constitutional rights of detained people.[xx] The barriers listed in that letter are still persistent based on a recent research report on barriers to access to counsel published by the ACLU.[xxi]

Given the ongoing barriers to legal access and representation, the need for a better understanding of ICE detention electronic law library materials is a significant public interest. These materials represent possibly the only and last resort for a majority of detained people to exercise their legal rights. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of the available legal resources to detained people that ensure their right to due process and increase court efficiency.

2. *Disclosure is not primarily in the commercial interest of the ACLU.*

Second, the ACLU is not filing this request to further a commercial interest. The ACLU is a 501(c)(3) nonprofit organization and therefore has no commercial interest. The ACLU intends to make any relevant information obtained through this FOIA available to the public. *See* 6 C.F.R. § 5.11(k)(1)(ii).  The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee.

The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU website also includes many features on information obtained through FOIA requests. For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, in February 2017 the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program. The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the ACLU plans to disseminate the information disclosed as a result of this Request to the public at no cost.

1. *The ACLU also qualifies for a fee waiver because it is representative of the news media and the records are not sought for commercial use.*

The ACLU is also entitled to a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. For example, the ACLU regularly publishes *ACLU Magazine* that reports on and analyzes civil

liberties-related current events. The magazine is disseminated to over 950,000 households. The ACLU also publishes regular updates and alerts via email to approximately four million subscribers (both ACLU members and nonmembers). These updates are additionally broadcast to 5.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through our FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests. Similarly, ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.

Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's are "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[xxii]

As a representative of the news media, the ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media." A fee waiver would fulfill Congress's legislative intent in amending FOIA.[xxiii] Additionally, on account of these factors, the ACLU has not been charged fees associated with responding to FOIA requests on numerous occasions.[xxiv]

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the requester, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide me with prior notice so that we can discuss arrangements.

* * * * *

Thank you for your prompt attention to this Request.  We look  forward to your reply to this Request within twenty (20) business days, as  required under 5 U.S.C. § 552(a)(6)(A)(i), or a written notice of an additional ten (10) business if there is an unusual circumstance pursuant to 5 U.S.C § 552(a)(6)(B)(i).

If this Request is denied in whole or part, we ask that you justify all  deletions by reference to specific exemptions of the FOIA.  We expect the  release of all segregable portions of otherwise exempt material. We reserve  the right to appeal a decision to withhold any information, or to deny a  waiver of fees.

Please call Marisol Dominguez-Ruiz at 202-393-4930 or email at mdominguez-ruiz@aclu.org if you  have any questions or wish to obtain further information about the nature of  the records in which we are interested.  Please furnish the applicable  records via email (mdominguez-ruiz@aclu.org).

If the records must be sent via U.S. Mail, please send to the following address. Our offices are not fully reopened due to the pandemic; if any responsive records are sent by U.S. Mail, please call or email:

Marisol Dominguez-Ruiz
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111

Sincerely yours,

Marisol Dominguez-Ruiz           Eunice Cho
Justice Catalyst Fellow            Sr. Staff Attorney
ACLU National Prison Project       ACLU National Prison Project

---

[i] *See* Transactional Records Access Clearinghouse (TRAC), Syracuse University, *Immigration: Quick Facts*, https://trac.syr.edu/immigration/quickfacts/ (last updated Feb. 26, 2023).

[ii] *See* American Immigration Council, *Special Report: Access to Counsel in Immigration Court*, 4-5 (Sept. 2016) access_to_counsel_in_immigration_court.pdf (americanimmigrationcouncil.org).

[iii] *See* 8 U.S.C.A. § 1362 (provides the right  to counsel in any removal proceedings before an immigration judge);  U.S.C.A § 1229a(b)(4)(A) (providing that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel" in removal proceedings); *see also Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (court points to Congress's recognition of right to counsel in removal proceedings grounded in "the Fifth Amendment guarantee of due process").

[iv] *See* ICE, National Detention Standards 2000, *Access to Legal Material*, 1-2 (Sept. 20, 2000), https://www.ice.gov/doclib/dro/detention-standards/pdf/legal.pdf ("facility shall provide a law library" which "shall

contain the materials listed in Attachment A ["List of Legal Reference Materials for Detention Facilities"]") [hereinafter "ICE, *NDS 2000*"]; ICE, Performance-Based National Detention Standards, *Law Libraries and Legal Material*, 2-4 (Dec. 2, 2008), https://www.ice.gov/doclib/dro/detention standards/pdf/law_libraries_and_legal_material.pdf ("facility shall provide a properly equipped law library" and "may substitute the Lexis/Nexis publications on CDROM [hereinafter "ICE, *PBNDS 2008*"]; ICE,  Performance-Based National Detention Standards 2011, *6.3 Law Libraries and Legal Material*, 422-23 (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf ("facility shall provide a properly equipped law library" and "[r]regardless of whether paper versions are provided, facilities must make available in the law library any electronic media provided by ICE/ERO…may include CD-ROMs OR External Hard Drives.") [hereinafter "ICE, *PBNDS 2011*"]; ICE, National Detention Standards 2019*, Standard 6.3 Law Libraries and Legal Materials*, 185-86 (Revised 2019), https://www.ice.gov/doclib/detention-standards/2019/6_3.pdf ("facility shall provide a law library" and "ICE/ERO shall provide each facility an electronic version of required ICE/ERO law library reference materials") [hereinafter "ICE, *NDS 2019*"]; ICE, Family Residential Standards, *6.3 Law Libraries and Legal Material*, 3 (revised 2020), https://www.ice.gov/doclib/frs/2020/6.3_LawLibrariesLegalMaterial.pdf ("Centers may make available in the law library the LexisNexis CD-ROM (or the ICE/ERO-approved equivalent) provided by ICE/ERO containing the required publications") [hereinafter, "ICE, *FRS 2020*"].

[v]  *See*, ICE, ERO Custody Management Division, *List of ICE Dedicated and Non-Dedicated Facilities*, https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx (last updated Oct. 11, 2022).

[vi]  *See* ICE*, NDS 2000*, *supra* note 4, at 1,3 ("[t]he law library shall provide an adequate number of typewriters and/or computers" and detainees "shall be permitted to use the law library for a minimum of five (5) hours per week"); ICE, *PBNDS 2008*, *supra* note 4, at 3 ("[t]he law library shall provide an adequate number of computers with printers, access to one or more photocopiers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[t]he law library shall have an adequate number of computers and printers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *NDS 2019*, *supra* note 4, at 185-86 (the law library must be equipped with an adequate number of computers, a printer, a copier, and other writing supplies and each detainee must have access to use the law library for a minimum of five hours per week); ICE, *FRS 2020*, *supra* note 4, at 3 (the law library "will have an adequate number of computers, printers" and "[e]ach resident will be permitted to use the law library for a minimum of 10 hours per week").

[vii]  *See* ICE, *PBNDS 2011*, *supra* note 4, at 423.

[viii]  *See* ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[e]ach law library shall contain the materials listed in "Appendix 6.3.A.: List of Legal Reference Materials for Detention Facilities); ICE, *Legal Access in Detention At A Glance*, 2 (Aug. 2021), https://www.ice.gov/doclib/detention/LegalAccessAtAGlance.pdf (citing ICE*, PBNDS 2011* Appendix 6.3.A. for list of legal materials available in law library).

[ix]  *See* ICE, *NDS 2000*, *supra* note 4, at 3 (requires the facility to "designate an employee with responsibility for updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *PBNDS 2008*, *supra* note 4, at 3 (requires "a facility law library coordinator to be responsible for updating legal materials, inspecting them weekly, maintaining them in good condition and replacing them promptly as needed"); ICE, *PBNDS 2011*, *supra* note 4, at 424 ("a facility law library coordinator to be responsible for inspecting legal materials weekly, updating them, maintaining them in good condition and replacing them promptly as needed"); ICE, *NDS 2019*, *supra* note 4, at 186 ("ICE/ERO will provide updated electronic materials to facilities on a regular basis" and an employee is responsible for "updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *FRS 2020*, *supra* note 4, at 4 (a "Center Law Library Coordinator" is "responsible for inspecting legal materials weekly, updating them, maintaining them in good condition, and replacing them promptly as needed").

[x]  *See* ICE, *2000 National Detention Standards for Non-Dedicated Facilities*, https://www.ice.gov/detain/detention-management/2000.

[xi]  *See* ICE, *2008 Operations Manual ICE Performance-Based National Detention Standards*, https://www.ice.gov/detain/detention-management/2008.

[xii]  *See* ICE, *Performance-Based National Detention Standards 2011* (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[xiii]  *See* ICE, *National Detention Standards for Non-Dedicated Facilities* (revised 2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf.

[xiv]

See ICE, *Family Residential Standards* (revised 2020), https://www.ice.gov/doclib/frs/2020/2020family-residential-standards.pdf.

[xv] *See also* 5 U.S.C. § 552(a)(3)(C) (requiring the agency to make reasonable efforts to search for the records in electronic form or format).

[xvi] *See supra* note 6.

[xvii] *See* H.R. Rep. No. 116-458, at 9 (2021) and H.R. Rep. No. 11-9, at 480 (2019).

[xviii] *See* 168 Cong. Rec. 198-11, S8562 (daily ed. Dec. 20, 2022) (explanatory statement by Mr. Leahy, Chair of the Sen. Comm. On Appropriations, regarding H.R. 2617, Consolidated Appropriations Act, 2023).

[xix] *See* Letter from Eunice Cho, Staff Attorney at Southern Poverty Law Center, and Ericka Curran, Clinical Professor at Florida Coastal School of Law, to ICE and Folkston ICE Processing Center (Aug. 22, 2017), folkston_law_library_letter_2017-8-22.pdf (splcenter.org).

[xx] *See* ACLU, *Coalition Letter to DHS and ICE on Access to Counsel in Immigration Detention* (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

[xxi] *See* Aditi Shah and Eunice Hyunhye Cho, ACLU Research Report*, No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (2022), https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers.

[xxii] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. at 53-54.

[xxiii] *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requestors.'") (citation omitted); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) ("[FOIA's] purpose . . . is to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers.") (internal quotation marks and citation omitted).

[xxiv] For example, in August 2016, the ICE FOIA Office and DHS Privacy Office both granted fee waivers to the ACLU for a FOIA request seeking a DHS OIG super-memorandum and ICE's response to that memorandum. Similarly, in March 2016, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about selected deaths in detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office. In July 2015, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about the use of segregation in ICE detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office.



# EXHIBIT C

| | |
|---|---|
| **From:** | foia@hq.dhs.gov |
| **To:** | Marisol Dominguez-Ruiz |
| **Subject:** | Department of Homeland Security FOIA 2023-HQFO-01444 Final Response |
| **Date:** | Monday, May 8, 2023 11:39:04 AM |
| **Attachments:** | 1151059-20230508133548644.zip |

**This Message Is From an External Sender**
This message came from outside your organization.

Good Afternoon,

Attached is our final response to your request.  If you need to contact this office again concerning your request, please provide the DHS reference number. This will enable us to quickly retrieve the information you are seeking and reduce our response time. This office can be reached at 866-431-0486.

Regards,

DHS Privacy Office
Disclosure & FOIA Program
STOP 0655
Department of Homeland Security
245 Murray Drive, SW
Washington, DC 20528-0655
Telephone:  1-866-431-0486 or 202-343-1743
Fax:  202-343-4011
Visit our FOIA website https://www.dhs.gov/foia

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1

**U.S. Department of Homeland Security**
Washington, D.C. 20528



*Privacy Office, Mail Stop 0655*

May 8, 2023

<u>**SENT VIA E-MAIL TO:  mdominguez-ruiz@aclu.org**</u>

Marisol Dominguez-Ruiz
ACLU National Prison Project
39 Drumm St.
San Francisco, California 94111

**Re:  2023-HQFO-01444**

Dear Ms. Dominguez-Ruiz:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS), Privacy Office, dated March 30, 2023, and received in this office on March 30, 2023. You requested "the release of the following records, dated March 30, 2023, to the present. Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

1. Electronic Law Library materials provided at any Immigration Detention Facility.

2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility.

3. Any document related to software requirements for use of Electronic Law Library materials."

Due to the subject matter of your request, I am transferring this request to the FOIA Officers for **United States Immigration & Customs Enforcement (ICE)**, for processing under the FOIA and direct response to you.  Please find their contact information below**:**

**United States Immigration & Customs Enforcement (ICE)**

Submit a request to Immigration Customs Enforcement (ICE) by creating a <u>SecureRelease account</u>.
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
Phone: 866-633-1182 | Fax: 202-732-4265 | E-mail: ice-foia@dhs.gov

**ICE Website**

If you need to contact our office again about this matter, please refer to **2023-HQFO-01444**.  You may contact this office at 1-866-431-0486 or 202-343-1743.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management

# EXHIBIT D

| From: | ICE-FOIA |
|---|---|
| To: | Marisol Dominguez-Ruiz |
| Subject: | RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE) |
| Date: | Tuesday, May 16, 2023 1:18:15 PM |
| Attachments: | image003.png |
| | image004.png |

**This Message Is From an External Sender**
This message came from outside your organization.

ICE FOIA has not received this request via mail. However, ICE FOIA did receive the same request as a referral from the DHS Privacy Office (2023-HQFO-01444) on 5/12/2023. That referral has been assigned ICE tracking number 2023-ICFO-25873 and is pending the initial determination. You will receive a letter of acknowledgement soon.


Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009


**From:** Marisol Dominguez-Ruiz <mdominguez-ruiz@aclu.org>
**Sent:** Friday, April 28, 2023 10:56 AM
**To:** ICE-FOIA@dhs.gov
**Cc:** Eunice Cho <echo@aclu.org>
**Subject:** RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Please use the Cofense Report Phishing button to report. If the button is not present, click here and follow instructions.

CAUTION: This email originated from outside of DHS. DO NOT click links or open attachments unless you recognize and/or trust the sender. Contact your component SOC with questions or concerns.

Dear ICE Freedom of Information Act Officer:

I am writing to inquire about the FOIA request sent on March 30, 2023 via email and United States Postal Service ("USPS") Priority Certified Mail. The USPS tracking system confirms the FOIA request was received at your office on April 5, 2023. *See* attachment. However, we have not received confirmation of receipt, a case file number associated with our request, or response to the request.

We request prompt confirmation of receipt, the FOIA case tracking number for the request and the agency's response pursuant to 5 U.S.C. § 552(a)(6)(B)(i).

Thanks for your assistance with this matter.

Sincerely,

Mari Dominguez-Ruiz
Pronouns: she, her

Justice Catalyst Fellow, National Prison Project
American Civil Liberties Union
915 15th St. NW, Washington, DC 20005
mdominguez-ruiz@aclu.org
aclu.org



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

---

**From:** Marisol Dominguez-Ruiz
**Sent:** Thursday, March 30, 2023 9:10 AM
**To:** ICE-FOIA@dhs.gov; foia@hq.dhs.gov
**Cc:** Eunice Cho <ECho@aclu.org>
**Subject:** RE: FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)

March 30, 2023

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov

    **RE:    FOIA Request, Electronic Legal Research Media to Immigration and Customs Enforcement (ICE)**

*FEE WAIVER REQUESTED*

*SUBMITTED VIA EMAIL AND U.S.P.S.*

Dear Freedom of Information Act Officer:

The American Civil Liberties Union (ACLU) submits this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, **request for records related to electronic legal research media** provided by Immigration and Customs Enforcement (ICE) Enforcement and Removal Operations (ERO) to people held in ICE detention facilities. The ACLU also requests a fee waiver, pursuant to 5 U.S.C. § 552 (a)(4)(A)(iii). The justification for the fee waiver is set out in detail following the request.

## I.      Background

On a daily basis, ICE detains over 24,000 people in detention centers nationwide. [i] On average, only 14 percent of people detained in ICE custody are represented by an attorney in their immigration proceedings. [ii] Although immigrants have a right to counsel in immigration proceedings, courts have not yet recognized a right to government-appointed counsel as there is in the criminal legal system. [iii] Without legal counsel, detained people are left to argue their cases against government lawyers, with limited knowledge of the immigration laws. For this reason, access to legal resources, including a law library, is even more critical in the absence of counsel.

ICE detention standards require facilities to ensure detainees access to comprehensive legal materials, including an electronic law library, to protect their rights. Facilities have a responsibility to provide a "properly equipped law library" which may be available in electronic format. [iv] Because paper versions of legal materials are now optional and all facilities must have an electronic version, either on a CD-ROM or external hard drive, we request the electronic version of legal materials distributed to detention facilities for use by detained people in facility law libraries.

ICE holds immigrants at approximately 200 detention facilities in the United States, all of which are subject to the agency's detention standards. [v] A detention facility may be operated by National Detention Standards (NDS), 2008 Performance-Based National Detention Standards (PBNDS 2008), Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011), ICE National Detention Standards 2019 (NDS 2019), or Family Residential Standards revised in 2020 (FRS 2020). The five standards generally require detention centers to provide detainees access to law libraries for at least five hours per week, equipped with computers, printers, and photocopiers. [vi] Detention facilities provide electronically available law library materials, which "may include CD-ROMs or External Hard Drives developed by legal research vendors utilized by ICE." [vii] Facilities governed by PBNDS 2011 that utilize electronic law libraries are required to provide the materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities." [viii] ICE's detention standards require facilities to update, maintain, inspect, and replace the required legal materials on a routine basis. [ix]

In light of the significant number of detained people without representation, the

requested records will inform the public of the quality and availability of legal materials available to people held in ICE detention facilities. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of ICE's provision of electronic legal materials in detention facilities.

## **Definitions**

For purposes of this request, the terms listed below are defined as follows:

"DETENTION STANDARDS" means applicable standards to establish consistent conditions of confinement, program operations, and management expectations, and which prescribe expected outcomes and expected practices required to achieve them at ICE detention facilities, including the National Detention Standards (NDS),[x] 2008 Performance-Based National Detention Standards (PBNDS 2008),[xi] Performance-Based National Detention Standards 2011 revised in 2016 (PBNDS 2011),[xii] National Detention Standards 2019 (NDS 2019),[xiii] or Family Residential Standards, revised in 2020 (FRS 2020).[xiv]

"ELECTRONIC LAW LIBRARY" means all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries. Electronic law library materials may include, but are not limited to, materials available on CD-ROMs or External Hard Drives, materials developed by legal research vendors such as Lexis Nexis, and/or materials listed in "Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities" and "Appendix 6.3.B: Optional Legal Reference Materials."

"SUPPORTING MATERIALS" means any usage guides, instructions on the basic use of the system, any accompanying written training or reference materials, and/or any other supporting materials supplied by ICE to immigration detention facilities.

"DHS" means the Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

"DOCUMENTS" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular DOCUMENT is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

"ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

"IMMIGRATION DETENTION FACILITY" means Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more.

"THIRD-PARTY CONTRACTOR" means any entity that provides services or personnel to immigration detention facilities.

## Requested Records

The ACLU seeks the release of the following records, dated March 30, 2023, to the present. Please construe this as an ongoing FOIA request, so that any records that come into the possession of the agency prior to your final response to this FOIA request should also be considered within the request's scope.

1. Electronic Law Library materials provided at any Immigration Detention Facility;
2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility;
3. Any document related to software requirements for use of Electronic Law Library materials.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive records be provided via mail in their **native file format**, including CD-ROMs or External Hard Drives as described in, for example, FRS 2020, PBNDS 2011 – Revisions 2016, and NDS 2019.[xv]

Notably, the Electronic Freedom of Information Act Amendments of 1996 requires federal agencies to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format" and to "make reasonable effort to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(B) and (C); *see also* Pub.L. No. 104-231 (HR 3802). The requested electronic records are reasonably and readily reproducible, as ICE reproduces these materials CD-ROM or external hard drives for distribution to immigration detention facilities. *TPS, Inc. v. U.S. Dept. of Defense*, 330 F.3d 1191, 1192 (9th. Cir. 2003); *see also Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 36 (D.D.C. 2014) (noting that "whenever agency already maintains a record in more than one form or format, the requester can choose the one in which it will be disclosed").

## Fee Waiver Request

The ACLU requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. The ACLU also requests a waiver or reduction of fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii) (II).

1. *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of access to legal resources in detention centers and its impact on immigration court proceedings and backlog.*

ICE Detention Standards require that detainees are provided at least five hours of access per week to a detention facility law library. [xvi] The quality of legal materials provided to detained people in ICE custody, particularly those without counsel, may often determine the outcome of a legal case.

The issue of legal access in ICE detention centers has garnered significant public interest. Congress has expressed concern about access to counsel issues and has directed ICE to facilitate the improved communication between pro bono providers and detained people. [xvii] For example, Congress recently authorized an appropriation of ten million dollars to the Department of Homeland Security to improve legal resources at ICE detention centers, including improved law libraries and legal materials. [xviii]

Concern over access to legal resources and protecting constitutional rights of detained people remains an ongoing problem. In 2017, the Southern Poverty Law Center, sent a letter to ICE officials highlighting detainees' lack of regular meaningful access to law libraries and a violation of due process rights. [xix] An October 29, 2021 letter to ICE from a coalition of 88 immigrants' rights advocates lists the multiple barriers faced by counsel to have effective communication with their clients which hinders the constitutional rights of detained people. [xx] The barriers listed in that letter are still persistent based on a recent research report on barriers to access to counsel published by the ACLU. [xxi]

Given the ongoing barriers to legal access and representation, the need for a better understanding of ICE detention electronic law library materials is a significant public interest. These materials represent possibly the only and last resort for a majority of detained people to exercise their legal rights. Insufficient information is publicly available regarding the issue in this Request, so the records sought are certain to contribute significantly to the public's understanding of the available legal resources to detained people that ensure their right to due process and increase court efficiency.

2. *Disclosure is not primarily in the commercial interest of the ACLU.*

Second, the ACLU is not filing this request to further a commercial interest. The ACLU is a 501(c)(3) nonprofit organization and therefore has no commercial interest. The ACLU intends to make any relevant information obtained through this FOIA available to the public. *See* 6 C.F.R. § 5.11(k)(1)(ii). The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee.

The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU website also includes many features on information obtained through FOIA requests. For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the

ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, in February 2017 the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program. The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the ACLU plans to disseminate the information disclosed as a result of this Request to the public at no cost.

   1. *The ACLU also qualifies for a fee waiver because it is representative of the news media and the records are not sought for commercial use.*

The ACLU is also entitled to a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. For example, the ACLU regularly publishes *ACLU Magazine* that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 950,000 households. The ACLU also publishes regular updates and alerts via email to approximately four million subscribers (both ACLU members and nonmembers). These updates are additionally broadcast to 5.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through our FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests. Similarly, ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes

a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.

Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's are "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[xxii]

As a representative of the news media, the ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media." A fee waiver would fulfill Congress's legislative intent in amending FOIA.[xxiii] Additionally, on account of these factors, the ACLU has not been charged fees associated with responding to FOIA requests on numerous occasions.[xxiv]

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the requester, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide me with prior notice so that we can discuss arrangements.

* * * * *

Thank you for your prompt attention to this Request. We look forward to your reply to this Request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i), or a written notice of an additional ten (10) business if there is an unusual circumstance pursuant to 5 U.S.C § 552(a)(6)(B)(i).

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees.

Please call Marisol Dominguez-Ruiz at 202-393-4930 or email at mdominguez-ruiz@aclu.org if you have any questions or wish to obtain further information about the nature of the records in which we are interested. Please furnish the applicable records via email (mdominguez-ruiz@aclu.org).

If the records must be sent via U.S. Mail, please send to the following address. Our

offices are not fully reopened due to the pandemic; if any responsive records are sent by U.S. Mail, please call or email:

> Marisol Dominguez-Ruiz
> ACLU National Prison Project
> 39 Drumm St.
> San Francisco, CA 94111

Sincerely yours,

Marisol Dominguez-Ruiz
Justice Catalyst Fellow
ACLU National Prison Project

Eunice Cho
Sr. Staff Attorney
ACLU National Prison Project

---

[i] *See* Transactional Records Access Clearinghouse (TRAC), Syracuse University, *Immigration: Quick Facts*, https://trac.syr.edu/immigration/quickfacts/ (last updated Feb. 26, 2023).

[ii] *See* American Immigration Council, *Special Report: Access to Counsel in Immigration Court*, 4-5 (Sept. 2016) access_to_counsel_in_immigration_court.pdf (americanimmigrationcouncil.org).

[iii] *See* 8 U.S.C.A. § 1362 (provides the right to counsel in any removal proceedings before an immigration judge); U.S.C.A § 1229a(b)(4)(A) (providing that an "alien shall have the privilege of being represented, at no expense to the Government, by counsel" in removal proceedings); *see also Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (court points to Congress's recognition of right to counsel in removal proceedings grounded in "the Fifth Amendment guarantee of due process").

[iv] *See* ICE, National Detention Standards 2000, *Access to Legal Material*, 1-2 (Sept. 20, 2000), https://www.ice.gov/doclib/dro/detention-standards/pdf/legal.pdf ("facility shall provide a law library" which "shall contain the materials listed in Attachment A ["List of Legal Reference Materials for Detention Facilities"]") [hereinafter "ICE, *NDS 2000*"]; ICE, Performance-Based National Detention Standards, *Law Libraries and Legal Material*, 2-4 (Dec. 2, 2008), https://www.ice.gov/doclib/dro/detention-standards/pdf/law_libraries_and_legal_material.pdf ("facility shall provide a properly equipped law library" and "may substitute the Lexis/Nexis publications on CDROM) [hereinafter "ICE, *PBNDS 2008*"]; ICE, Performance-Based National Detention Standards 2011, *6.3 Law Libraries and Legal Material*, 422-23 (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf ("facility shall provide a properly equipped law library" and "[r]egardless of whether paper versions are provided, facilities must make available in the law library any electronic media provided by ICE/ERO…may include CD-ROMs OR External Hard Drives.") [hereinafter "ICE, *PBNDS 2011*"]; ICE, National Detention Standards 2019, *Standard 6.3 Law Libraries and Legal Materials*, 185-86 (Revised 2019), https://www.ice.gov/doclib/detention-standards/2019/6_3.pdf ("facility shall provide a law library" and "ICE/ERO shall provide each facility an electronic version of required ICE/ERO law library reference materials") [hereinafter "ICE, *NDS 2019*"]; ICE, Family Residential Standards, *6.3 Law Libraries and Legal Material*, 3 (revised 2020), https://www.ice.gov/doclib/frs/2020/6.3_LawLibrariesLegalMaterial.pdf ("Centers may make available in the law library the LexisNexis CD-ROM (or the ICE/ERO-approved equivalent) provided by ICE/ERO containing the required publications") [hereinafter, "ICE, *FRS 2020*"].

[v] *See*, ICE, ERO Custody Management Division, *List of ICE Dedicated and Non-Dedicated Facilities*, https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx (last updated Oct. 11, 2022).

[vi] *See* ICE, *NDS 2000*, *supra* note 4, at 1,3 ("[t]he law library shall provide an adequate number of typewriters and/or computers" and detainees "shall be permitted to use the law library for a minimum of five (5) hours per week"); ICE, *PBNDS 2008*, *supra* note 4, at 3 ("[t]he law library shall provide an adequate number of computers with printers, access to one or more photocopiers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[t]he law library shall have an adequate number of computers and printers" and detainees "shall be permitted to use the law library for a minimum of five hours per week"); ICE, *NDS 2019*, *supra* note 4, at 185-86 (the law library must be equipped with an adequate number of computers, a printer, a copier, and other writing supplies and each detainee must have access to use the law library for a minimum of five hours per week); ICE, *FRS 2020*, *supra* note 4, at 3 (the law library "will have an adequate number of computers, printers" and "[e]ach resident will be permitted to use the law library for a minimum of 10 hours per week").

[vii] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423.

[viii] *See* ICE, *PBNDS 2011*, *supra* note 4, at 423 ("[e]ach law library shall contain the materials listed in "Appendix 6.3.A.: List of Legal Reference Materials for Detention Facilities); ICE, *Legal Access in Detention At A Glance*, 2 (Aug. 2021), https://www.ice.gov/detention/LegalAccessAtAGlance.pdf (citing ICE, *PBNDS 2011* Appendix 6.3.A. for list of legal materials available in law library).

[ix] *See* ICE, *NDS 2000*, *supra* note 4, at 3 (requires the facility to "designate an employee with responsibility for updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *PBNDS 2008*, *supra* note 4, at 3 (requires "a facility law library coordinator to be responsible for updating legal materials, inspecting them weekly, maintaining them in good condition and replacing them promptly as needed"); ICE, *PBNDS 2011*, *supra* note 4, at 424 ("a facility law library coordinator to be responsible for inspecting legal materials weekly, updating them, maintaining them in good condition and replacing them promptly as needed"); ICE, *NDS 2019*, *supra* note 4, at 186 ("ICE/ERO will provide updated electronic materials to facilities on a regular basis" and an employee is responsible for "updating legal materials, inspecting them weekly, maintaining them in good condition, and replacing them promptly as needed"); ICE, *FRS 2020*, *supra* note 4, at 4 (a "Center Law Library Coordinator" is "responsible for inspecting legal materials weekly, updating them, maintaining them in good condition, and replacing them promptly as needed").

[x] *See* ICE, *2000 National Detention Standards for Non-Dedicated Facilities*, https://www.ice.gov/detain/detention-management/2000.

[xi] *See* ICE, *2008 Operations Manual ICE Performance-Based National Detention Standards*, https://www.ice.gov/detain/detention-management/2008.

[xii] *See* ICE, *Performance-Based National Detention Standards 2011* (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

[xiii] *See* ICE, *National Detention Standards for Non-Dedicated Facilities* (revised 2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf.

[xiv] *See* ICE, *Family Residential Standards* (revised 2020), https://www.ice.gov/doclib/frs/2020/2020family-residential-standards.pdf.

[xv] *See also* 5 U.S.C. § 552(a)(3)(C) (requiring the agency to make reasonable efforts to search for the records in electronic form or format).

[xvi] *See supra* note 6.

[xvii] *See* H.R. Rep. No. 116-458, at 9 (2021) and H.R. Rep. No. 11-9, at 480 (2019).

[xviii] *See* 168 Cong. Rec. 198-11, S8562 (daily ed. Dec. 20, 2022) (explanatory statement by Mr. Leahy, Chair of the Sen. Comm. On Appropriations, regarding H.R. 2617, Consolidated Appropriations Act, 2023).

[xix] *See* Letter from Eunice Cho, Staff Attorney at Southern Poverty Law Center, and Ericka Curran, Clinical Professor at Florida Coastal School of Law, to ICE and Folkston ICE Processing Center (Aug. 22, 2017), folkston_law_library_letter_2017-8-22.pdf (splcenter.org).

[xx] *See* ACLU, *Coalition Letter to DHS and ICE on Access to Counsel in Immigration Detention* (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

[xxi] *See* Aditi Shah and Eunice Hyunhye Cho, ACLU Research Report, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (2022), https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers.

[xxii]

Courts have found these organizations to be "representatives of the news media" even  though they engage in litigation and lobbying activities beyond their dissemination of information  and public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5; *Nat'l Sec.  Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at  260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[xxiii] *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended  FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requestors.'")  (citation omitted); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't. of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) ("[FOIA's] purpose . . . is to remove the roadblocks and  technicalities which have been used by . . . agencies to deny waivers.") (internal quotation marks  and citation omitted).

[xxiv] For example, in August 2016, the ICE FOIA Office and DHS Privacy Office both granted  fee waivers to the ACLU for a FOIA request seeking a DHS OIG super-memorandum and ICE's  response to that memorandum. Similarly, in March 2016, the ICE Office of the Principal Legal  Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about selected  deaths in detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office. In July  2015, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA  request seeking records about the use of segregation in ICE detention, reversing an incorrect  denial of a fee waiver by the ICE FOIA Office.

# EXHIBIT E

| | |
|---|---|
| **From:** | ice-foia@ice.dhs.gov |
| **To:** | Marisol Dominguez-Ruiz |
| **Subject:** | ICE FOIA 2023-ICFO-25873 |
| **Date:** | Wednesday, May 24, 2023 1:17:51 PM |

**This Message Is From an External Sender**
This message came from outside your organization.

05/24/2023

Marisol Dominguez Ruiz
39 Drumm St.
San Francisco, California 94111

RE:  ICE FOIA Case Number 2023-ICFO-25873

Dear Requester:

This acknowledges receipt of your 5/8/2023, Freedom of Information Act (FOIA) request to U.S.
Immigration and Customs Enforcement (ICE), for:

   -  release of the following records, dated March 30, 2023, to the present: Electronic Law Library
materials provided at any Immigration Detention Facility. All supporting materials related to
Electronic Law Library materials provided at or to any ICE Detention Facility. Any document related
to software requirements for use of Electronic Law Library materials.

Your request was received in this office on 5/8/2023.

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE
processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within
20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time
period. As your request seeks numerous documents that will necessitate a thorough and wide-
ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. §
552(a)(6)(B). If you're able to narrow the scope of your request please contact our office. Narrowing
the scope may speed up the search process. We will make every effort to comply with your request
in a timely manner.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall
charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-
commercial requesters.  As a non-commercial requester, you will be charged 10 cents per page for
duplication; the first 100 pages are free, as are the first two hours of search time, after which you
will pay the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel,
$10.25 for managerial personnel) of the searcher.  We will construe the submission of your request

as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

We have queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact FOIA Public Liaison, Fernando Pineiro Jr. at the address above or (866) 633-1182. Additionally, you have a right to seek dispute resolution services from the Office of Government Information Services (OGIS) which mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting access to your own records (which is considered a Privacy Act request), you should know that OGIS does not have the authority to handle requests made under the Privacy Act of 1974.  You may contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Your request has been assigned reference number 2023-ICFO-25873. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1

# EXHIBIT F

| From: | Marisol Dominguez-Ruiz |
|---|---|
| To: | ice-foia@ice.dhs.gov |
| Cc: | Eunice Cho; ICE-FOIA@dhs.gov |
| Subject: | RE: ICE FOIA 2023-ICFO-25873 |
| Date: | Wednesday, May 31, 2023 9:41:00 AM |
| Attachments: | 2023-5-31 Response to ICE FOIA office - ELL ICE FOIA.pdf |
| | image007.png |

Dear Mr. Pineiro,

Please see the attachment in response to the reply from May 24, 2023 regarding our fee waiver request.

Thanks for your time and consideration.

Sincerely,
Marisol Dominguez-Ruiz
Pronouns: she, her

Justice Catalyst Fellow, National Prison Project
American Civil Liberties Union
915 15th St. NW, Washington, DC 20005
mdominguez-ruiz@aclu.org
aclu.org 



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

**From:** ice-foia@ice.dhs.gov <noreply@securerelease.us>
**Sent:** Wednesday, May 24, 2023 1:18 PM
**To:** Marisol Dominguez-Ruiz <mdominguez-ruiz@aclu.org>
**Subject:** ICE FOIA 2023-ICFO-25873

**This Message Is From an External Sender**
This message came from outside your organization.

05/24/2023

Marisol Dominguez Ruiz
39 Drumm St.

San Francisco, California 94111

RE:        ICE FOIA Case Number 2023-ICFO-25873

Dear Requester:

This acknowledges receipt of your 5/8/2023, Freedom of Information Act (FOIA) request to U.S.
Immigration and Customs Enforcement (ICE), for:

   -  release of the following records, dated March 30, 2023, to the present: Electronic Law Library
materials provided at any Immigration Detention Facility. All supporting materials related to
Electronic Law Library materials provided at or to any ICE Detention Facility. Any document related
to software requirements for use of Electronic Law Library materials.

Your request was received in this office on 5/8/2023.

Due to the increasing number of FOIA requests received by this office, we may encounter some
delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE
processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within
20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time
period. As your request seeks numerous documents that will necessitate a thorough and wide-
ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. §
552(a)(6)(B). If you're able to narrow the scope of your request please contact our office. Narrowing
the scope may speed up the search process. We will make every effort to comply with your request
in a timely manner.

Provisions of the FOIA allow us to recover part of the cost of complying with your request.  We shall
charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-
commercial requesters.  As a non-commercial requester, you will be charged 10 cents per page for
duplication; the first 100 pages are free, as are the first two hours of search time, after which you
will pay the per quarter-hour rate ($4.00 for clerical personnel, $7.00 for professional personnel,
$10.25 for managerial personnel) of the searcher.  We will construe the submission of your request
as an agreement to pay up to $25.00. You will be contacted before any further fees are accrued.

We have queried the appropriate program offices within ICE for responsive records. If any
responsive records are located, they will be reviewed for determination of releasability. Please be
assured that one of the processors in our office will respond to your request as expeditiously as
possible. We appreciate your patience as we proceed with your request.

If you have any questions, please contact FOIA Public Liaison, Fernando Pineiro Jr. at the address
above or (866) 633-1182. Additionally, you have a right to seek dispute resolution services from the
Office of Government Information Services (OGIS) which mediates disputes between FOIA
requesters and Federal agencies as a non-exclusive alternative to litigation.  If you are requesting
access to your own records (which is considered a Privacy Act request), you should know that OGIS
does not have the authority to handle requests made under the Privacy Act of 1974.  You may

contact OGIS as follows:  Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Your request has been assigned reference number 2023-ICFO-25873. Please use this number in future correspondence.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1

May 31, 2023

Fernando Pineiro, Jr.
FOIA Public Liaison
ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009
Email: ice-foia@ice.dhs.gov



   **RE:** **ICE FOIA 2023-ICFO-25873**

   **SENT VIA EMAIL**

Dear Mr. Pineiro:

   I write regarding the ACLU's Freedom of Information Act ("FOIA") request, sent on March 30, 2023, which requested:

   Electronic Law Library materials provided at any Immigration Detention Facility; all supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility; and any document related to software requirements for use of Electronic Law Library Materials.

   The ACLU's FOIA request also included a request for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

   On May 24, 2023, your office responded, confirming receipt of the request. Your response also noted that "[w]e shall charge you for records in accordance to DHS Interim FOIA regulations as they apply to non-commercial requesters." Email from ICE FOIA Office, May 24, 2023. However, your response did not note the ACLU's request for a fee waiver, nor did it state whether the fee waiver request had been reviewed, approved, or denied. The ACLU objects to a charge for search and duplication of these records in light of its fee waiver request. We thus request a review and determination of our fee waiver request.

   As discussed in detail in the ACLU's FOIA request, disclosure of the requested records is in the public interest and "likely to contribute significantly to public understanding of the operations or activities of the government," and "not primarily in the commercial interests of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The issue of access to legal resources to ensure and protect the constitutional rights of detained people in ICE detention centers has prompted active concern by Congress, media, and advocates. Congress responded to this concern by directing ICE to facilitate improved communication between legal counsel and detained people.[1] For example, Congress recently authorized an appropriation of ten million dollars to DHS to improve legal resource at ICE detention centers, including improved law libraries and legal materials.[2] The media has repeatedly chronicled the challenges faced by detained immigrants in accessing legal representation, and barriers raised by ICE.[3] Immigrants' rights advocates have also highlighted barriers to legal resources and access to counsel faced by detained people.[4] Because of the ongoing barriers to legal access and representation, the quality of legal materials provided to detained people in ICE custody is a public interest issue as it is often the last line of defense for detained people to exercise their legal rights and navigate immigration proceedings on their own.



Disclosure is not in the commercial interest of the ACLU, as it is a 501(c)(3) nonprofit organization. The ACLU intends to make relevant information obtained through the FOIA available to the public. 6 C.F.R. § 5.11(k)(1)(ii). In addition, the ACLU qualifies for a fee waiver because it is a

---

[1] H.R. Rep. No. 116-458, at 9 (2021) and H.R. Rep. No. 11-9, at 480 (2019).

[2] 168 Cong. Rec. 198-11, S8562 (daily ed. Dec. 20, 2022) (explanatory statement by Mr. Leahy, Chair of the Sen. Comm. On Appropriations, regarding H.R. 2617, Consolidated Appropriations Act, 2023).

[3] *See, e.g.* Daniel Wiessner, *U.S. Immigration Agency Blocks Lawyer Access to Detainees, Groups Say*, Reuters, Oct. 14, 2022, https://www.reuters.com/legal/government/us-immigration-agency-blocks-lawyer-access-detainees-groups-say-2022-10-14/; Michael Moline, *Lawsuit alleges Baker County detention center denied lawyers access to immigration detainees*, Florida Phoenix, Sep. 26, 2022, https://floridaphoenix.com/2022/09/26/lawsuit-alleges-baker-county-detention-center-denied-lawyers-access-to-immigration-detainees/; Bill Keveney, *ICE Limits Migrants' Legal Rights, Raising Deportation Risk, ACLU Report Says*, USA Today, Jun. 29, 2022, https://www.usatoday.com/story/news/nation/2022/06/09/legal-rights-migrants-ice-detention-limited-tech-woes/7538769001/; Suzanne Monyak, *ICE Claims 'Unabated' Legal Access in Detention During Pandemic*, Roll Call, Mar. 22, 2022, https://rollcall.com/2022/03/22/ice-claims-unabated-legal-access-in-detention-during-pandemic/; Lautaro Grinspan, *Georgia Among Worst States for Legal Representation for Immigrants, Report Finds*, Atlanta Journal-Constitution, Aug. 9, 2021, https://www.ajc.com/news/georgia-among-worst-states-for-legal-representation-for-immigrants-report-finds/BXEQBX2KXFA53HQWWLM3RHBM7Q/; Kyle Kim, *Immigrants Held in Remote ICE Facilities Struggle to Find Legal Aid Before They're Deported*, L.A. Times, Sept. 28, 2017, https://www.latimes.com/projects/la-na-access-to-counsel-deportation/; Patrick Lee, *Immigrants in Detention Centers Are Often Hundreds of Miles from Legal Help*, ProPublica, May 16, 2017, https://www.propublica.org/article/immigrants-in-detention-centers-are-often-hundreds-of-miles-from-legal-help.

[4] Letter from Eunice Cho, Staff Attorney at Southern Poverty Law Center, and Ericka Curran, Clinical Professor at Florida Coastal School of Law, to ICE and Folkston ICE Processing Center (Aug. 22, 2017), folkston_law_library_letter_2017-8-22.pdf (splcenter.org); ACLU, Coalition Letter to DHS and ICE on Access to Counsel in Immigration Detention (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

representative of the news media, as described in the request, and because the records are not sought for commercial use.

ICE routinely grants the ACLU fee waivers in its FOIA requests, including those related to conditions of confinement in immigration detention. ICE has not indicated any reason as to why this request should be any different. *See, e.g.* ICE FOIA Case No. 2023-ICFO-25677, May 26, 2023 (granting fee waiver to ACLU for FOIA request to ICE regarding briefing and reports to Congress regarding appropriations to improve detention legal access);  ICE FOIA Case No. 2020-ICFO-16550, Jan. 9, 2020 (granting fee waiver to ACLU for FOIA request to ICE regarding detention contracts); ICE FOIA Case No. 2020-HQFO-01166, May 26, 2020 (granting fee waiver to ACLU for FOIA request regarding COVID-19 conditions in ICE detention); ICE FOIA Case No. 201-ICFO-14841, Jan. 11, 2018 (granting fee waiver to ACLU for FOIA request regarding segregation review management system in ICE detention); *see also. Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 287 (D. Conn. 2012) ("organizations like the ACLU are regularly granted news representative status" for FOIA fee waivers); *Am. C.L. Union of Washington v. U.S. Dep't of Just.*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (similar).



We appreciate your prompt response. Please contact me at (202) 393-4930 or email at mdominguez-ruiz@aclu.org if you  have any questions or wish to obtain further information.


Sincerely yours,


/s/ Marisol Dominguez-Ruiz
American Civil Liberties Union Foundation
National Prison Project
39 Drumm St.
San Francisco, CA 94111
(202)393-4930
mdominguez-ruiz@aclu.org

# EXHIBIT G

| | |
|---|---|
| **From:** | ICE-FOIA@ice.dhs.gov |
| **To:** | Marisol Dominguez-Ruiz |
| **Subject:** | ICE FOIA 2023-ICAP-00315 2023-ICFO-25873 |
| **Date:** | Monday, June 5, 2023 12:23:48 PM |

**This Message Is From an External Sender**
This message came from outside your organization.

06/05/2023

Marisol Dominguez Ruiz
39 Drumm St.
San Francisco, California 94111

RE:  ICE FOIA Case Number 2023-ICAP-00315

Dear Requester:

The Department of Homeland Security has received your letter appealing the adverse determination of your Freedom of Information Act/Privacy Act (FOIA/PA) request by U.S. Immigration and Customs Enforcement. Your appeal, postmarked or electronically transmitted on 5/31/2023, was received on 5/31/2023.

The Government Information Law Division acknowledges your appeal request of and is assigning it number 2023-ICAP-00315 for tracking purposes.  Please reference this number in any future communications about your appeal.

A high number of FOIA/PA requests have been received by the Department.  Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.   While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter.  Should you have any questions concerning the processing of your appeal, please contact Fernando Pineiro Jr., ICE FOIA Office/Public Liaison at (866) 633-1182 or at 500 12th St., SW Washington, DC 20536-5009.

Sincerely,

Christopher Lanks
Acting Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient,

you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1

# EXHIBIT H

| | |
|---|---|
| **From:** | ICE-FOIA@ice.dhs.gov |
| **To:** | Marisol Dominquez-Ruiz |
| **Subject:** | ICE FOIA 2023-ICAP-00315, 2023-ICFO-25873 |
| **Date:** | Wednesday, June 28, 2023 1:13:29 PM |
| **Attachments:** | 2152647-20230628150425665.zip |

**This Message Is From an External Sender**
This message came from outside your organization.

06/28/2023

RE:  ICE FOIA Case Number 2023-ICAP-00315, 2023-ICFO-25873

Dear Requester:

ICE's final response to your FOIA request, 2023-ICAP-00315, for Fee Waiver request is attached.

Please note that the attachment may be password protected. If you are prompted to enter a password when opening the attachment and you did not receive a password it may be in your junk/spam folder.

Sincerely,

ICE FOIA Office
Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and any disclosure, copying, or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.

Deloitte refers to a Deloitte member firm, one of its related entities, or Deloitte Touche Tohmatsu Limited ("DTTL"). Each Deloitte member firm is a separate legal entity and a member of DTTL. DTTL does not provide services to clients. Please see www.deloitte.com/about to learn more.

v.E.1



*Office of the Principal Legal Advisor*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536

June 28, 2023

Marisol Dominguez-Ruiz
ACLU National Prison Project
39 Drumm Street
San Francisco, CA 94111

**RE: 2023-ICAP-00315, 2023-ICAP-25873**

Dear Marisol Dominguez Ruiz:

This is in response to your letter dated May 31, 2023, received the same day, appealing the U.S. Immigration and Customs Enforcement's (ICE) Freedom of Information Act (FOIA) Office's constructive denial of your request for a fee waiver in request number 2023-ICAP-00315. This appeal adjudication is limited in scope to your request for a fee waiver. Your original ICE FOIA request received on May 8, 2023, sought the release of the following records, dated March 30, 2023, to the present:

Electronic Law Library materials provided at any Immigration Detention Facility; All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility; Any document related to software requirements for use of Electronic Law Library materials.

By letter dated May 24, 2023, the ICE FOIA Office confirmed receipt of the request, noting that "[w]e shall charge you for records in accordance with DHS Interim FOIA regulations as they apply to non-commercial requester." The request did not address ACLU's request for a fee waiver or confirm whether the fee waiver request had been reviewed, approved, or denied.

With respect to the fee waiver request, the DHS FOIA Regulations at 6 C.F.R. § 5.11(k) sets forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met. These factors are:

(1) Whether the subject of the requested records concerns "the operations or activities of the government";
(2) Whether the disclosure is "like to contribute" to an understanding of government operations or activities;
(3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons;

Dominguez-Ruiz
Page 2

    (4)  Whether the contribution to the public understanding of government operations or activities will be "significant";

    (5)  Whether the requester has a commercial interest that would be furthered by the requested disclosure; and

    (6)  Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

On appeal, ICE completes a *de novo* review of the fee assessment and fee waiver request.  As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met.

Upon review of the record, your request for a fee waiver in case 2023-ICAP-00315 is granted.

Should you have any questions regarding this appeal decision, please contact ICE at ice-foia@dhs.gov.  In the subject line of the email please include the word "appeal," your appeal number, which is **2023-ICAP-00315**, and the FOIA case number, which is **2023-ICFO-25873**.

Sincerely,

/s/ *Jennell Thomas*

*for*  Sara Jazayeri
Chief
Government Information Law Division
ICE Office of the Principal Legal Advisor
U.S. Department of Homeland Security

cc:    The ICE FOIA Office