MARISOL DOMINGUEZ-RUIZ (SBN 345416)
KYLE VIRGIEN (SBN 278747)
mdominguez-ruiz@aclu.org
kvirgien@aclu.org
**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
425 California Street, Suite 700
San Francisco, CA 94104
Tel.: (202) 393-4930

EUNICE CHO (Pro Hac Vice)
echo@aclu.org
**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Tel.: (202) 548-6616

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. 4:23-cv-3450<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 9, 2024<br>Time: 1:00 p.m.<br>Location: Videoconference<br>Judge: Hon. Donna M. Ryu |

1

### NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

2      TO DEFENDANTS AND COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on

3  May 9, 2024, at 1:00 p.m., or as soon thereafter as the parties may be heard, Plaintiff American

4  Civil Liberties Union will bring a hearing for summary judgment pursuant to Federal Rule of Civil

5  Procedure 56 in this Freedom of Information Act ("FOIA") action on the ground that Defendants

6  are unlawfully withholding agency documents, in particular that the records requested by Plaintiff

7  are agency records and are not subject to exemptions. The hearing will take place before the

8  Honorable Donna M. Ryu, via videoconference. This motion is based on this notice, the attached

9  memorandum of points and authorities, the accompanying Declaration of Marisol Dominguez-Ruiz

10  and attached exhibits, all pleadings and papers filed in this action, and such oral argument and

11  evidence as may be presented at the hearing on the motion.

12

13  Dated: January 29, 2024                    Respectfully submitted,

14
                                              /S/ Marisol Dominguez-Ruiz
15
                                              MARISOL DOMINGUEZ-RUIZ (SBN 345416)
16                                            KYLE VIRGIEN (SBN 278747)
                                              mdominguez-ruiz@aclu.org
17                                            kvirgien@aclu.org
                                              **AMERICAN CIVIL LIBERTIES**
18                                            **UNION FOUNDATION**
                                              425 California Street, Suite 700
19                                            San Francisco, CA 94104
                                              Tel.: (202) 393-4930
20
                                              EUNICE CHO (Pro Hac Vice)
21                                            echo@aclu.org
                                              **AMERICAN CIVIL LIBERTIES**
22                                            **UNION FOUNDATION**
                                              915 Fifteenth Street NW, 7th Floor
23                                            Washington, DC 20005
                                              Tel.: (202) 548-6616
24
                                              *Attorneys for Plaintiff*
25

26

27

28
   *ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

  A.   Tens of Thousands of Pro Se Detained Immigrants Rely on ICE's Electronic
       Law Library to Defend Themselves Against Deportation. ................................ 2

  B.   The ACLU's FOIA Request ............................................................................ 4

  C.   ICE's Contract with Relx, Inc. ....................................................................... 6

III.   LEGAL STANDARD ...................................................................................... 8

IV.    ARGUMENT .................................................................................................... 9

  A.   ICE Detention Electronic Law Library Records are Agency Records and Subject
       to Disclosure Under FOIA. ............................................................................. 9

  B.   The ICE Detention Electronic Law Library Records Are Not Confidential
       Commercial Information Subject to FOIA Exemption 4. ................................ 13

    1.   The Electronic Law Library Does Not Fall under Exemption 4 Because
         It Is Not Confidential. ............................................................................ 13

    2.   Defendants Waived Exemption 4 by Disclosing the Contents of the
         Electronic Law Library. ......................................................................... 16

V.     CONCLUSION ............................................................................................... 18

## TABLE OF AUTHORITIES

**CASES**

*ACLU of N. Cal. v. U.S. Dep't of Just.*,
  880 F.3d 473 (9th Cir. 2018)..................................................................................... 17

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
  905 F. Supp. 2d 206 (D.D.C. 2012) ........................................................................... 13

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  No. 12-CV-04376-KAW (N.D. Cal. July 30, 2021) .................................................... 15

*Attia v. Google LLC*,
  983 F.3d 420 (9th Cir. 2020)..................................................................................... 14

*Berry v. Dep't of Just.*,
  733 F.2d 1343 (9th Cir. 1984)................................................................................... 13

*Bounds v. Smith*,
  430 U.S. 817 (1977) ................................................................................................... 1

*Center for Investigative Reporting v. U.S. Dep't of Justice*,
  14 F.4th 916 (9th Cir. 2021) ................................................................................. 9, 16

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................................... 8

*Diocesan Migrant & Refugee Services, Inc. v. U.S. Immigr. and Customs Enforcement*,
  No. EP-19-CV-236-FM (W.D. Tex. Oct. 19, 2020) .................................................... 13

*Envtl. Prot. Agency v. Mink*,
  410 U.S. 73 (1973) ..................................................................................................... 8

*Food Mktg. Inst. v. Argus Leader Media*,
  139 S. Ct. 2356 (2019) ............................................................................................. 14

*Frazee v. U.S. Forest Serv.*,
  97 F.3d 367 (9th Cir. 1996)....................................................................................... 14

*Gen. Servs. Admin v. Benson*,
  415 F.2d 878 (9th Cir. 1969)..................................................................................... 15

*Gilmore v. U.S. Dep't of Energy*,
  4 F. Supp. 2d 912 (N.D. Cal. 1998) ........................................................... 2, 10, 11, 12

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ................................................................................................... 8

*Lahr v. NTSB*,
  569 F.3d 964 (9th Cir. 2009)..................................................................................... 14

*Mace v. EEOC,*
  37 F.Supp.2d 1144 (E.D.Mo.1999),
  *aff'd sub nom.* 197 F.3d 329 (8th Cir.1999)................................................................. 9

*Maydak v. U.S. Dep't of Just.,*
  218 F.3d 760 (D.D.C. 2000) ....................................................................................... 13

*Milner v. Dep't of Navy,*
  562 U.S. 562 (2011).................................................................................................... 8

*Minier v. Cent. Intel. Agency,*
  88 F.3d 796 (9th Cir. 1996)......................................................................................... 9

*Muchnick v. Dep't of Homeland Sec.,*
  225 F. Supp. 3d 1069 (N.D. Cal. 2016) ....................................................................... 8

*Nat'l Res. Def. Council v. U.S. Dep't of Def.,*
  388 F.Supp.2d 1086 (C.D. Cal. 2005) .......................................................................... 8

*Nat'l Archives & Recs. Admin. v. Favish,*
  541 U.S. 157 (2004).................................................................................................... 8

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy,*
  169 F.3d 16 (D.C. Cir. 1999)...................................................................................... 17

*Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.,*
  85 F. Supp. 3d 1074 (N.D. Cal. 2015) ......................................................................... 8

*Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State,*
  906 F.2d 1345 (9th Cir. 1990).................................................................................... 14

*Price v. U.S. Dep't of Just. Att'y Off.,*
  865 F.3d 676 (D.C. Cir. 2017) .................................................................................... 13

*Pub. Just. Found. v. Farm Serv. Agency,*
  538 F. Supp. 3d 934 (N.D. Cal. 2021) ........................................................................ 15

*Scudder v. Cent. Intel. Agency,*
  25 F. Supp. 3d 19 (D.D.C. 2014) ................................................................................. 9

*Tax Analysts v. U.S. Dep't of Justice,*
  913 F. Supp. 599 (D.D.C. 1996) ..................................................................... 10, 11, 12

*U.S. Dep't of Justice v. Tax Analysts,*
  492 U.S. 136 (1989).................................................................................................. 8, 9

*U.S. Dep't of State v. Ray,*
  502 U.S. 164 (1991).................................................................................................... 8

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

*Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*,
   690 F.2d 252 (D.C. Cir. 1982) ........................................................................ 14

*Watkins v. U.S. Bureau of Customs & Border Prot.*,
   643 F.3d 1189 (9th Cir. 2011)................................................................... 17, 18

*Weisberg v. U.S. Dep't of Justice*,
   705 F.2d 1344 (D.C. Cir. 1983) .......................................................................... 9

*Wolff v. McDonnell*,
   418 U.S. 539 (1974) ............................................................................................. 1

*Yagman v. Pompeo*,
   868 F.3d 1075 (9th Cir. 2017)............................................................................. 8

**STATUTES**

5 U.S.C. § 552 ............................................................................................... passim

**OTHER AUTHORITIES**

DHS, ICE, *Access to Due Process, Fiscal Year 2022 Report to Congress* 9 (2023),
   https://www.dhs.gov/sites/default/files/2023-
   03/U.S.%20Immigration%20and%20Customs%20Enforcement
   %20%28ICE%29%20%E2%80%93%20Access%20to%20Due%20Process_0.pdf ........... 3, 18

ICE, *Attorney Information and Resources*, https://www.ice.gov/detain/attorney
   -information-resources (Jan. 11, 2024) ....................................................... 16, 17

ICE, Enf't & Removal Operations Custody Mgmt. Div., *Authorized Dedicated
   and Nondedicated Facility List* (Jan. 2, 2024),
   https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx .......... 3

ICE, *National Detention Standards for Non-Dedicated Facilities* § 6.3 (2019),
   https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf............................ 3

ICE, *Performance-Based National Detention Standards 2011* § 6.3 (2016)
   https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf.......................... passim

*Immigration Detention Quick Facts*, Transactional Records Access Clearinghouse,
   https://trac.syr.edu/immigration/quickfacts/ (last updated Dec. 31, 2023) ................. 2

Ingrid Eagly & Steven Shafer, *Access to Counsel in Immigration Court* 4-5 (2016),
   https://www.americanimmigrationcouncil.org/sites/default/files/research/
   access_to_counsel_in_immigration_court.pdf ........................................................ 3

*Outcomes of Immigration Court Proceedings*, Transactional Records Access Clearinghouse,
   https://trac.syr.edu/phptools/immigration/closure/ (last updated Dec. 31, 2023) .................... 3

## I.    INTRODUCTION

This Freedom of Information Act ("FOIA") lawsuit concerns law library materials in electronic form ("electronic law library") that Immigration and Customs Enforcement ("ICE") provides to immigrants held in its detention facilities. Each year, tens of thousands of detained immigrants appear without counsel in hearings that will determine whether they can remain in the United States or will be deported. In many of these cases, the only legal resources available to pro se detained immigrants are the contents of ICE's electronic law library.

As a matter of policy, ICE requires that immigration detention facilities make available in their law libraries "electronic media provided by ICE/ERO, containing the required publications or other supporting legal research platforms for detainees," located on "CD-ROMs or External Hard Drives developed by legal research service vendors utilized by ICE."[1] ICE contracts with Relx, Inc. ("Relx"), a commercial vendor, to provide the electronic legal materials that ICE provides to its detention facilities. Because ICE only encourages, but does not require, immigration detention facilities to make available books or paper versions of legal resources in its law libraries,[2] these electronic law library materials may be the only legal resources that detained immigrants have available to prepare for their cases against deportation.

As people held in the government's custody, detained immigrants have a fundamental constitutional right to "access to a reasonably adequate law library for preparation of legal actions." *Bounds v. Smith*, 430 U.S. 817, 829 (1977) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 578-79 (1974)). The public has a vital interest in understanding the content, accuracy, accessibility, and operation of electronic law library materials provided by ICE to detained immigrants fighting deportation by the government. For this reason, Plaintiff American Civil Liberties Union Foundation ("ACLU" or "Plaintiff") submitted a FOIA request to Defendants ICE and the Department of Homeland Security ("DHS") for the electronic law library materials provided by the

---

[1] ICE, *Performance-Based National Detention Standards 2011* § 6.3, at 423 (2016) (Law Libraries and Legal Material) [hereinafter "PBNDS 2011"], https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf. "ERO" is an abbreviation of "Enforcement and Removal Operations."
[2] *Id.*

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

government to detained immigrants. Plaintiff filed this lawsuit after Defendants failed to respond as FOIA requires.

Since then, Defendants have refused to produce the electronic law library materials to Plaintiff as required under FOIA, 5 U.S.C. § 552, arguing that they are not "agency records" that can be disclosed. However, the requested materials clearly meet the definition of "agency records" subject to disclosure under FOIA. ICE, a government agency, obtained the records at issue, and has control of the electronic law library. Defendants have produced no evidence, whether in ICE's contract with Relx or otherwise, of any use restrictions that would inhibit its control of the records. *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 917 (N.D. Cal. 1998). Moreover, the requested materials shed important light on ICE's decision-making and performance of its constitutional duties. Nor can Defendants refuse to provide these records under Exemption 4, 5 U.S.C. § 522(b)(4), which only allows the government to withhold confidential information. The records requested are far from confidential: by policy, ICE makes this information available to tens of thousands of detained immigrants each day.

Defendants have improperly withheld agency records, and cannot justify their withholdings under Exemption 4. The Court should grant Plaintiff's motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Tens of Thousands of Pro Se Detained Immigrants Rely on ICE's Electronic Law Library to Defend Themselves Against Deportation.

At the time Plaintiff initially submitted its FOIA request, ICE detained approximately 24,000 people each day in its detention centers nationwide. S*ee* Compl., ECF No. 1, at ¶ 2. Since then, this number has increased by over 50 percent, to more than 37,000 immigrants detained by ICE each day.[3] On average, 14 percent of people held in ICE detention are represented by an attorney during their immigration proceedings, leaving the vast majority of detained immigrants to

---

[3]  *Immigration Detention Quick Facts*, Transactional Records Access Clearinghouse, https://trac.syr.edu/immigration/quickfacts/ (last updated Dec. 31, 2023).

navigate complex immigration proceedings to avoid deportation on their own.[4] In FY 2023, over 66,000 detained immigrants appeared in immigration court without counsel.[5]  In many of these cases, the only legal materials that pro se detained immigrants may have available are those that ICE provides to them in detention center law libraries. ICE requires most of its detention facilities to provide law library materials in electronic form, provided by ICE to the facility via either CD-ROM or external hard drive, while paper versions are optional.[6] In response to growing concerns with ICE's failure to protect the due process rights of detained immigrants,  ICE reported to Congress in January 2023 that it had implemented changes to "increase language accessibility of the current electronic law library database available in ICE detention facilities," to "enhance[] the usability of the database for non-English readers," and "increase[] the availability of self-help legal resources and other information in three additional languages."[7] The content, accuracy, accessibility, and operation of electronic law library materials that ICE provides to detained people is thus a matter of public importance, and public disclosure of these materials will shed light on ICE's compliance with requirements to provide constitutionally adequate law library materials to people it detains and seeks to deport.

---

[4]  Ingrid Eagly & Steven Shafer, *Access to Counsel in Immigration Court* 4-5 (2016), https://www.americanimmigrationcouncil.org/sites/default/files/research/access_to_counsel_in_immigration_court.pdf.

[5]  *Outcomes of Immigration Court Proceedings*, Transactional Records Access Clearinghouse, https://trac.syr.edu/phptools/immigration/closure/ (last updated Dec. 31, 2023).

[6] ICE, Enf't & Removal Operations Custody Mgmt. Div., *Authorized Dedicated and Nondedicated Facility List* (Jan. 2, 2024), https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx (specifying applicable detention standards at ICE detention facilities); ICE, PBNDS 2011, *supra* note 1 ("Facilities are encouraged to make available paper versions of the materials . . . . Regardless of whether paper versions are provided, facilities must make available in the law library any electronic media provided by ICE/ERO"); ICE, *National Detention Standards for Non-Dedicated Facilities* § 6.3, at 186 (2019), https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf ("ICE/ERO will provide updated electronic materials to facilities on a regular basis.").

[7]  DHS, ICE, *Access to Due Process, Fiscal Year 2022 Report to Congress* 9 (2023), https://www.dhs.gov/sites/default/files/2023-03/U.S.%20Immigration%20and%20Customs%20Enforcement%20%28ICE%29%20%E2%80%93%20Access%20to%20Due%20Process_0.pdf.

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**B.  The ACLU's FOIA Request**

On March 30, 2023, Plaintiff submitted a FOIA request to ICE and DHS seeking a copy of the electronic law library in its native format. The request sought:

1. Electronic Law Library[8] materials provided at any Immigration Detention Facility;

2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility;

3. Any document related to software requirements for use of Electronic Law Library Materials.

*See* Compl., ECF No. 1, at ¶ 38. Parts 1 and 2 above do not seek any source code or any confidential information. To the contrary, they are limited to records that Defendants already make available to people held in ICE detention. Part 3 above simply seeks information about the requirements to run the electronic law library software, which also does not implicate any confidential information. On May 8, 2023, Defendant DHS acknowledged receipt of the FOIA request and informed Plaintiff that the request had been transferred to ICE. *Id.* at ¶ 43. Defendants' acknowledgment triggered their responsibility to respond to the FOIA request within 20 business days. *See* 5 U.S.C. § 552(a)(6)(A)(i). On May 24, 2023, Plaintiff received an email from Defendant ICE invoking a 10-day extension, as allowed by 5 U.S.C. § 552(a)(6)(B). On July 11, 2023, well over 30 business days after Defendants' acknowledgment of receipt, Plaintiff brought this action. *Id.*

Since then, both parties have met and conferred in efforts to resolve outstanding issues and reach an agreement. On November 9, 2023, the parties attended a settlement scheduling conference call with Magistrate Judge Laurel Beeler. The settlement conference is scheduled for March 27, 2024. Defendants produced documents related to the second part of Plaintiff's request, "Supporting Materials," on October 20, 2023. Defendants also advised Plaintiff that a "reasonable search for

---

[8] "Electronic law library" is defined in the Request as "all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries. Electronic law library materials may include, but are not limited to, materials available on CD-ROMs or External Hard Drives, materials developed by legal research vendors such as Lexis Nexis, and/or materials listed in 'Appendix 6.3.A: List of Legal Reference Materials for Detention Facilities' and 'Appendix 6.3.B: Optional Legal Reference Materials.'" Pl.'s FOIA Request, ECF No. 1-1, at 4.

documents in category (3)" was conducted and "no such documents exist." Joint Case Management Statement, Oct. 11, 2023, ECF No. 19, at 3. Defendants, however, have declined to produce a copy of the electronic law library in its native format, citing two main defenses: 1) it is not an agency record and 2) it is exempt from disclosure under Exemption 4. *See* 5 U.S.C. § 552(b)(4); Joint Case Management Statement at 3-4.

Defendants point to a contract between ICE and a third party, Relx, Inc., d/b/a LexisNexis, as the reason for withholding a copy of the electronic law library. According to Defendants, "[t]he native materials provided by the contractor are not controlled by or subject to the free disposition of ICE, and thus are not agency records" and "the contractor's proprietary information . . . is exempt from disclosure. . . ." Joint Case Management Statement at 3-4. The government argues that the "external hard drive . . . is owned by the contractor," "subject to intellectual property protections" and "provided to ICE under a limited license." *Id.* at 3.  The government claims that even if ICE had control over the requested information, the requested information would not qualify as an agency record because it would not provide "information about the government's operation, structure, or decision-making processes." *Id.* at 4.

The parties informally met and conferred to discuss the production of the contract in question. On November 2, 2023, Plaintiff submitted a first request for production of documents related to the contract between ICE and the third-party contractor. *See* Second Joint Case Management Statement, Dec. 13, 2023, ECF No. 29, at 6. Plaintiff also submitted another FOIA request for the contract. On November 8, 2023, Plaintiff withdrew both requests after Defendants agreed to produce the contract. *Id*. Defendants produced the contract and accompanying addenda between ICE and Relx, Inc. on November 9, 2023. *Id.*; Declaration of Marisol Dominguez Ruiz, Ex. A (Contract). On January 8, 2023, Plaintiff requested that Defendants provide any additional documents or contract addenda that detail ICE's limitations on the distribution of the electronic law library, or external hard drive on which it is located, or ICE's requirement to return the external hard drive at the end of the contract. *See* Dominguez Ruiz Decl., Ex. B (Email between Counsel).

1   Defendants' counsel responded to the request by informing Plaintiff that he is "not presently aware

2   of any such additional documents." *Id.*

3   **C. ICE's Contract with Relx, Inc.**

4   ICE has contracted with Relx, Inc., to "provide and maintain access to legal reference

5   materials" for the purpose of "ensur[ing] adequate access to comprehensive legal materials for

6   individuals held at ICE detention facilities." Contract at 9.[9] ICE awarded the operative contract

7   with Relx on November 10, 2022, for a duration of up to five years. *Id.* at 1, 3. The contract provides

8   that the "vendor will deploy both the custom interface online/tablet solution for 45,000 detainees

9   and maintain/update 250 external hard drives across the entire ICE network of facilities." *Id.* at 3.

10   The contract sets out two separate methods for detainees to access legal resource materials: first, a

11   self-contained legal research system located on an Electronic Hard Drive ("EHD") for detention

12   facilities without Internet connectivity, and second, an Online Legal Research System that will

13   "offer a user-friendly method for immigration detainees to perform legal research" in facilities

14   where internet access is available to detainees. *Id.* at 9, 14.

15   The materials at issue in this FOIA case concern the first category of records.  Although the

16   contract states that these electronic law library materials must be offered to detention facilities on

17   an "Electronic Hard Drive," the contract also requires Relx to "offer the research program on CD-

18   ROMs for any ICE facilities with computers that are not EHD compatible," and "provide copies of

19   the EHD for distribution to all ICE field offices and/or detention facilities and ICE Headquarters."

20   *Id.* at 13-14. The contract also specifies a number of technical and content requirements for the

21   electronic law library. The contract requires the electronic law library to be "easily navigable," and

22   "avoid the use of legal jargon wherever possible."  *Id.* at 9. It further dictates the format of the

23   program's home screen, *id*. at 10,  the database content, *id.* at 11-12, 14-15, 22-82,  and the research

24   functionalities, *id.* at 12, 15. The contract specifies required content to be provided to detainees,

25   including the most recent versions of 29 legal reference materials specified in ICE's Detention

26

27   [9] For ease of reference, page citations to the Contract refer to the Bates Number pagination at
Exhibit A of the Dominguez Ruiz Declaration.

28   *ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Standards,[10] a copy of the ICE Detainee Handbook, copies of relevant ICE documents and forms, state criminal statutes, the full U.S. Code, the full Code of Federal Regulations, immigration opinions from administrative and federal courts, U.S. Department of State and Department of Justice country reports, American Bar Association Know Your Rights Materials, publicly available ICE directives and policy memoranda, and a full nationwide federal case database. *Id.* at 11-14. Oddly, the contract does not require the library to include applicable detention standards regarding conditions of confinement at each facility. While Relx is responsible for the creation and maintenance of the electronic law library, Relx must follow strict guidelines set out by ICE. *Id.* at 83. ICE selects the due date of each deliverable and in what format and to whom. *Id.* at 16-17. ICE has the authority to "accept or reject deliverable within thirty (30) calendar days;" Relx is allowed to make corrections and resubmit the electronic law library for review by ICE within 15 calendar days. *Id.* at 18. ICE ensures "quality assurance . . . to ensure performance standards are achieved and maintained." *Id.* at 83. Relx is also required to create a quality control plan to prove it meets ICE's requirements. *Id.* at 84.

Missing from the contract, however, is any language involving limited licensing or intellectual property protections. No mention of "copyright," "intellectual property," "proprietary," "patent," or "exclusive right" appears at all in the contract. Nor does the contract restrict ICE's ability to distribute the external hard drives, or prevent the people held in ICE detention facilities from using the law library and further distributing its contents however they would like. No language in the contract specifies ownership of the electronic hard drives, or requires ICE to return them to Relx at any time. The only instance in which the word "license" appears at all in the contract is a requirement that Relx obtain a license for materials developed and owned by other companies, and, when electronic licensing is not possible, to provide the materials in hard copy. *Id.* at 11.

---

[10] *See* ICE, PBNDS 2011 429, App. 6.3A, https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf, (listing required resources).

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

7

1

### III.    LEGAL STANDARD

2
3
4
5
6
7
8
9
10
11
12
13
14
15

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Muchnick v. Dep't of Homeland Sec.*, 225 F. Supp. 3d 1069, 1072 (N.D. Cal. 2016) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). The Supreme Court has observed that "[w]ithout question, [FOIA] is broadly conceived" and is animated by a "philosophy of full agency disclosure." *Id.* at 151 (quoting *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973) and *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). "Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out what their government is up to." *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017) (citation omitted). "This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171–72 (2004). FOIA therefore sets a "strong presumption in favor of disclosure." *Ray*, 502 U.S. at 173.

16
17
18
19
20
21
22
23
24
25

The government always bears the burden to prove that records sought are not agency records or have not been improperly withheld. 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989) ("*Tax Analysts I*"). Consistent with the presumption of disclosure, FOIA exemptions are "explicitly made exclusive and must be narrowly construed," and doubts are resolved in favor of disclosure. *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citations omitted). "Because[] '[t]hese limited exceptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act,' exemptions are to be narrowly construed, and 'information not falling within any of the exemptions has to be disclosed.'" *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1084 (N.D. Cal. 2015) (citations omitted).

26
27
28

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. U.S. Dep't of Def.,* 388 F.Supp.2d 1086, 1094 (C.D. Cal. 2005) (quoting

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
Plaintiff's Motion for Summary Judgment

*Mace v. EEOC,* 37 F.Supp.2d 1144, 1145 (E.D.Mo.1999), *aff'd sub nom. Mace v. EEOC,* 197 F.3d 329 (8th Cir.1999)). The underlying facts and possible inferences are construed in favor of the FOIA requester. *Id.* at 1095 (citing *Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1350 (D.C. Cir. 1983)). Because the facts are rarely in dispute in a FOIA case, the Court need not ask whether there is a genuine issue of material fact. *Minier v. Cent. Intel. Agency,* 88 F.3d 796, 800 (9th Cir. 1996).

The Electronic Freedom of Information Act Amendments of 1996 requires the government to "provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format" and to "make reasonable effort to search for the records in electronic form or format." 5 U.S.C. § 552(a)(3)(B) and (C); *see also Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 36 (D.D.C. 2014) ( "whenever an agency already maintains a record in more than one form or format, the requester can choose the one in which it will be disclosed"). "Computer database records are agency records subject to the FOIA." *Center for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 937-38 (9th Cir. 2021).

## IV.    ARGUMENT
### A.    ICE Detention Electronic Law Library Records are Agency Records and Subject to Disclosure Under FOIA.

The electronic law library materials distributed by ICE to detained immigrants are "agency records" subject to disclosure under FOIA. ICE fails to meet its burden to show otherwise. To qualify as an "agency record," a record must fulfill two requirements. First, a federal agency must "create or obtain the requested materials." *Tax Analysts I*, 492 U.S. at 145. It is clear that ICE has obtained the requested electronic law library materials from Relx. *See generally* Contract. Second, the agency must "be in control of the requested materials at the time the FOIA request is made," meaning "that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts I*, 491 U.S. at 145. Defendants argue that this requirement is not met, but they fail. There is no question as to the fact that the electronic law library came into ICE's possession in a legitimate fashion.

The government seeks to withhold the electronic law library materials from the public, arguing that the materials are not within its control. This is incorrect. Citing to *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp.2d 912 (N.D. Cal. 1998), the government argues that the electronic law library materials "are not controlled by or subject to the free disposition of ICE, and thus are not agency records," by the terms of its contract with Relx. Joint Case Management Statement at 9. In *Gilmore*, this court examined whether a video conference software program and its source code used by the government constituted an agency record under FOIA. Examining whether the government had control over the software program, *Gilmore* adopted the analysis used in *Tax Analysts II,* where "the key element of 'control' was whether the records at issue were subject to the free disposition of the agency." *Gilmore*, 4 F. Supp. 2d at 918 (citing to *Tax Analysts v. U.S. Dep't of Justice*, 913 F. Supp. 599, 603 (D.D.C. 1996) ["*Tax Analysts II*"]). In *Tax Analysts II*, the contract terms granted the government "a limited, nonexclusive, nontransferable license" where "any storage, reproduction, transmission, or transfer for consideration of any portion of the information, the data, or the data base is strictly prohibited." *Tax Analysts II*, 913 F. Supp. at 604 (D.D.C. 1996). Accordingly, the *Tax Analysts II* court held that the government's "right to use, transfer and/or dispose [the data] was greatly restricted," therefore it did not have exclusive rights, no control, and data was not subject to disclosure. *Id*. at 607. Because the government "merely possess[ed] a license to use [the program] for government purposes," *Gilmore* concluded that the requested records were not an "agency record" available for disclosure under FOIA. 4 F. Supp. 2d at 918-19.

The ICE detention electronic law library, and the underlying contract for these materials, however, are entirely distinct from those considered in *Gilmore* and *Tax Analysts II. Gilmore* addressed a FOIA request for a copy of video conferencing software used by the government, as well as its source code, made by a requestor who intended to disseminate this information over the Internet. The court concluded that the requested software and source code was not an agency record because the government's contract with the software creator explicitly restricted the government's control of the software, via a nonexclusive license to use the intellectual property. *Gilmore,* 4 Supp.

2d at 918. Likewise, *Tax Analysts II* addressed a FOIA request for a copy of an electronic legal research database depository (a precursor to Westlaw) that included publicly available federal cases, regulations, and digest material in a format that allowed government attorneys to more easily conduct research for their cases. Like *Gilmore*, the contract in question in *Tax Analysts* significantly restricted the government's use and transfer of the database.

A thorough reading of the contract between ICE and Relx, however, reveals otherwise: not a single clause in the contract restricts ICE's ability to disclose the electronic law library materials, in either form or content, to the public. The contract between ICE and Relx is entirely devoid of language that restricts ICE's ability to transfer, share, or dispose of the data. There is no mention of any license or copyright to the electronic law library that would restrict ICE's use of the material in the contract. This is perhaps to be expected. Unlike the software and database programs purchased for use by government employees at issue in *Gilmore* and *Tax Analysts II*, the purpose of the electronic law library materials is entirely different: it is a public resource, provided by the government, for widespread distribution and use by tens of thousands of detained people each day in performance of the government's constitutional duty. And unlike the FOIA requester in *Gilmore*, Plaintiff does not seek source code but simply seeks the same access to the electronic law library that the tens of thousands of users in ICE detention have daily.

Defendants argue that they lack control because Relx owns the external hard drives containing the electronic law library, "updates the external hard drive[s] quarterly, and because ICE is required to return [the external hard drives] at the conclusion of the contract." Joint Case Management Statement at 3. But this is a red herring. First, the contract provided by Defendants does not specify who owns the external hard drives, nor does it require ICE to return them at the conclusion of the contract period. Second, Plaintiff does not seek the hardware (i.e. the electronic hard drive itself), but rather the information that is provided to detained immigrants by ICE in detention law libraries. Defendants, moreover, omit that Relx is required to provide the electronic law library to ICE and its detention facilities in CD-ROM format, which are easily reproduced,

particularly in FOIA cases.[11]  Contract at 13 ("The Contractor must offer the research program on CD-ROMs for any ICE facilities with computers that are not EHD compatible."). This CD-ROM production requirement is also contemplated in ICE's Detention Standards. *See* ICE, PBNDS 2011 § 6.3 (specifying that electronic media provided by ICE/ERO "may include CD-ROMs or External Hard Drives developed by legal services vendors utilized by ICE.").

Pointing to *Gilmore,* the government further claims that the electronic law library materials do not provide information about the "structure, operation or decision-making procedures" of the agency, and are thus not an "agency record." *Gilmore*, 4 F. Supp.2d at 920 (citing *Tax Analysts II*, 913 F. Supp. at 607); *see also* Joint Case Management Statement at 3. The government bases this argument on its contention that the electronic law library is not "utilized by agency personnel, and thus . . . provide[s] no information about the government's operation, structure, or decision-making process."  Joint Case Management Statement at 3-4.   But Defendants miss the point: the electronic law library materials, in the format used by detained immigrants, are a direct result of ICE's decision-making. Through the electronic law library, ICE has decided what legal resources it will (or will not) make available to people it seeks to deport while in its custody, and whether, and in what format, detained immigrants may access this information. Production of this material, in its native form, will clearly illuminate whether ICE detention law libraries accord with constitutional and regulatory standards. Indeed, disclosure of this material will "shed light on the conduct of [the] agency," while continued withholding will only permit ICE "to insulate itself from public scrutiny of its operations." *Tax Analysts II*, 913 F. Supp. at 607. Unlike a software or database program used by government employees to conduct videoconferences or to conduct research, the electronic law library materials "expose the government decision-making process." *Gilmore*, 4 F. Supp.2d at 921.

---

[11] Defendant DHS frequently releases responses to FOIA requests in CD-ROM format. *See* U.S. DHS, *Privacy Impact Assessment for the FOIA Immigration Records System* 7 (2019), https://www.dhs.gov/sites/default/files/publications/privacy-pia-uscis-first-march2019.pdf_0.pdf (noting that "if the requester does not opt-in to receiving records online, the records are mailed to the requester on a CD.").

Indeed, the electronic law library materials sought by Plaintiff are exactly "the type of information that Congress intended to make available to the public under the FOIA." *Id.* at 920. FOIA "provides an important vehicle for vindicating significant rights," *Price v. U.S. Dep't of Just. Att'y Off.,* 865 F.3d 676, 682 (D.C. Cir. 2017), like the rights of detained immigrants here. For this reason, courts have frequently ordered the government to disclose the information it has provided to immigrants and prisoners regarding their rights in government proceedings under FOIA. *See, e.g.*, *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 219 (D.D.C. 2012) (ordering disclosure of "Know Your Rights" information provided by DHS to immigrants); *Diocesan Migrant & Refugee Services, Inc. v. U.S. Immigr. and Customs Enforcement*, No. EP-19-CV-236-FM, 2020 WL 7706275, at *9 (W.D. Tex. Oct. 19, 2020) (ordering disclosure of know-your-rights presentations and information provided by ICE to migrants prior to immigration court hearings); *Berry v. Dep't of Just.*, 733 F.2d 1343, 1344 (9th Cir. 1984) (ordering disclosure of presentence investigation report to prisoner); *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 769 (D.D.C. 2000) (ordering disclosure of law enforcement records connected with criminal prosecution). Disclosure of the electronic law library will ultimately inform the public as to whether the government provides adequate access to legal materials to people in ICE custody and how the constitutional rights of thousands of people in custody are protected.

### B. The ICE Detention Electronic Law Library Records Are Not Confidential Commercial Information Subject to FOIA Exemption 4.

Defendants claim that they need not provide the electronic library under FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This argument fails for two reasons: first, the electronic law library, which Defendants make widely available to people they detain, is not "confidential," and second, even if it is "confidential," Defendants have waived this exemption by making it public.

#### 1. The Electronic Law Library Does Not Fall under Exemption 4 Because It Is Not Confidential.

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The burden of showing the electronic law library falls under Exemption 4 lies with the government. *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009) (citations omitted) ("FOIA's strong presumption in favor of disclosure means that an agency that invokes one of the statutory exemptions to justify the withholding of any requested documents or portions of documents bears the burden of demonstrating that the exemption properly applies to the documents.").

Exemption 4 "is available to prevent disclosure of (1) trade secrets and commercial or financial information, (2) obtained from a person or by the government, (3) that are privileged or confidential." *Pac. Architects & Eng'rs Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1347 (9th Cir. 1990). "These three requirements are conjunctive," so Defendants must prove all three to withhold a record. *Id.* Specifically, the parties' dispute falls within the third requirement and involves whether the electronic law library is "confidential."[12] Until recently, courts analyzed the "confidential" requirement by determining whether disclosure would cause "substantial competitive injury." *E.g.*, *Frazee v. U.S. Forest Serv.*, 97 F.3d 367, 371 (9th Cir. 1996) (citation and quotation marks omitted). In 2019, however, the Supreme Court overturned this test, finding a "'competitive harm' requirement inconsistent with the terms of the statute." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2361 (2019). Instead, the Supreme Court looked to the ordinary meaning of the term "confidential" at the time the FOIA statute was passed. *Id.* at 2363. It found "two conditions that might be required for information communicated to another to be

---

[12] Plaintiff does not dispute the first requirement. The electronic library is not a "trade secret" because it is widely published. *Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (holding it is "well-settled that publication of information in a patent application eliminates any trade secrecy"). Nor is the electronic law library "financial information." However, Plaintiff does not contest that the electronic law library constitutes "commercial" information. Plaintiff also does not contest the second requirement, that the electronic law library was "obtained from a person or by the government." The parties' dispute thus arises under the third requirement, under which Defendant must prove the electronic law library is "privileged" or "confidential." Defendant does not contend the electronic law library is privileged. Nor can it because courts have construed "privileged" to refer to evidentiary privileges such as the attorney-client privilege. *Wash. Post Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 267 n.50 (D.C. Cir. 1982) ("We have found only two district court cases holding information to be privileged under Exemption 4 and both involve the attorney-client privilege, which is explicitly mentioned in the legislative history of Exemption 4."). The dispute thus boils down to whether the electronic law library is "confidential" under § 552(b)(4).

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

considered confidential" under the term's common meaning: (1) "whenever it is customarily kept private, or at least closely held, by the person imparting it," and (2) "if the party receiving it provides some assurance that it will remain secret." *Id.* The Supreme Court held that the government must satisfy the first requirement to withhold information as "confidential" under Exemption 4, and it did not reach the question whether the government must also satisfy the second requirement. At least one court in this District has found that both requirements apply within the Ninth Circuit. *Pub. Just. Found. v. Farm Serv. Agency*, 538 F. Supp. 3d 934, 942 (N.D. Cal. 2021). It explained that the Supreme Court's *Argus Leader* opinion acknowledged the Ninth Circuit's opinion in *Gen. Servs. Admin v. Benson*, which held that information is "confidential" under Exemption 4 only if it was "reveal[ed] to the government under the express or implied promise by the government that the information will be kept confidential." *Id.* (quoting *Gen. Servs. Admin v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969)). The district court then found that both requirements of the *Argus Leader* test apply within the Ninth Circuit—the first because it is mandated by *Argus Leader* and the second because it is mandated by *Benson*, which *Argus Leader* left undisturbed. *Id.*

Here, regardless of whether the Court applies only the first *Argus Leader* requirement or both, Defendants fail because they can satisfy neither requirement. First, Defendants cannot show that Relx customarily keeps the contents of the electronic law library private. Courts analyzing this requirement require a company to take strict measures to keep the information at issue private, even going beyond having some confidentiality agreements in place. For example, in another FOIA case, where requestors sought information from the government about the conditions in which hens may be kept in egg farms, a court found that egg farms' "Hen Housing Information" was not confidential even when "some [farm] employees were required to sign confidentiality agreements" because "there was nothing legally preventing employees from disclosing the Hen Housing Information to competitors or any other individual," and because "no suppliers or servicers were prevented from disclosing the Hen Housing Information to competitors." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, No. 12-CV-04376-KAW, 2021 WL 3270666, at *7 (N.D. Cal. July 30, 2021). Defendants cannot show that Relx took any such measures. The contract between Defendants and

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1    Relx indisputably lacks a non-disclosure agreement or provision that could otherwise keep the

2    contents of the electronic law library confidential. *See generally* Contract, Ex. A. The contract does

3    the opposite, explicitly making the electronic law library widely available to "45,000 detainees . . .

4    across the entire ICE network of facilities." *Id.* at 3. Defendant ICE also claims on its website that

5    law libraries in its detention facilities "are equipped with computers, printers and photocopiers,"[13]

6    and its detention standards ensure that "detainees can obtain at no cost to the detainee photocopies

7    of legal material . . . ."[14] Defendants thus fail to meet this requirement of the test for

8    "confidentiality" under Exemption 4. The Court need go no further in its analysis whether the

9    electronic law library is exempt as "confidential."

10   If the Court considers the second requirement, Defendants also fail because they cannot

11   show that they provided Relx any assurance that the electronic law library will remain secret.

12   Nothing in the contract between Defendant and Relx provides any guarantee of secrecy. *See*

13   *generally* Contract, Ex. A. Instead, the contract explains quite clearly that Defendant will not keep

14   the information secret, stating that Defendant will share the electronic law library with some

15   "45,000 detainees . . . across the entire ICE network of facilities." *Id.* at 3. This language clearly

16   indicates that both ICE and Relx intended the electronic law library to be publicly available, and

17   made no assurances of privacy. *E.g.*, *Ctr. for Investigative Reporting v. Dep't of Lab.*, No. 18-CV-

18   02414-DMR, 2020 WL 2995209, at *5 (N.D. Cal. June 4, 2020) (relying on the government's

19   statements that it would "post the data" at issue "on a publicly accessible Web Site"); *Ctr. for*

20   *Investigative Reporting v. U.S. Dep't of Lab.*, 470 F. Supp. 3d 1096, 1117 (N.D. Cal. 2020) (same).

21   Defendants thus also fail to meet this second requirement, and the electronic law library is not

22   "confidential." Exemption 4 therefore does not shield the electronic law library from production.

### 2. Defendants Waived Exemption 4 by Disclosing the Contents of the Electronic Law Library.

---

[13] ICE, *Attorney Information and Resources*, https://www.ice.gov/detain/attorney-information-resources (Jan. 11, 2024).

[14] ICE, Performance-Based National Detention Standards 2011, at 425 (rev. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

16

Even if the Court finds that Exemption 4 applies (which it should not), Defendants waived the ability to assert this exemption by widely distributing the same materials that they now attempt to withhold. "[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *ACLU of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 491 (9th Cir. 2018) (quotation marks and citation omitted); *see also Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) ("[I]f identical information is truly public, then enforcement of an exemption cannot fulfill [FOIA's] purposes."). Thus, "when an agency freely discloses to a third party confidential information covered by a FOIA exemption without limiting the third-party's ability to further disseminate the information then the agency waives the ability to claim an exemption to a FOIA request for the disclosed information." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1198 (9th Cir. 2011). Although the government bears the burden of proof in FOIA cases and generally also bears the burden of production, "[o]n this issue [Plaintiff] has the burden of production, for otherwise [Defendants] would theoretically have to identify all public sources *not* reproducing the information." *Niagara Mohawk Power Corp.*, 169 F.3d at 19.

The Ninth Circuit explained this exemption in *Watkins*, where it addressed the records the government creates when it seizes counterfeit goods that infringe on trademarks. *Watkins*, 643 F.3d at 1196. The government creates notices of seizures, and it discloses these notices to the owners of the trademarks that the seized counterfeits infringed, with no restrictions on how those trademark owners could further distribute the notices. *Id.* at 1197. The Ninth Circuit held that "[t]his no-strings-attached disclosure . . . voids any claim to confidentiality and constitutes a waiver of Exemption 4." *Id.* Defendants similarly make the electronic law library available to tens of thousands of people whom they hold, with no restrictions on their ability to further disseminate its contents. Contract at 3. In a report to Congress, Defendant ICE has made claims about the specific materials available in this electronic law library,[15] and it has claimed to have made improvements

---

[15] ICE, *Attorney Information and Resources*, https://www.ice.gov/detain/attorney-information-resources ("The ICE Electronic Law Library (ELL) also includes a number of additional resources

to "enhance[] the usability of the database for non-English readers."[16] Defendants have publicly disclosed the electronic law library by making it widely available in ICE detention facilities. *See Watkins*, 643 F.3d at 1196. They have further disclosed it by publishing specific claims about its contents and features to Congress and on the internet. As a result, they cannot assert Exemption 4 to prevent Plaintiff from obtaining the same electronic law library already made available in ICE detention and verifying the public claims that Defendants have made about its contents and accessibility.

## V.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment should be GRANTED.

---

specific to immigration matters: Legal Orientation Program (LOP) materials, DHS Office of the Inspector General (OIG) and Civil Rights and Civil Liberties (CRCL) complaint information, pro se hand-outs and other topical material, country condition reports, detention standards and policy information, Executive Office of Immigration Review (EOIR) and U.S. Citizenship and Immigration Services (USCIS) forms, legal service provider information from EOIR and Immigration Advocates Network (IAN), and toolkits and resources for parents or legal guardians.") (Jan. 11, 2024).

[16] DHS ICE, *Access to Due Process*, *supra* note 7.

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: January 29, 2024

Respectfully submitted,

/S/ Marisol Dominguez-Ruiz

MARISOL DOMINGUEZ-RUIZ (SBN 345416)
KYLE VIRGIEN (SBN 278747)
mdominguez-ruiz@aclu.org
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California St., Suite 700
San Francisco, CA 94104
Tel.: (202) 393-4930

EUNICE CHO (Pro Hac Vice)
echo@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Tel.: (202) 548-6616

*Attorneys for Plaintiff*

*ACLU v. U.S. ICE, et al.*, Case No. 4:23-cv-3450
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

19