MARISOL DOMINGUEZ-RUIZ (SBN 345416)
KYLE VIRGIEN (SBN 278747)
mdominguez-ruiz@aclu.org
kvirgien@aclu.org
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
425 California Street, Suite 700
San Francisco, CA 94104
Tel.: (202) 393-4930

EUNICE CHO (Pro Hac Vice)
echo@aclu.org
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Tel.: (202) 548-6616

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

AMERICAN CIVIL LIBERTIES UNION

Plaintiffs,

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT; UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY,

Defendants.

Case No. 4:23-cv-3450

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
AND RESPONSE TO DEFENDANTS'
CROSS-MOTION FOR SUMMARY
JUDGMENT**

Date: May 9, 2024
Time: 1:00 p.m.
Location: Videoconference
Judge: Hon. Donna M. Ryu

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

i

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................... 1

II.     FACTUAL BACKGROUND ...................................... 2

   A.  Plaintiff's FOIA Request and Procedural History........................ 2

   B.  ICE's Contract with Relx, and the "Master Agreement"................ 4

III.    ARGUMENT ........................................................ 7

   A.  ICE Detention Electronic Law Library Records are Agency Records
       and Subject to Disclosure Under FOIA. ............................... 7

   B.  The ICE Detention Electronic Law Library Records Are Not Confidential
       Commercial Information Subject to FOIA Exemption 4........................ 14

      1.   Defendants Cannot Show That Relx at Least Closely Holds the Electronic
           Law Library................................................ 15

      2.   Defendants Cannot Show That They Have Provided Assurances the
           Electronic Law Library Will Remain Secret.......................... 18

      3.   Defendants Waived Exemption 4 by Disclosure of Information. ............ 18

IV.     CONCLUSION ..................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Am. Civ. Liberties Union v. Fed. Bureau of Prisons*,
    No. CV 20-2320 (RBW) (D.D.C. Nov. 28, 2022) .......................................................... 18

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
    No. 12-CV-04376-KAW (N.D. Cal. July 30, 2021) ...................................................... 16

*Baizer v. U.S. Dep't Air Force*,
    887 F. Supp. 225 (N.D. Cal. 1995) ........................................................................ 8, 9, 13

*Bounds v. Smith*,
    430 U.S. 817 (1977) ........................................................................................................ 1

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322 (1986) .............................................................................................. 12

*City of El Centro v. United States*,
    922 F.2d 816 (Fed. Cir. 1990) ....................................................................................... 12

*Consumer Fed'n of Am. v. Dep't of Agric.*,
    455 F.3d 283 (D.C. Cir. 2006) ......................................................................................... 7

*Flexfab, L.L.C. v. United States*,
    424 F.3d 1254 (Fed. Cir. 2005) ..................................................................................... 12

*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) ............................................................................................ passim

*Gardiner v. Virgin Islands Water & Power Auth.*,
    145 F.3d 635 (3d Cir. 1998) .......................................................................................... 12

*Gen. Servs. Admin. v. Benson*,
    415 F.2d 878 (9th Cir. 1969) ......................................................................................... 15

*Gilmore v. U.S. Dep't of Energy*,
    4 F. Supp. 2d 912 (N.D. Cal. 1998) ......................................................................... passim

*Judicial Watch, Inc., v. Fed. Hous. Fin. Agency*,
    646 F.3d 924 (D.C. Cir. 2011). ..................................................................... 7, 8, 13, 14

*Kinnucan v. Nat'l Sec. Agency*,
    No. 20-1309 (W.D. Wash. Dec. 28, 2021) ...................................................................... 8

*Price v. U.S. Dep't of Just. Att'y Off.*,
    865 F.3d 676 (D.C. Cir. 2017) ....................................................................................... 14

*Renewable Fuels Ass'n v. U.S. Env't Prot. Agency,*
    519 F. Supp. 3d 1 (D.D.C. 2021) ............................................................. 15, 16, 17

*Rojas v. Fed. Aviation Admin.,*
    941 F.3d 392 (9th Cir. 2019) ................................................................................ 8

*SDC Dev. Corp. v. Mathews,*
    542 F.2d 1116 (9th Cir. 1976) ........................................................................... 8, 9

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,*
    307 F.3d 775 (9th Cir. 2002) ................................................................................ 6

*Tax Analysts v. U.S. Dep't of Justice* (*Tax Analysts II*),
    913 F. Supp. 599 (D.D.C. 1996) .......................................................... 7, 8, 10, 12

*Trauma Serv. Grp. v. United States,*
    104 F.3d 1321 (Fed. Cir. 1997) ......................................................................... 12

*U.S. Dep't of Just. v. Tax Analysts* (*Tax Analysts I*),
    492 U.S. 136 (1989) ............................................................................................. 7

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989) ............................................................................................. 8

*Watkins v. U.S. Bureau of Customs & Border Prot.,*
    643 F.3d 1189 (9th Cir. 2011) ....................................................................... 18, 19

*Wolff v. McDonnell,*
    418 U.S. 539 (1974) ............................................................................................. 1

**OTHER AUTHORITIES**

ACLU, National Immigrant Justice Center, Human Rights Watch, *Justice Free Zones:
    U.S. Immigration Detention Under the Trump Administration* 29 (2020),
    https://www.aclu.org/wp-content/uploads/publications/justice-
    free_zones_immigrant_detention_report_aclu_hrw_nijc_0.pdf
    [https://perma.cc/J3B9-YR8U] ............................................................................ 2

Bernard E. Witkin Law Library, Alameda County, *Library Databases,*
    https://lawlibrary.acgov.org/library-databases/ [https://perma.cc/5RLY-GHCU]
    (last visted Mar. 7, 2024) ................................................................................... 17

DHS Office of Inspector General, *ICE Does Not Fully Use Contracting Tools to Hold
     Detention Facility Contractors Accountable for Failing to Meet Performance
    Standards* (2019),
    https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf
    [https://perma.cc/S3NW-4FQY] ....................................................................... 10

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
Pl.'s Reply ISO Motion for Summary Judgment and Response to Defs.' Cross Motion

iv

Gov't Accountability Project, *Whistleblower Makes Disclosures About Substandard Medical Care in CBP Custody and Lack of Contractor Oversight*, Nov. 30, 2023, https://whistleblower.org/press/whistleblower-makes-disclosures-to-congress-about-substandard-medical-care-in-cbp-custody-and-lack-of-contractor-oversight/ [https://perma.cc/EK9C-LBMJ] ......................................................................... 10

ICE, Performance-Based National Detention Standards 2011 § 6.3, at 423, https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf [https://perma.cc/FT2G-V7NA] ......................................................................... 10

Letter from Julia Mass, ACLU of Northern California to Timothy Aitken, ICE Field Office Director, May 27, 2015, https://www.aclunc.org/sites/default/files/2015_05_27_Ltr_to_Aitken_LaFave_ Murry_re_Mesa_Verde_Tour.pdf [https://perma.cc/WZ35-H78C] .................................. 3

Robert Heeg, *Reed Elsevier Became RELX and Succeeded Where Other "Old" Media Companies* Failed, May 24, 2019, https://www.relx.com/~/media/Files/R/RELX-Group/Media%20folder/Adformatie%20Interview%20Andrew%20Matuch% 200519%20English_%2002.pdf [https://perma.cc/MTG5-8ZSR]................................ 11

San Francisco Law Library, *Available at the Library,* https://www.sf.gov/legal-databases [https://perma.cc/7HYB-MWUK] (last visited Mar. 7, 2024).......................................... 17

Santa Clara County Law Library, *Legal Databases,* http://www.sccll.org/research/databases.html [https://perma.cc/4ACD-JRC9] (last visited Mar. 7, 2024) ............................................................................... 17

Southern Poverty Law Center, *Prison by Any Other Name: A Report on South Florida Detention* Facilities (2019), https://www.splcenter.org/20191209/prison-any-other-name-report-south-florida-detention-facilities [https://perma.cc/54LK-HNVX] ............... 3

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

v

### I.     INTRODUCTION

This Freedom of Information Act ("FOIA") case concerns law library materials that Immigration and Customs Enforcement ("ICE") provides in electronic form to tens of thousands of people it holds in detention and seeks to deport each day. ICE installs these electronic law library materials on computers in its detention facilities nationwide for use by detained immigrants. Because the majority of detained immigrants lack legal representation, these materials are often the only legal resources they have available to defend themselves from deportation by ICE. ICE has a constitutional duty to provide detained immigrants with "access to a reasonably adequate law library for preparation of legal actions." *Bounds v. Smith*, 430 U.S. 817, 829 (1977) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 578-79 (1974)). Disclosure of these materials is thus vital to the public's understanding of whether ICE has fulfilled its constitutional obligations to provide an adequate law library to detained immigrants.

Defendants resist disclosure of these materials, arguing that electronic law library materials that ICE provides to detained immigrants are not "agency records" under FOIA. Defendants compare the electronic law library materials with computer programs, specialty databases, and program source code used by government employees for reference purposes, which courts have concluded are not records eligible for release under FOIA. But the electronic law library materials that ICE distributes to detained immigrants are entirely different in kind: unlike general reference materials that provide no insight into agency decision making, disclosure of these materials is critical for the public's understanding of ICE's decisions regarding the fulfillment of its constitutional obligation to detained immigrants, including what law library materials it views as "adequate." Defendants further argue that ICE has no control over these records because it contracts with Relx, Inc. ("Relx"), a commercial vendor, to develop the electronic law library materials that ICE provides to detained immigrants. But a careful examination of the contract between ICE and Relx, and the "Master Agreement" that Defendants claim applies to the electronic law library, shows no such thing. The Master Agreement proffered by Defendants does not even apply to the electronic law library developed by Relx for ICE in 2022, but rather, a CD-ROM developed in 2010 by Reed

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

1

Elsevier Properties, Inc. Nor does the contract or statement of work between ICE and Relx ever mention any limits that would suggest that ICE lacks control over the electronic law library.

Likewise, Defendants' attempts to claim that the electronic law library is "confidential" and withhold it under FOIA Exemption 4 fall short. In order to claim Exemption 4, Defendants must show that the materials are "at least closely held[] by" Relx and that ICE "provides some assurance that it will remain secret." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019). Defendants cannot possibly make this showing. These documents are far from secret: ICE discloses the electronic law library materials broadly to tens of thousands of detained immigrants across its entire detention network, and Defendants cannot now argue it is confidential from the public, including advocates, media representatives, and members of Congress who might want to examine its adequacy in light of the government's constitutional duty to detained immigrants.

For these reasons, the Court should grant Plaintiff's motion for summary judgment, and deny Defendants' cross-motion.

## II.    FACTUAL BACKGROUND

### A. Plaintiff's FOIA Request and Procedural History

Detained people and advocates who have had the limited opportunity to use or view electronic law library materials in ICE detention facilities have raised repeated concerns that these materials are incomplete, inaccurate, out-of-date, and inaccessible. For example, detained immigrants at ICE's detention center in Richwood, Louisiana have reported that they encountered "a lack of immigration materials" in the law library.[1] Similarly, attorneys who examined the law library at an ICE detention center in Eloy, Arizona during a stakeholder tour reported that they were unable to locate any legal resources, materials, or programs available on a law library computer.[2] Attorneys who visited ICE's detention center in Monroe County, Florida during a stakeholder visit reported that the law library had "outdated resources most detained individuals cannot understand

---

[1] ACLU, National Immigrant Justice Center, Human Rights Watch, *Justice Free Zones: U.S. Immigration Detention Under the Trump Administration* 29 (2020), https://www.aclu.org/wp-content/uploads/publications/justice-free_zones_immigrant_detention_report_aclu_hrw_nijc_0.pdf [https://perma.cc/J3B9-YR8U].
[2] *Id.*

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

2

1   because of the language barrier," and that detained immigrants themselves described the law library

2   as "people fighting for their lives with terrible materials."[3] Attorneys who attempted to use the law

3   library during a facility stakeholder visit at the former Mesa Verde ICE Detention Center in

4   California noted that even trained attorneys could not figure out how to conduct a search on the

5   electronic database, which did not update itself, and that no immigration forms or relevant human

6   rights reports were available.[4]

7        In light of the lack of publicly available information regarding the quality and availability

8   of legal material in ICE detention facilities, Plaintiff sent a FOIA request ("Request") to Defendants

9   on March 30, 2023, requesting a copy of electronic law library materials provided at ICE detention

10  facilities in their native format. ECF No. 1-1 at 3. Defendants acknowledged receipt of the Request,

11  but did not otherwise respond, as required, within the time required by FOIA. Plaintiff brought suit

12  on July 11, 2023. ECF No. 1 ¶ 43.

13       After Plaintiff filed suit, Defendants refused to provide a copy of the electronic law library

14  materials, citing to its contract with Relx. ECF No. 19 at 3. After Plaintiff filed a request for

15  production and another FOIA request for all documents related to ICE's contract to provide

16  electronic law library materials in its detention facilities, Defendants then produced the contract

17  and accompanying statement of work governing the electronic law library between ICE and Relx.

18  *See* ECF No. 29 at 6; ECF No. 34-2.[5] At that time, however, Defendants did not produce the Master

19  Agreement. Prior to filing its motion for summary judgment, Plaintiff again asked Defendant if

20  there were any additional documents or addenda that would otherwise detail ICE's limitations on

21  the distribution of the electronic law library materials at the conclusion of the contract. ECF No.

22  34-3 at 2-3. Defendants did not identify any other documents, including the Master Agreement. *Id.*;

23  _____

24  [3] Southern Poverty Law Center, *Prison by Any Other Name: A Report on South Florida Detention* Facilities (2019), https://www.splcenter.org/20191209/prison-any-other-name-report-south-florida-detention-facilities [https://perma.cc/54LK-HNVX].

25  [4] Letter from Julia Mass, ACLU of Northern California to Timothy Aitken, ICE Field Office Director, May 27, 2015,

26  https://www.aclunc.org/sites/default/files/2015_05_27_Ltr_to_Aitken_LaFave_Murry_re_Mesa_Verde_Tour.pdf [https://perma.cc/WZ35-H78C].

27  [5] It appears that the contract and statement of work provided to Plaintiff at ECF No. 34-2 are identical to the ones now filed by Defendants at ECF Nos. 41-1 and 41-2.

28  *ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
    PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

ECF No. 34-1 ¶ 6. Defendants only produced the Master Agreement, which they now claim governs the arrangement between ICE and Relx, for the first time, with its summary judgment brief. ECF No. 42-1.

**B.  ICE's Contract with Relx, and the "Master Agreement"**

Plaintiff seeks the electronic law library materials provided by ICE to detained immigrants in facilities without Internet connectivity that are located on an electronic hard drive ("EHD") or CD-ROM. ECF No. 34 at 12; ECF No. 41-1 at 13 ("The Contractor must offer the research program on CD-ROMS for any ICE facilities with computers that are not EHD compatible."). Decisionmakers at ICE have direct control in establishing the content of the electronic law library, the structure of the program interface, and accessibility to people whose primary language is not English. ICE's contract and statement of work, moreover, lay out in great detail the requirements, format, display, content, research features, and languages featured on the electronic law library. *See* ECF No. 41-1 at 9-18; ECF No.  41-2 at 4-64. For example, the statement of work provides the following diagrams, with instructions, as to how the electronic law library display must appear, as well as content for each link (much of which is provided by ICE):



*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

4

**Flow Map:** *I speak español / français / portugûes / Tiêng Việt / Kreyòl Ayisyen / العربية / русском языке / 简体中文 / ROMÂNĂ / TÜRKÇE / বাংলা / हिंदी / ਪੰਜਾਬੀ*

SPANISH / ESPAÑOL
FRENCH / FRANÇAIS
PORTUGUESE / PORTUGUÊS
HAITIAN CREOLE / KREYÒL AYISYEN

ARABIC / العربية
TURKISH / TÜRKÇE
BENGALI / বাংলা
HINDI / हिंदी
PUNJABI / ਪੰਜਾਬੀ

RUSSIAN / РУССКИЙ ЯЗЫК
ROMANIAN / ROMÂNĂ
VIETNAMESE / TIẾNG VIỆT
CHINESE (Simplified) / 简体中文

Each resource, including additional translations or individual LOP materials, will be updated and provided by ICE, as needed, no more frequently than on a quarterly basis. Each document provided will have a separate link with a title in both English and the language provided (title translations to also be provided by ICE).

ECF No. 41-2 at 13, 49. ICE's contract further establishes that it exercises final control over the terms of the electronic law library. As the contract specifies, "[t]he platform shall, *in the sole judgment and discretion of ICE*, be easy to navigate and conducive to use by the ICE detainee population." ECF No. 41-1 at 13 (emphasis added). Likewise, the contract provides that "[Relx] will make corrections based on [ICE's] feedback and provide the revised products to ICE for *final* review and approval." *Id.* (emphasis added). ICE also intends that the electronic law library is widely available, noting in the contract that it will be deployed "across the entire ICE network of facilities. ECF No. 41-1 at 3. And a careful examination of the contract and statement of work reveals that there is no mention of terms that would limit ICE's ability to transfer, share or dispose of the data. Indeed, ICE's contract states the opposite: that Relx "shall make available" "records, materials, and other evidence for examination, audit, **or reproduction**, until 3 years after final payment under this contract." ECF No. 41-2 at 77.

For the first time in this litigation, Defendants now claim that the electronic law library is subject to a "Master Agreement." ECF No. 42 ¶ 5-6, ECF No. 42-1. But the Master Agreement provided by Defendants applies to a CD-ROM developed in 2010 by Reed Elsevier Properties, Inc., not the electronic law library developed by Relx in 2022.

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
Pl.'s Reply ISO Motion for Summary Judgment and Response to Defs.' Cross Motion

5

ECF No. 42-1 at 1. And nothing in the contract or statement of work mentions a Master Agreement at all. *See* ECF Nos. 41-1 and 41-2.

Although ICE must return the electronic hard drive hardware to Relx, but is not required by contract to return the content of the electronic law library to Relx at any point. As Defendants have testified, "[ICE] Field offices work with the detention facilities to upload the content of the [electronic hard drives] to law library computers. *After the contents are uploaded*, the field office and/or detention facilities use return labels provided by RELX to ship the [electronic hard drives back to RELX." ECF No. 41 at 3 (emphasis added).

Defendants claim that the electronic hard drive materials sought by Plaintiff contains their source code. ECF No. 40 at 16 n.6. There is, however, no factual support at all in the record for this assertion, and the facts show otherwise. *Id.* By way of background:

> Source code is the computer program code as the programmer writes it, using a particular programming language. Source code is a high level language that people can readily understand. Object code is the representation of the program in machine language binary which the computer executes. Source code usually must be compiled, or interpreted, into object code before it can be executed by a computer. Object code can also be decompiled into source code.

*Syntek Semiconductor Co. v. Microchip Tech. Inc*., 307 F.3d 775, 779 (9th Cir. 2002) (citation omitted, cleaned up, emphasis added). The electronic law library is readable by a computer and

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

thus must contain object code. The record corroborates that whatever code is covered by the Master Agreement would be object code, not source code. The Master Agreement prohibits users from "decompil[ing] . . . [or] deriv[ing] source code from" the LexisNexis CD—a prohibition that would make sense only for object code, not source code. ECF No. 42-1 at 5.

### III.    ARGUMENT

### A.  ICE Detention Electronic Law Library Records are Agency Records and Subject to Disclosure Under FOIA.

The government fails to meet its burden to demonstrate that the records sought are not agency records subject to disclosure under FOIA. *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 917 (N.D. Cal. 1998). To qualify as an "agency record," a record must fulfill two requirements. The parties agree that the first requirement is met, as ICE, a federal agency, has "create[d] or obtain[ed] the requested materials." *U.S. Dep't of Just. v. Tax Analysts* (*Tax Analysts I*), 492 U.S. 136, 144 (1989). It is also clear that the records meet the second requirement, as ICE is "in control of the requested materials at the time that the FOIA request is made," where "the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id.* Plaintiff has already shown that the ICE detention electronic law library meets the factors for "control" laid out in *Gilmore* and *Tax Analysts II*.  Pl.'s Br., ECF No. 34 at 15-19 (examining *Tax Analysts v. U.S. Dep't of Justice* (*Tax Analysts II*), 913 F. Supp. 599, 603 (D.D.C. 1996) and *Gilmore*, 4 F. Supp. 2d at 912). Defendants now point to the factors identified by the D.C. Circuit in *Judicial Watch, Inc.*, *v. Fed. Hous. Fin. Agency*, to determine whether an agency controls a document:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

646 F.3d 924, 926-27 (D.C. Cir. 2011). Under this approach, courts apply "a totality of circumstances test" to determine whether documents are "agency records." *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). When weighing these factors, the court must be "mindful that the 'core purpose of the FOIA' is to 'contribut[e] significantly to public

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

7

1   understanding *of the operations or activities of the government*.'"[6] *Judicial Watch, Inc.*, 646 F.3d

2   at 928 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

3   775 (1989) (alternation and emphasis in original) (internal quotation marks omitted)). The

4   electronic law library materials provided by ICE to detained immigrants squarely meet all of these

5   factors.

6            As an initial matter, ICE's electronic law library materials play the important function of

7   providing constitutionally required legal resources to detained individuals, unlike the computer

8   programs and databases referenced in other FOIA cases merely used by government employees for

9   general reference purposes. *See Gilmore*; *Tax Analysts II; SDC Dev. Corp. v. Mathews,* 542 F.2d

10  1116 (9th Cir. 1976); *Baizer v. U.S. Dep't Air Force*, 887 F. Supp. 225 (N.D. Cal. 1995). In their

11  brief, Defendants point to *SDC Development Corp.* and *Baizer* to argue that the requested records

12  are not an "agency record." ECF No. 40 at 10-11. Defendants, however, mischaracterize the

13  electronic law library provided by ICE to detained immigrants as a mere "library reference system"

14  akin to those addressed in *SDC Development Corp.* and *Baizer.* This is incorrect. The materials

15  requested here are entirely different in form and purpose from those requested in those cases. In

16  *SDC Development Corp.*, the requestor sought a complete reference library of medical

17  bibliographical data established and updated by the National Library of Medicine, which charged

18  public users for use of the service and materials, as specifically authorized by Congress. To

19  circumvent the cost of purchase from the agency, the SDC Development Corporation sought to

20  obtain the medical database under FOIA. The court, however, denied the corporation's request,

21

---

22  [6] Defendants' suggestion as to the weight of factors considered with respect to whether material
    constitutes an "agency record" under *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019)

23  is incorrect. In *Rojas*, the court addressed a FOIA request for "all emails and chats" sent to and
    from a government employee during a specified period. *Id.* at 400. Unlike the issue presented

24  here, where there is no suggestion that the materials in the ELL Law Library are personal in
    nature, the *Rojas* court considered whether the requested records were created "in connection

25  with agency-related business, or instead involve personal matters not related to the agency's
    'transaction of public business," when deciding whether the requested material constituted an

26  "agency record" subject to FOIA. *Id.* at 409. Defendants' quotation to *Kinnucan v. Nat'l Sec.
    Agency*, No. 20-1309, 2021 WL 6125809 (W.D. Wash. Dec. 28, 2021), is also inapposite, as the

27  court in that case referenced the Ninth Circuit's "test that addresses the constitutional
    considerations for congressional records" for release under FOIA.

28  *ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
    Pᴌ.'ꜱ Rᴇᴘʟʏ ISO Mᴏᴛɪᴏɴ ꜰᴏʀ Sᴜᴍᴍᴀʀʏ Jᴜᴅɢᴍᴇɴᴛ ᴀɴᴅ Rᴇꜱᴘᴏɴꜱᴇ ᴛᴏ Dᴇꜰꜱ.' Cʀᴏꜱꜱ Mᴏᴛɪᴏɴ

concluding that the reference library was not an "agency record" under FOIA, as there was no "danger of agency secrecy" alleviated by disclosure of records under the statute. 542 F.2d at 1120. The court specifically noted that the library material was already "readily disseminated" for a Congressionally authorized fee, and that unlike here, the material did not "directly reflect the structure, operation, or decision-making functions of the agency." *Id. Baizer* is equally inapposite. In *Baizer,* the requester sought to obtain an electronic database that held Supreme Court opinions compiled by the Air Force. The *Baizer* court concluded that the database was not an "agency record," as the Air Force maintained the records solely for reference purposes and had no control over the Supreme Court's decision-making. 887 F. Supp. at 229. Unlike *Baizer*, ICE has full control over what is included in the electronic law library, including formatting, navigation, and functionality, and does not maintain the electronic law library "solely for reference purposes," but rather, to meet a constitutional obligation to people it holds in custody.

In contrast to those cases, public disclosure of electronic law library materials, which ICE provides to tens of thousands of immigrants that it detains and seeks to deport each day, "expose[s] the government decision-making process." *Gilmore*, 4 F. Supp. 2d at 921. Disclosure of the electronic law library materials that ICE provides to detained immigrants will allow the public to fully understand the agency's decision-making processes regarding its constitutional obligation to detained immigrants.[7] Disclosure will "illuminate" the agency's choices, including what materials the agency deems to be sufficient to meet constitutional requirements, what formats ICE views as "easy" to navigate by detained people, the degree of rigor with which it reviews the electronic law library for outdated or absent materials, the efforts it makes to ensure access by people whose primary language is not English or to people with disabilities.[8] Disclosure of these material will

---

[7] Merely supplying the contract and statement of work does not fully address the danger of agency secrecy because it does not replace Plaintiff's ability to assess the functionality, accuracy, accessibility, and content included in the electronic law library.

[8] Unfortunately, recent history has validated the need for outside advocates to monitor Defendants' exercise of oversight regarding immigration detention. The DHS's Office of Inspector General recently noted that ICE does not adequately use contracting tools to hold detention facility contractors accountable for failing to meet performance standards. DHS Office of Inspector General, *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility*

---

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

uniquely "shed light on the conduct of [the] agency," while withholding will only permit ICE "to insulate itself from public scrutiny of its operations." *Tax Analysts II*, 913 F. Supp. at 607.

With respect to the first factor identified in *Tax Analysts II*, it is clear from the terms of ICE's detention standards, and the contract and statement of work that the agency intended to and retains control over the electronic law library. Defendants, tellingly, do not even address this factor in their brief. In its Performance-Based National Detention Standards, which govern conditions of confinement in immigration detention facilities nationwide, ICE emphasizes its direct and controlling role in the design and provision of the electronic law library, describing the electronic law library as "electronic media *provided by* ICE/ERO, containing the required publications or other supporting legal research platforms for detainees," that is located on "CD-ROMs or External Hard Drives developed by legal research service vendors utilized by ICE."[9] ICE's contract and accompanying Statement of Work with Relx also lay out in painstaking detail the specific requirements, format, audience, screen display, content, research features, functionality, and form of the electronic law library. *See* ECF No. 41-1 at 9-18; ECF No. 41-2 at 41-64. ICE's contract also makes clear that the agency exercises ultimate control over the content and format of the electronic law library. As the contract specifies, "[t]he platform shall, *in the sole judgment and discretion of ICE*, be easy to navigate and conducive to use by the ICE detainee population." ECF No. 41-1 at 13 (emphasis added). Likewise, the contract provides that "[Relx] will make corrections based on [ICE's] feedback and provide the revised products to ICE for *final review and approval*." *Id.*

---

*Contractors Accountable for Failing to Meet Performance Standards* (2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf [https://perma.cc/S3NW-4FQY]. Recent whistleblower disclosures have alleged that DHS's contract officers have failed to exercise adequate oversight of contractors providing medical care in Customs and Border Protection (CBP) detention facilities, resulting in the preventable death of an 8-year-old migrant girl in its custody. Gov't Accountability Project, *Whistleblower Makes Disclosures About Substandard Medical Care in CBP Custody and Lack of Contractor Oversight*, Nov. 30, 2023, https://whistleblower.org/press/whistleblower-makes-disclosures-to-congress-about-substandard-medical-care-in-cbp-custody-and-lack-of-contractor-oversight/ [https://perma.cc/EK9C-LBMJ].

[9] ICE, Performance-Based National Detention Standards 2011 § 6.3, at 423, https://www.ice.gov/doclib/detention-standards/2011/6-3.pdf [https://perma.cc/FT2G-V7NA] (emphasis added).

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

10

(emphasis added). There is no question that ICE intended to and retains clear control over the electronic law library it provides to people held in its detention facilities.

Defendants claim that "ICE's subscription to the LexisNexis Legal Research Service is subject to the terms of the LexisNexis Master Agreement," and that the terms of the Master Agreement limit ICE's ability to use and dispose of the records. ECF No. 40 at 11; ECF No. 42 at ¶¶ 5-6. But the government fails to meet its burden of proof necessary to establish this claim. *Gilmore*, 4 F. Supp. 2d at 917. As an initial matter, nothing in the contract between ICE or Relx indicates that the purported "Master Agreement" provided by Defendants applies to the requested materials. Indeed, neither the contract or statement of work between Relx and ICE mention any Master Agreement *at all*. *See* ECF No. 41-1; ECF No. 41-2 (Contract, Statement of Work, and Attachments).

Second, a close examination of the Master Agreement provided by Defendants reveals that it does not actually apply to the requested materials. The Master Agreement provided by Defendants governs a "LexisNexis® CD" with "copyright © 2010 LexisNexis®, a division of Reed Elsevier Properties, Inc." ECF No. 42-1 at 1. Although the electronic law library materials at issue here were developed in 2022, the Master Agreement appears to apply to materials copyrighted in 2010, twelve years earlier. *Compare* ECF No. 42-1 at 1 ("Copyright © 2010") *with* ECF No. 41-1 at 2 (noting Statement of Work first provided on November 10, 2022).  The Agreement also refers to LexisNexis as "a division of Reed Elsevier Properties Inc.," not Relx, Inc. ECF No. 42-1 at 1. Reed Elsevier Properties Inc. no longer exists, as it became Relx, Inc. in 2015, over 7 years before Relx signed the operative contract with ICE.[10] The Agreement also applies to a "LexisNexis CD," although Defendants claim that the requested electronic law library is not provided on CD-ROM. ECF No. 40 at 12. On this thin record, ICE fails to meet its burden of proof that the terms of the Master Agreement presented governs the electronic law library materials at issue in *this* case.

---

[10] Robert Heeg, *Reed Elsevier Became RELX and Succeeded Where Other "Old" Media Companies Failed*, May 24, 2019, https://www.relx.com/~/media/Files/R/RELX-Group/Media%20folder/Adformatie%20Interview%20Andrew%20Matuch%200519%20English_%20002.pdf [https://perma.cc/MTG5-8ZSR] ("In 2015, Reed Elsevier. . . continued as RELX.").

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

11

Moreover, even if the Master Agreement applies to the ELL, Defendants point to no evidence that could carry their burden to show that they are bound by its terms. "A contract with the United States . . . requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *see also Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998) ("[O]nly those with specific authority can bind the government contractually; even those persons may do so only to the extent that their authority permits."). This restriction is for good reason: "Clearly, federal expenditures would be wholly uncontrollable if Government employees could, of their own volition, enter into contracts obliging the United States." *Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1260 (Fed. Cir. 2005) (quotation omitted). For this reason, absent evidence that the person who purportedly bound the government to the terms of a contract "had been granted the authority to affirmatively obligate the Government," courts find that no contract has been formed. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (holding that, because "[n]o such authority has been cited by [a party arguing it had a contract with the government] nor is such authority evident from the record," no contract had been formed). In order to carry this burden, Defendants must show (1) who bound the government to the Master Agreement, and (2) that person had authority to bind the government. Defendants introduce no evidence relevant to either question; consequently, summary judgment should be granted against them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Unlike the contract terms discussed in *Tax Analysts II* and *Gilmore*, neither the contract nor the statement of work between ICE and Relx that govern these records includes *any* mention of a license to ICE, or any restrictions on ICE's ability to transfer, share, or dispose of the data. *See* ECF Nos. 41-1 and 41-2. The words "dispose" and "Master Agreement" appear nowhere in either the contract or statement of work. *Id.* The only mention of "license" refers to Relx's responsibility to

obtain licenses for materials authored by outside entities, ECF No. 41-1 at 11, and to "licensed lawyers" in representation of detained immigrants. ECF No. 41-2 at 37. The only relevant mentions of the word "share" in the contract is a clause that states that Relx "will provide a mechanism for ICE to share large file sizes of updated materials." ECF No. 41-1 at 17.[11] Any mention of "restriction" appears only in the context of Federal Acquisition Regulation statutes related to subcontractor sales and foreign purchases. ECF No. 41-2 at 72, 75, 76. The only mentions of "transfer" relates to payment by "Electronic Funds Transfer." ECF No. 41-2 at 76. On the other hand, ICE's contract explicitly states that Relx "shall make available" "records, materials, and other evidence for examination, audit, **or reproduction**, until 3 years after final payment under this contract." ECF No. 41-2 at 77 (emphasis added). The term "records" is broadly defined to "include books, documents, . . . and other data, regardless of type and regardless of form." *Id.*

The requested records also easily fulfill the remaining indicia of "agency control," including agency reliance on the records, and integration of the records into the agency's record systems or files. *Judicial Watch, Inc.,* 646 F.3d at 926-27. ICE and its personnel rely on the electronic law library to ensure compliance with constitutional requirements and agency guidelines to provide adequate law library materials to detained people. As ICE noted in its Statement of Work, the requested materials are provided "to ensure adequate access to comprehensive legal materials for individuals held at ICE detention facilities to assist their ability to pursue their immigration cases." ECF No. 41-1 at 9. The requested materials are not "maintained solely for reference purposes or as a research tool," but rather, are conceived of and provided by ICE to accord with constitutional protections for people in the government's custody. *Baizer*, 887 F. Supp. at 228. In addition, the contract makes clear that ICE employees regularly read the contents of the electronic law library in their work to ensure compliance with constitutional and agency requirements. As the contract states, ICE staff review "documentation on the External Hard Drives," and "review the electronic

---

[11] The only other time the word "share" appears in the contract references ICE's ability to "withhold a proportionate share of the payment [to Relx] until the correction is made." ECF No. 41-2 at 68.

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

13

law library to ensure that all the requirements . . . listed in the [Statement of Work] are fulfilled." ECF No. 41-2 at 66.

There is also no question that the requested records are well-integrated into ICE's record system and files. *Judicial Watch, Inc.,* 646 F.3d at 926-27. ICE has installed the electronic law library materials onto computers "across the entire ICE network of facilities" for use by people held in its custody nationwide. ECF No. 41-1 at 3. As ICE has attested, "[ICE] [f]ield offices work with the detention facilities to upload the content of the [electronic hard drives] to law library computers." ECF No. 41 at ¶ 9. Updates to "required legal materials" can take place via a process of "updating the existing [electronic hard drives] and reinstalling on local computers." ECF No. 41-1 at 13. Weighing all of the factors, it is clear that the ICE detention electronic law library materials are agency records that merit release under FOIA and will fulfill the statute's purpose of "vindicating significant rights," like those of immigrants detained by ICE. *Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 682 (D.C. Cir. 2017).

### B. The ICE Detention Electronic Law Library Records Are Not Confidential Commercial Information Subject to FOIA Exemption 4.

Defendants also assert Exemption 4 as a means not to disclose the electronic law library. All parties agree on the relevant analysis: the only question in dispute is whether the electronic law library is "confidential,"[12] and on that question Defendants bear the burden to show both of two requirements: that (1) the electronic law library is "at least closely held[] by the person imparting it" and (2) "the party receiving it provides some assurance that it will remain secret." *Argus Leader*, 139 S. Ct. at 2363. *See also* ECF No. 34 at 20-21 (setting out the analysis), ECF No. 41 at 21, 24-25 (setting out the same analysis, and acknowledging that courts in the Ninth Circuit have treated

---

[12] Defendants claim that RELX's software is defined in the Master Agreement as a "trade secret," and claim—with no support whatsoever—that the ELL contains "source code." ECF No. 40 at 22 n.6. Plaintiffs explain above why these contentions are wrong, *supra* Section II.B, but these arguments are also irrelevant. Plaintiff agrees that the ELL is commercial information for purposes of Exemption 4, so it does not dispute that the ELL constitutes "commercial or financial information" for purposes of the Exemption 4 analysis. ECF No. 34 at 20 n.2. The dispute lies in whether the ELL constitutes "confidential" information as that term is defined by *Argus Leader*. *Id.* This dispute is unrelated to whether the ELL is a "trade secret" or "source code."

the second prong as mandatory under *Gen. Servs. Admin. v. Benson*, 415 F.2d 878 (9th Cir. 1969)). The government fails on both requirements. Even if the government satisfies both requirements, it cannot seek an exemption because it has already disclosed the electronic law library to those in its custody with no strings attached as to further disclosure of its contents.

### 1. Defendants Cannot Show that Relx at Least Closely Holds the Electronic Law Library

Defendants argue that the electronic law library is "at least closely held" under *Argus Leader* for two reasons. First, Defendants argue that "it is beyond dispute that RELX does not release the Offline Lexis Materials to the public" because "[d]etained noncitizens in ICE custody are not 'the public.'" ECF No. 40 at 23-24. Second, they argue that releasing the Offline Lexis Materials to the public "would obviously undermine [Relx's] business . . . ." ECF No. 40 at 23. Both arguments fail.

First, Defendants' argument that "[d]etained noncitizens in ICE custody are not 'the public'" fails. *See* ECF No. 40 at 24. This characterization of detained immigrants as "not the public" not only suggests the Defendants' disregard for the people ICE holds in its custody, but it is also legally and factually wrong.

As an initial matter, Defendants' argument fails legally because it relies on a standard contrary to the case law. Defendants' standard would find a record to be "at least closely held" under *Argus Leader* if it is disclosed to **some** members of the public (i.e., disclosed broadly to people detained across ICE's detention network) but not disclosed to **all** members of the public. ECF No. 40 at 24 (distinguishing between "detained noncitizens" who have access and the "general public" who lack access). This supposed standard lacks legal support. Defendants cite *Gilmore* for support. ECF No. 40 at 24 (citing *Gilmore*, 4 F. Supp. 2d at 922). But *Gilmore* predates *Argus Leader* and relies on the competitive injury test that *Argus Leader* expressly overturned. G*ilmore*, 4 F. Supp. 2d at 922 (examining whether disclosure would "cause substantial harm to the competitive position of the person from whom the information was obtained"). Defendants' sole post-*Argus Leader* support for their standard is *Renewable Fuels Ass'n v. U.S. Env't Prot. Agency*,

an opinion from the District of D.C. that found the "current law of the D.C. Circuit . . . remains binding authority" after *Argus Leader* and applied the pre-existing D.C. Circuit standard. 519 F. Supp. 3d 1, 12 (D.D.C. 2021). That pre-existing standard turns on whether the material "would customarily not be released to the public" by Relx. *Id.* In addition to being out-of-circuit, that opinion is unhelpful to the question whether the *Argus Leader* test is satisfied by disclosure to only ***some*** of the public. The only evidence the requestor cited in that case was evidence of undisputedly "public filings," so that court never reached this question. *Id.* at 11. Other opinions make the answer to this question clear—particularly in the Ninth Circuit. Courts in the Ninth Circuit apply the *Argus Leader* test and find information confidential only if "'it is customarily kept private, or at least closely held, by the person imparting it.'" *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, No. 12-CV-04376-KAW, 2021 WL 3270666, at *4 (N.D. Cal. July 30, 2021) (quoting *Argus Leader*, 139 S. Ct. at 2363). This test does not turn on whether information was available to ***all*** of the public or just ***some*** of the public. Instead, courts applying this test require the disclosing party to have taken specific, internal actions to keep the information at issue confidential. *E.g.*, *id.* at *7 (finding that "some employees were required to sign confidentiality agreements" to safeguard the information at issue but nonetheless finding Exemption 4 not to apply because "suppliers or servicers" were not legally barred from disclosing this information); *Argus Leader*, 139 S. Ct. at 2363 (applying Exemption 4 only after confirming that "[e]ven within a company, witnesses testified, only small groups of employees usually have access to" the information).

Under the *Argus Leader* standard, Defendants cannot make the required showing that Relx kept the information "at least closely held." *Id.* at 2363. Defendants provide no evidence about any internal access controls within Relx, nor any evidence of any non-disclosure agreement regarding the electronic law library's contents. In fact, Defendants have not provided any evidence to this point at all. To the contrary, the evidence shows that Relx makes the electronic law library widely available. Although Defendants argue that some detained immigrants have access to Relx materials through their tablets rather than through the electronic law library, which is not at issue here, they do not deny that the contract makes the electronic law library widely available to detained

immigrants through "250 external hard drives across the entire ICE network of facilities." ECF No. 41-1 at 4; *see also* ECF No. 40 at 23.

Defendants cite an overly broad, incorrect version of the Exemption 4 standard that would require disclosure to ***all*** of the public. But even under this incorrect standard, Defendants fail to meet their burden.[13] Even under this incorrect standard, the inquiry is not how Relx treats the electronic law library; it is how Relx "customarily" treats electronic research materials. *Renewable Fuels Ass'n*, 519 F. Supp. 3d at 11. That is why the *Renewable Fuels Ass'n* court did not cabin its analysis to the exact information at issue—in that case, whether a refinery had petitioned the EPA for an exemption between 2015 and 2017. *Id.* Instead, it also found that there had been a public disclosure for any "refinery that kept confidential the fact of its petition in the specific year at issue, but did ***not*** keep confidential the fact of its petition(s) for another year or years." *Id.* Relx's treatment of its other products demonstrates that Relx makes them available to ***all*** members of the public. For example, to the extent that the Master Agreement applies here, it explicitly contemplates that the LexisNexis CD may be available to "patrons" of a "public library" (in other words, to ***all*** members of the public). ECF No. 42-1 at 3-4. A quick perusal of local law libraries' catalogs confirms that, although none offers the out-of-date LexisNexis CD, many offer public access to LexisNexis products.[14]

Second, Defendants' argument that releasing the electronic law library to the public "would obviously undermine [Relx's] business" ignores binding Supreme Court precedent. Defendants cite

---

[13] Defendants rely on the fact that the electronic law library is not available to ***all*** members of the public. This is because ICE provides Relx specific resources to be included in the electronic law library and requires Relx to use particular menu options in the electronic law library. *E.g.*, ECF No. 41-2 at 2-3 (requiring Relx to include the "National Detainee Handbook" and "Legal Orientation Program" materials), 8 (setting out a specific menu of options ICE requires Relx to use). It is these customizations that motivate Plaintiff's request, because community members, immigration advocates, and members of congress should be able to check to ensure ICE's electronic law library is actually usable.

[14] San Francisco Law Library, *Available at the Library,* https://www.sf.gov/legal-databases [https://perma.cc/7HYB-MWUK] (last visited Mar. 7, 2024); Bernard E. Witkin Law Library, Alameda County, *Library Databases,* https://lawlibrary.acgov.org/library-databases/ [https://perma.cc/5RLY-GHCU] (last visited Mar. 7, 2024); Santa Clara County Law Library, *Legal Databases,* http://www.sccll.org/research/databases.html [https://perma.cc/4ACD-JRC9] (last visited Mar. 7, 2024).

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

no opinion after *Argus Leader* was decided in 2019 supporting their argument that this Court should consider an argument about Relx's competitive harm. That is because they cannot: the Supreme Court expressly held this "'competitive harm' requirement inconsistent with the terms of the statute." *Argus Leader*, 139 S. Ct. 2356, 2361 (2019).

### 2. Defendants Cannot Show that They Have Provided Assurances the Electronic Law Library Will Remain Secret.

Defendants also cannot show that they "provide[d] some assurance that [the electronic law library] will remain secret." *Argus Leader*, 139 S. Ct. at 2363. The sole piece of evidence with which Defendants attempt to carry this burden is the Master Agreement. ECF No. 40 at 25. As explained above, Defendants have far from carried their burden to show that the Master Agreement applies to the electronic law library or that the government has actually agreed to it. *Supra* Section III(A). Regardless, even if the Master Agreement applied, it would hardly provide the assurance of secrecy necessary for Exemption 4 because it explicitly contemplates that the materials it covers could be made available to "patrons" of a "public library"—hardly a "secret" establishment. ECF No. 42-1 at 3-4. Defendants' law is unpersuasive. *Am. Civ. Liberties Union v. Fed. Bureau of Prisons*, No. CV 20-2320 (RBW), 2022 WL 17250300, at *8 (D.D.C. Nov. 28, 2022) (finding this element met by assurances by the Bureau of Prisons that it would keep procurement channels for execution drugs secret).

### 3. Defendants Waived Exemption 4 by Disclosure of Information.

Even if the Court finds that Exemption 4 applies, Defendants have waived that exemption. Plaintiff's opening brief explained the standard the Ninth Circuit set out in *Watkins* for waiver through disclosure by the government: "when an agency freely discloses to a third party confidential information covered by a FOIA exemption without limiting the third-party's ability to further disseminate the information then the agency waives the ability to claim an exemption to a FOIA request for the disclosed information." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1198 (9th Cir. 2011). Defendants cite to a number of out-of-circuit opinions but cite

*ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION

18

no Ninth Circuit law other than *Watkins*. ECF No. 40 at 25-26. It is thus undisputed that *Watkins* sets out the applicable legal standard.

Plaintiff also explained in its opening brief that, under the *Watkins* standard, Defendant waived its ability to assert Exemption 4. By disclosing the electronic law library materials to detained immigrants, they have "disclose[d] to a third party" the relevant information "without limiting the third-party's ability to further disseminate the information." *Watkins*, 643 F.3d at 1198. Defendants attempt to counter this showing by arguing—again—that detained immigrants are not "the public." ECF No. 40 at 26. But the *Watkins* test does not require a disclosure to the public— merely to a "third party." *Watkins*, 643 F.3d at 1197-98 (holding that a "no-strings-attached" disclosure to a disclosure to a single entity—the trademark holder—sufficed). Defendants also point to the Master Agreement to argue that Defendants restricted detained immigrants' ability to disseminate the information they glean from the electronic law library. But, as explained above, Defendants have far from carried their burden to show that the Master Agreement applies to the electronic law library. *Supra* Section III(A). Defendants also point to no authority supporting the proposition that a click-through license provides the type of protection against further disclosure required under *Watkins*.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment should be GRANTED and Defendants' Cross Motion for Summary Judgment should be DENIED.

1    Dated: March 13, 2024                    Respectfully submitted,

2                                             /s/ Marisol Dominguez-Ruiz

3                                             MARISOL DOMINGUEZ-RUIZ (SBN
                                              345416)
4                                             KYLE VIRGIEN (SBN 278747)
                                              mdominguez-ruiz@aclu.org
5                                             kvirgien@aclu.org
                                              AMERICAN CIVIL LIBERTIES
6                                             UNION FOUNDATION
                                              425 California St., Suite 700
7                                             San Francisco, CA 94104
                                              Tel.: (202) 393-4930
8
                                              EUNICE CHO (Pro Hac Vice)
9                                             echo@aclu.org
                                              AMERICAN CIVIL LIBERTIES
10                                            UNION FOUNDATION
                                              915 Fifteenth Street NW, 7th Floor
11                                            Washington, DC 20005
                                              Tel.: (202) 548-6616
12
                                              *Attorneys for Plaintiff*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   *ACLU v. U.S. ICE, et al.*, No. 4:23-cv-3450
     PL.'S REPLY ISO MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFS.' CROSS MOTION
                                                                                    20