# EXHIBIT A

Redline Showing Changes to ECF No. 40
Defendants' [Corrected] Cross-Motion for
Summary Judgment

1  ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
2  MICHELLE LO (NYRN 4325163)
Chief, Civil Division
3  DAVID M. DEVITO (CABN 243695)
Assistant United States Attorneys
4
    450 Golden Gate Avenue, Box 36055
5  San Francisco, CA 94102-3495
Telephone: (415) 436-7332
6  Facsimile: (415) 436-6748
Email: david.devito@usdoj.gov
7
Attorneys for Defendants UNITED STATES
8  IMMIGRATION AND CUSTOMS
ENFORCEMENT and UNITED STATES
9  DEPARTMENT OF HOMELAND SECURITY

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13  AMERICAN CIVIL LIBERTIES UNION,          )  CASE NO.: 4:23-cv-03450 DMR
                                             )
14          Plaintiff,                       )  **DEFENDANTS' [CORRECTED] CROSS-**
                                             )  **MOTION FOR SUMMARY JUDGMENT AND**
15      v.                                   )  **OPPOSITION TO PLAINTIFF'S MOTION FOR**
                                             )  **SUMMARY JUDGMENT; MEMORANDUM OF**
16  UNITED STATES IMMIGRATION AND            )  **POINTS AND AUTHORITIES IN SUPPORT**
    CUSTOMS ENFORCEMENT and UNITED           )
17  STATES DEPARTMENT OF HOMELAND            )  Date:  April 25, 2024
    SECURITY,                                )  Time: 1:00 p.m.
18                                           )  Place: Zoom Videoconference
            Defendants,                      )  Judge: Hon. Donna M. Ryu
19                                           )
    _____)
20

21

22

23

24

25

26

27              **PREVIOUSLY FILED ON FEBRUARY 28, 2024**

28                        **ECF No. 40**

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

NOTICE OF MOTION AND MOTION ....................................................................................... 1

STATEMENT OF RELIEF REQUESTED ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.       INTRODUCTION .............................................................................................................. 1

II.      STATEMENT OF ISSUES TO BE DECIDED ................................................................ 3

III.     STATEMENT OF FACTS ................................................................................................ 3

         A.       Plaintiff's FOIA Request at Issue in this Lawsuit ................................................. 3

         B.       Defendants' Processing of Plaintiff's FOIA Request and Information Released
                  and Withheld ........................................................................................................... 3

         C.       ICE Contracts with RELX for a Subscription to the LexisNexis Research
                  Service to Provide Access to Legal Research Materials to Detained
                  Noncitizens, Which Includes Provision of the Offline Lexis Materials ............... 4

         D.       Use of the Offline Lexis Materials Is Subject to the Terms of the LexisNexis
                  Master Agreement ................................................................................................... 5

IV.      ARGUMENT ..................................................................................................................... 7

         A.       Applicable Law ....................................................................................................... 7

                  1.       Standard of Review .................................................................................... 7

                  2.       What Constitutes an Agency Record ......................................................... 8

                  3.       Exemption 4 Standard ................................................................................ 9

         B.       The Offline Lexis Materials ICE Licenses from RELX Are Not Agency
                  Records .................................................................................................................. 10

                  1.       Library Reference Materials Do Not Qualify as Agency Records ........... 10

                  2.       Even If Library Reference Materials Could Be Agency Records, the
                           Offline Lexis Materials Do Not Qualify Because They Are Not
                           Controlled by ICE .................................................................................... 11

         C.       ICE's Withholding of the Offline Lexis Materials Is Protected by Exemption 4 ............ 15

                  1.       The Offline Lexis Materials Are Confidential Because They Are
                           Customarily and Actually Treated as Private by Their Owner, RELX ......... 16

                  2.       The Requested Information Is Provided to the Government under an
                           Assurance of Privacy ............................................................................... 18

3.    ICE Has Not Waived Confidentiality Because There Is No Evidence
      That the Offline Lexis Materials Have Been Disclosed to the Public ..................19

4.    Defendants' Assertion of Exemption 4 Satisfies the FOIA
      Improvement Act ..........................................................................................................21

V.    CONCLUSION..........................................................................................................................23

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union Found. of Ariz. v. U.S. Dep't of Homeland Sec.*,
No. CV-14-02052-TUC-RM (BPV), 2017 WL 8895339 (D. Ariz. Jan. 26, 2017) ........................... 21

*Am. Civil Liberties Union v. Fed. Bureau of Prisons*,
No. CV 20-2320 (RBW), 2022 WL 17250300 (D.D.C. Nov. 28, 2022) .......................... 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................. 7

*Baizer v. U.S. Dep't of Air Force*,
887 F. Supp. 225 (N.D. Cal. 1995) ....................................................... *passim*

*Berry v. Department of Justice*,
733 F.2d 1343 (9th Cir. 1984) ........................................................... 15

*Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*,
742 F.2d 1484 (D.C. Cir. 1984) .......................................................... 8

*Burka v. U.S. Dep't of Health and Human Servs.*,
87 F.3d 508 (D.C. Cir. 1996) ........................................................... 8-9

*Cause of Action Inst. v. Office of Mgmt. & Budget*,
10 F.4th 849 (D.C. Cir. 2021) ........................................................... 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................... 7

*Cottone v. Reno*,
193 F.3d 550 (D.C. Cir. 1999) ...................................................... 19, 20

*Ctr. for Med. Progress v. U.S. Dep't of Health & Human Servs.*,
No. CV 21-642 (BAH), 2022 WL 4016617 (D.D.C. Sept. 3, 2022) ....................... 19

*Davis v. U.S. Dep't of Justice*,
968 F.2d 1276 (D.C. Cir. 1992) .......................................................... 20

*Fitzgibbon v. C.I.A.*,
911 F.2d 755 (D.C. Cir. 1990) ........................................................... 20

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ................................................................. *passim*

*FOIA." Frazee v. U.S. Forest Serv.*,
97 F.3d 367 (9th Cir. 1996) ............................................................. 9

*Gen. Servs. Admin. v. Benson*,
415 F.2d 878 (9th Cir. 1969) ............................................................ 9

*Gilmore v. U.S. Dep't of Energy*,
4 F. Supp. 2d 912 (N.D. Cal. 1998) ........................................... 12, 13, 18, 21

*Hamdan v. U.S. Dep't of Justice*,
797 F.3d 759 (9th Cir. 2015) ............................................................ 8

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

*Hooker v. U.S. Dep't of Health and Human Servs.*,
   887 F. Supp. 2d 40 (D.D.C. 2012) ........................................................................ 18

*Hunt v. Cent. Intelligence Agency*,
   981 F.2d 1116 (9th Cir. 1992) ............................................................................... 8

*Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*,
   463 F.3d 239 (2d Cir. 2006) ................................................................................. 20

*Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*,
   646 F.3d 924 (D.C. Cir. 2011) ....................................................................... 11, 14

*Kinnucan v. Nat'l Sec. Agency*,
   No. C20-1309 MJP, 2021 WL 6125809 (W.D. Wash. Dec. 28, 2021) ................. 11

*Kissinger v. Reporters Comm. for Freedom of Press*,
   445 U.S. 136 (1980) .............................................................................................. 8

*Lahr v. Nat'l Transp. Safety Bd.*,
   569 F.3d 964 (9th Cir. 2009) ................................................................................. 7

*Lane v. Dep't of the Interior*,
   523 F.3d 1128 (9th Cir. 2008) ............................................................................... 7

*Lewis v. Internal Revenue Serv.*,
   823 F.2d 375 (9th Cir. 1987) ................................................................................. 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................................. 7

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) .............................................................................................. 8

*Olson v. U.S. Dep't of Transp. Fed. Transit Admin.*,
   No. C 02-00673 WHA, 2002 WL 31738794 (N.D. Cal. Dec. 2, 2002) ................. 7

*Pub. Justice Found. v. Farm Serv. Agency*,
   538 F. Supp. 3d 934 (N.D. Cal. 2021) ................................................................. 18

*Renewable Fuels Ass'n v. U.S. Env't Prot. Agency*,
   519 F. Supp. 3d 1 (D.D.C. 2021) ......................................................................... 17

*Rivera v. Philip Morris, Inc.*,
   395 F.3d 1142 (9th Cir. 2005) ............................................................................... 7

*Rojas v. Fed. Aviation Admin.*,
   941 F.3d 392 (9th Cir. 2019) ..................................................................... 11, 12, 14

*Rosenberg v. U.S. Dep't of Def.*,
   342 F. Supp. 3d 62 (D.D.C. 2018) ....................................................................... 21

*SDC Development Corp. v. Mathews*,
   542 F.2d 1116 (9th Cir. 1976) .............................................................. 2, 10, 11, 14

*Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*,
   516 F. Supp. 3d 1217 (W.D. Wash. 2021) ........................................................... 21

*Seife v. Food & Drug Admin.*,
 No. 17-CV-3960 (JMF), 2019 WL 1382724 (S.D.N.Y. Mar. 27, 2019) ........................................... 20

*Tax Analysts v. U.S. Dep't of Justice*
 913 F. Supp. 599 (D.D.C. 1996) ......................................................................... 12, 13, 14

*U.S. Dep't of Justice v. Tax Analysts*,
 492 U.S. 136 (1989) ......................................................................................... 8, 9

*U.S. Dep't of State v. Ray*,
 502 U.S. 164 (1991) ............................................................................................. 8

*Watkins v. U.S. Bureau of Customs & Border Prot.*,
 643 F.3d 1189 (9th Cir. 2011) .................................................................... 9, 15, 20

*Wilson v. Fed. Commc'ns Comm'n*,
 No. 21-CV-895-RMM, 2022 WL 4245485 (D.D.C. Sept. 15, 2022) ......................... 18 19

**Statutes**

5 U.S.C. § 552 ................................................................................................... 8, 9, 21

**Rules**

Federal Rule of Civil Procedure 56 ........................................................................ 1, 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 25, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Donna M. Ryu, defendants United States Immigration and Customs Enforcement ("ICE") and Department of Homeland Security ("DHS" and, together with ICE, collectively, "Defendants") will move the Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment in their favor.  This motion is brought on the ground that no material facts are in dispute and Defendants are entitled to judgment as a matter of law.  The motion is supported by the following Memorandum of Points and Authorities, the Declarations of Jessica Jones and Shawn O'Donnell filed herewith, the pleadings on file with the Court, and any oral argument that may be presented to the Court.

## STATEMENT OF RELIEF REQUESTED

Defendants request that the Court deny Plaintiff's motion for summary judgment and grant summary judgment in their favor.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This Freedom of Information Act ("FOIA") litigation involves a request by Plaintiff American Civil Liberties Union ("Plaintiff") for electronic law library materials that Defendant U.S. Immigration and Customs Enforcement ("ICE") licenses from a third-party contractor to in order to make them available to detained noncitizens in its custody.  ICE contracted with RELX, Inc. ("RELX"), the owner of the LexisNexis Research Service ("Lexis"), for a subscription to electronic law library materials for the use of detained noncitizens in two formats—(1) an online solution that accesses the materials on RELX's servers over the internet, and (2) an offline solution, in which RELX installs the electronic law library database materials, and software necessary to make them function in an offline environment, on an electronic hard drive (hereinafter, the "Offline Lexis Materials").  RELX supplies ICE with up to 250 of these electronic hard drives, which ICE utilizes for the sole purpose of providing access to legal research materials to noncitizens detained at ICE facilities that lack internet-enabled libraries.  RELX provides the Offline Lexis Materials subject to the terms of its Master Agreement, which grants the

1    customer—in this case, ICE—a "non-exclusive, non-transferable limited license to access and use the

2    Legal Research Service for your own internal use."

3          Plaintiff's FOIA request demands that ICE produce the Offline Lexis Materials in their native

4    format.  The request lacks merit for several reasons.  First and foremost, it is foreclosed by controlling

5    authority.  In *SDC Development Corp. v. Mathews*, 542 F.2d 1116, 1120 (9th Cir. 1976), the Ninth

6    Circuit held that computerized library reference materials were not agency records.  This Court,

7    applying *SDC Development* to a request for an "electronic copy" of a "computerized legal information

8    database" of library reference material, likewise held that the requested materials were not agency

9    records.  *Baizer v. U.S. Dep't of Air Force*, 887 F. Supp. 225, 229 (N.D. Cal. 1995).  Remarkably,

10   Plaintiff does not even acknowledge, much less attempt to distinguish, these authorities, which control

11   the outcome here.

12         Even in the absence of such clear precedents, however, examination of the relevant facts leads to

13   the same conclusion: that the Offline Lexis Materials are not agency records because they are not

14   controlled by the agency, but by the contractor, RELX.  ICE's use is limited by the terms of the Master

15   Agreement, under which ICE lacks the ability to use and dispose of the Offline Lexis Materials as it sees

16   fit.  Access to the Offline Lexis Materials is furnished exclusively for the use of detained noncitizens in

17   ICE's custody, and agency personnel do not utilize them to conduct any agency decision-making.  And

18   the Offline Lexis Materials are not integrated into ICE's files or systems in any way, but kept

19   completely separate.

20         Moreover, because the Offline Lexis Materials consist of RELX's commercial information, and

21   RELX keeps that information closely held by licensing it to users only in accordance with the Master

22   Agreement, the Offline Lexis Materials are also protected from disclosure by Exemption 4.  Neither

23   RELX nor ICE discloses the Offline Lexis Materials to the general public, and compelled disclosure

24   under FOIA would seriously harm both RELX and the government—stripping RELX of its intellectual

25   property rights and exposing its valuable commercial information to the public for free, while impairing

26   ICE's (and the entire government's) ability to obtain an important service in the marketplace on a going-

27   forward basis.

28

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

Accordingly, and as explained in further detail below, the Court should deny Plaintiff's motion for summary judgment and grant Defendant's cross-motion.

**II.     STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Offline Lexis Materials, to which ICE subscribes pursuant to a limited license granted by RELX, and which RELX programs, updates, and controls, constitute an agency record?

2.      Whether the Offline Lexis Materials, which are commercial information owned by RELX, which RELX keeps closely held by licensing to customers including ICE under the terms of its Master Agreement, were properly withheld pursuant to FOIA Exemption 4?

**III.    STATEMENT OF FACTS**

**A.      Plaintiff's FOIA Request at Issue in this Lawsuit**

On March 30, 2023, Plaintiff sent a single FOIA request (the "FOIA Request") to both ICE and DHS, seeking the following records:

1. Electronic Law Library materials provided at any Immigration Detention Facility.
2. All supporting materials related to Electronic Law Library materials provided at or to any ICE Detention Facility.
3. Any document related to software requirements for use of Electronic Law Library materials.

Complaint, ECF No. 1, Ex. A at p. 4.  The FOIA Request defined "Electronic Law Library" to mean "all required and optional electronic legal research media, utilized and/or distributed by ICE to detention facility law libraries."  *Id.* at p. 3.  Plaintiff specifically requested that "responsive records be provided . . . in their native file format, including CD-ROMs or External Hard Drives . . . ."  *Id.* at p. 4.

**B.      Defendants' Processing of Plaintiff's FOIA Request and Information Released and Withheld**

On May 8, 2023, DHS issued a final response to Plaintiff's FOIA request, advising that it was transferring the request to ICE.  *Id.*, Ex. C.  On May 16, 2023, ICE sent Plaintiff an email acknowledging that it had received Plaintiff's FOIA request via referral from DHS.  *Id.*, Ex. D.  On June 27, 2023, ICE began processing the request, including by collecting potentially responsive records.  Jones Decl. ¶ 12.  On October 13, 2023, ICE produced records responsive to Plaintiff's request for

"supporting materials related to Electronic Law Library materials."[1]  *Id.*  ICE further advised Plaintiff

that, after conducting a reasonable search, ICE had determined that it did not possess records "related to

software requirements for use of Electronic Law Library materials."  Joint Case Management Statement,

ECF No. 19 at 3.  Finally, ICE informed Plaintiff that with regard to its request for "Electronic Law

Library materials," ICE obtains such materials pursuant to its contract with RELX and would not be

producing information responsive to that portion of Plaintiff's request because it does not qualify as an

"agency record" subject to FOIA and, even if it did, would be exempt from disclosure pursuant to FOIA

Exemption 4.  *Id.* at 3-4.

      **C.**     **ICE Contracts with RELX for a Subscription to the LexisNexis Research Service to Provide Access to Legal Research Materials to Detained Noncitizens, Which Includes Provision of the Offline Lexis Materials**

To furnish legal research materials at its detention facilities, ICE entered into a contract with

RELX.  Jones Decl. ¶ 4 & Ex. A-B.  The currently operative contract commenced in 2022, with renewal

options each year through 2027.  Jones Decl., Ex. A at p. 2.  The contract requires RELX to provide

"subscriptions to a comprehensive online and offline LexisNexis legal research search engine and

platform."  *Id.*  The contract specifies that the "offline" platform requires RELX to "maintain/update 250

external hard drives across the entire ICE network of facilities."  *Id.* at p.3.  The contract incorporates a

Statement of Work ("SOW"), which includes multiple attachments.  *Id.* at pp. 2, 7-18.  The SOW sets

forth in detail RELX's obligations with respect to the provision of the electronic law library reference

materials and resources on the electronic hard drives ("EHD").  *Id.* at pp. 7-18.

Among other things, the SOW sets forth the databases RELX must include on the EHD.  *Id.* at

pp. 11-12.  Attachment B specifically identifies the required databases.  Jones Decl., Ex. B at pp. 1-3.

The SOW further requires RELX to update all resources on a quarterly basis.  Jones Decl., Ex. A at p.

12.  It also requires RELX to offer training, including "onsite training to ICE detainees," as well as

---

[1] The FOIA Request defined "SUPPORTING MATERIALS" to mean "any usage guides, instructions on the basic use of the system, any accompanying written training or reference materials, and/or any other supporting materials supplied by ICE to immigration detention facilities."  Compl., Ex. A at p. 3.

1   "interactive and/or recorded training," which "shall be included on the electronic system and should be

2   updated, as needed, to remain current with the system and materials included." *Id.* at p. 15.

3     Attachment D to the contract contains a Quality Assurance Surveillance Plan, which expressly

4   provides that "the Service Provider [RELX], and not the Government, is responsible for the day-to-day

5   operation of the electronic law library and all the management and quality control actions required to

6   meet the terms of the Agreement." Jones Decl., Ex. B at p. 65. This requires RELX to "develop a

7   comprehensive program of inspections and monitoring actions and document its approach in a Quality

8   Control Plan (QCP)." *Id.* The QCP sets forth "the methods [RELX] will use to review its performance

9   to ensure it conforms to the performance requirements." *Id.* at p. 66. RELX is required to perform these

10  reviews "to validate its operations and assure ICE that the services meet the performance standards," and

11  must submit monthly Quality Control reports to ICE. *Id.* at pp. 65-66.

12    **D.**  **Use of the Offline Lexis Materials Is Subject to the Terms of the LexisNexis Master Agreement**

13    ICE's subscription to the LexisNexis Legal Research Service is subject to the terms of the

14  LexisNexis Master Agreement. O'Donnell Decl. ¶ 5 & Ex. A. The Master Agreement provides that the

15  user is "granted a non-exclusive, non-transferable limited license to access and use the Legal Research

16  Service for your own internal use." O'Donnell Decl., Ex. A. at p. 1. The Master Agreement contains

17  certain "Restrictions on Use," which provide that "you [i.e., the user] may not, nor may you permit

18  others to: . . . copy all of any portion of the Legal Research Service," or "allow anyone other than

19  yourself, your employees, and independent contractors working solely on your behalf to use the Legal

20  Research Service[.]" *Id.* at p. 2. The Master Agreement further sets forth certain "Prohibited Uses,"

21  which provide that "[y]ou may not, nor may you permit others to: . . . use the Legal Research Service in

22  any fashion that may infringe the copyright, intellectual property right, or proprietary or property right

23  or interest of us or our Suppliers." *Id.* at p.3. The same section also prohibits a user from "mak[ing] any

24  portion of the Legal Research Service available to third parties through any timesharing system, service

25  bureau, the Internet, or any other similar technology now existing or developed in the future." *Id.* Nor

26  may a user "remove or obscure any copyright notice or other notice or terms of use contained in the

27

28

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

Legal Research Service," or "remove, disable, or defeat any functionality in the Legal Research Service designed to limit or control access to or use of the Legal Research Service." *Id.*

The Master Agreement also contains a section entitled "OWNERSHIP RIGHTS AND PROTECTION OF INTELLECTUAL PROPERTY," which provides:

> 2.1    Ownership.  The Legal Research Service and any copyrights, trademarks, patents, trade secrets, intellectual property rights, and other proprietary rights in and to the Legal Research Service are owned by us and our Suppliers, and you obtain no right, title, or interest therein.
>
> You hereby assign to us all copyrights, intellectual property rights, and any other proprietary or property rights or interests in and to any work created in violation of this Master Agreement.
>
> 2.2    Trade Secrets.  The Technology used in the Licensed Program is a trade secret, and you will maintain any information learned about that technology as a trade secret and will not disclose that information or permit that information to be disclosed to any person or entity; however, this sentence will not restrict you from training your employees in the ordinary use of the Legal Research Service.
>
> You will not copy, reverse engineer, decompile, disassemble, derive source code from, modify, or prepare derivative works of the Licensed Program, nor will you permit others to do so.

*Id.* at pp. 4-5.  The Master Agreement further provides that "[a]fter the expiration of the Legal Research Service or on receipt of Distributed Media containing an updated version of the Legal Research Service, you will cease use of (uninstall the software) and destroy, or if applicable return to us, the previous or outdated Distributed Media."  *Id.* at p. 5.  The term "Distributed Media" is defined as "the floppy disc, CD-ROM, DVD-ROM, external hard drive, or other physical media now existing or developed in the future on which we furnish the Legal Research Service."  *Id.* at p. 10.

Under the current contract, RELX furnishes the Offline Lexis Materials to ICE exclusively on EHDs; it does not provide any materials on CD-ROM.  Jones Decl. ¶ 6.  Pursuant to the contract, RELX installs on the EHD the contracted-for databases and the software required to make those databases function in the offline environment.  *Id.*  In the parlance of the Master Agreement, the databases are the "Materials" comprising the "information contained in the Legal Research Service," and the software is the "Licensed Programs."  O'Donnell Decl., ¶ 9 & Ex. A at pp. 10-11.  On a quarterly basis, RELX sends the EHDs to the ICE detention facilities and/or Field Offices.  Jones Decl. ¶ 9.  Field offices work with the detention facilities to upload the content of the EHDs to law library computers.  *Id.*  After the

1  contents are uploaded, the field offices and/or detention facilities use return labels provided by RELX to

2  ship the EHDs back to RELX.  *Id.*  This process is repeated each quarter with updates to the Offline

3  Lexis Materials provided by RELX.  *Id.*  If there are installation or troubleshooting issues, RELX has a

4  technician on hand to provide technical support directly to the ICE facilities.  *Id.*

5  **IV.    ARGUMENT**

6      **A.    Applicable Law**

7          **1.    Standard of Review**

8      Summary judgment is appropriate if the record shows "that there is no genuine issue as to any

9  material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty*

10  *Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c).  A court must enter summary judgment

11  "against a party who fails to make a showing sufficient to establish the existence of an element essential

12  to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v.*

13  *Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on

14  which a reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Rivera v.*

15  *Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  A dispute is material only if it could affect the

16  outcome of the suit.  *See Rivera*, 395 F.3d at 1146.  The mere existence of some alleged factual dispute

17  between the parties will not defeat an otherwise properly supported motion for summary judgment.  *See*

18  *Anderson*, 477 U.S. at 248.  Summary judgment is appropriate if a rational trier of fact, viewing the

19  record as a whole, could not find in favor of the party opposing the motion.  *See Matsushita Elec. Indus.*

20  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

21      In a FOIA case, while the agency invoking an exemption "bears the burden of demonstrating that

22  the exemption properly applies to the documents," *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973

23  (9th Cir. 2009), the agency meets its burden when it submits declarations that "contain reasonably

24  detailed descriptions of the documents and allege facts sufficient to establish an exemption."  *Lane v.*

25  *Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir. 2008) (quoting *Lewis v. Internal Revenue Serv.*,

26  823 F.2d 375, 378 (9th Cir. 1987)); *Olson v. U.S. Dep't of Transp. Fed. Transit Admin.*, No. C 02-00673

27  WHA, 2002 WL 31738794, at *2 (N.D. Cal. Dec. 2, 2002).  Declarations submitted by an agency to

28

7

demonstrate the adequacy of its FOIA response are entitled to a presumption of good faith.  *See, e.g.*, *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("Affidavits submitted by an agency to demonstrate the adequacy of its FOIA response are presumed to be in good faith.") (citation omitted); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("there is a presumption of legitimacy accorded to the Government's official conduct") (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 178-79 (1991)).  Thus, where declarations give reasonably detailed justifications for withholding and appear to be in good faith, "the inquiry ends and the nondisclosure is upheld." *Hamdan*, 797 F.3d at 773 (citing *Hunt v. Cent. Intelligence Agency*, 981 F.2d 1116, 1119 (9th Cir. 1992)).

### 2.    What Constitutes an Agency Record

FOIA limits the documents a requester may obtain to "agency records."  5 U.S.C. § 552(a)(4)(B). "Although the term is not defined in the statute, we do not read the term literally to encompass 'all documents in the possession of a FOIA-covered agency.'"  *Cause of Action Inst. v. Office of Mgmt. & Budget*, 10 F.4th 849, 855 (D.C. Cir. 2021) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 216 (D.C. Cir. 2013)).  Rather, to qualify as an "agency record" an agency must either create or obtain the materials, and must be in control of the requested materials at the time of the FOIA request. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (*Tax Analysts I*).  "By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties."  *Id.* at 145.  Mere physical location of materials within an agency, however, does not establish control.  *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 157 (1980).  Rather, courts employ a "totality of the circumstances" test that "focus[es] on a variety of factors surrounding the creation, possession, control, and use of the document by an agency."  *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984).  Factors relevant to this analysis may include: "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files."  *Burka v. U.S. Dep't of Health and Human Servs.*,

1   87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C.

2   Cir. 1988)).  The agency bears the burden of demonstrating that the materials sought are not agency

3   records or have not been improperly withheld.  *Tax Analysts I*, 492 U.S. at 142 n.3.

4           **3.      Exemption 4 Standard**

5           "FOIA expressly recognizes that important interests are served by its exemptions, and those

6   exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure

7   requirement."  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (internal citations,

8   quotation marks and brackets omitted).  One of those exemptions is set forth in 5 U.S.C. § 552(b)(4)

9   ("Exemption 4").

10          Exemption 4 protects "'matters that are . . . trade secrets and commercial or financial information

11  obtained from a person and privileged and confidential.'"  *Watkins v. U.S. Bureau of Customs & Border

12  Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (quoting 5 U.S.C. § 552(b)).  To establish that information is

13  properly withheld under Exemption 4, the "government agency must demonstrate that the information it

14  sought to protect is '(1) commercial and financial information, (2) obtained from a person or by the

15  government, (3) that is privileged or confidential.'"  *Id.* (citation and internal quotation marks omitted).

16  Although FOIA does not define "confidential," case law provides significant insights.  First, to be

17  considered "confidential" under Exemption 4, information must be "customarily kept private, or at least

18  closely held, by the person imparting it." *Argus Leader*, 139 S. Ct. at 2363.  Second, Exemption 4 "is

19  meant to protect information that a private individual wishes to keep confidential . . . but reveals to the

20  government under the express or implied promise by the government that the information will be kept

21  confidential."  *Gen. Servs. Admin. v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969).

22          "The party seeking to withhold information under Exemption 4 has the burden of proving that

23  the information is protected from disclosure under FOIA."  *Frazee v. U.S. Forest Serv.*, 97 F.3d 367,

24  371 (9th Cir. 1996), abrogated on other grounds by *Animal Legal Def. Fund v. U.S. Food and Drug

25  Admin.*, 836 F.3d 987 (9th Cir. 2016).

26

27

28

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

**B.** **The Offline Lexis Materials ICE Licenses from RELX Are Not Agency Records**

**1.** **Library Reference Materials Do Not Qualify as Agency Records**

Controlling precedent from the Ninth Circuit holds that library reference materials, like the materials at issue here, do not qualify as agency records subject to FOIA.  Addressing "whether a complete reference library of medical writings and publications, accumulated and stored in a computer data bank by an agency of the federal government, constitutes 'agency records' for purposes of [the FOIA]," the Ninth Circuit held that it did not.  *SDC Dev.*, 542 F.2d at 1117.  In doing so, the *SDC Development* court recognized "a qualitative difference between the types of records Congress sought to make available to the public by passing the Freedom of Information Act and the library reference system sought to be obtained here."  *Id.* at 1120.  The court explained: "The library material does not directly reflect the structure, operation, or decision-making functions of the agency, and where, as here, the materials are readily disseminated to the public by the agency, the danger of agency secrecy which Congress sought to alleviate is not a consideration."  *Id.*

Applying *SDC Development* to a FOIA request for an "electronic copy" of a "computerized legal information database" of library reference material known as "JURIS" from the Department of the Air Force, this Court held that the database was "not an agency record."  *Baizer*, 887 F. Supp. at 229.  Explaining the reasoning in *SDC Development*, the Court in *Baizer* wrote that "the Ninth Circuit focused on the purpose of the FOIA—disclosure of records that 'dealt with the structure, operation, and decision-making procedure of the various governmental agencies,'" and thus concluded "because library reference material does not provide any insight into agency decision making, it does not constitute an agency record." 887 F. Supp. at 228 (quoting *SDC Dev.*, 542 F.2d at 1119).  The Court in *Baizer* found this conclusion further bolstered by the Supreme Court's repeated analogies to the definition of "records" in the Records Disposal Act, which "specifically excludes library reference materials."  *Id.* at 229.

Despite that its FOIA Request clearly seeks electronic library materials like those at issue in *SDC Development* and *Baizer*, Plaintiff fails to address either case.  Those authorities are directly on point and compel the conclusion that the Offline Lexis Materials are not agency records.  Just as in *SDC*

*Development*, Plaintiff's request seeks "a complete reference library . . . stored in a computer data bank," 542 F.2d at 1117, which, in this case, exists on a hard drive owned and maintained by RELX. There, as here, "[t]he library material does not directly reflect the structure, operation, or decision-making functions of the agency," and thus is not an agency record. *Id.* at 1120. Likewise, given that it consists of library materials, the substantive information in the Offline Lexis Materials (albeit not in the proprietary format owned and commercialized by RELX) is available to the public. Indeed, much of the substantive library content (such as copies of statutes, regulations, and court decisions) can be found for free in the public domain, and the remainder can be licensed from RELX by anyone on a subscription basis. Thus, "the danger of agency secrecy which Congress sought to alleviate is not a consideration." *Id*. Indeed, just as in *Baizer*, "the database [Plaintiff] seeks is maintained for reference purposes only," and its contents "are readily available both in public libraries and from other computerized reference services such as Lexis and Westlaw." 887 F. Supp. at 227. Because this case is on all fours with *SDC Development* and *Baizer*, this Court should grant summary judgment in Defendants' favor, and the analysis need proceed no further.

### 2. Even If Library Reference Materials Could Be Agency Records, the Offline Lexis Materials Do Not Qualify Because They Are Not Controlled by ICE

To independently assess whether records are sufficiently controlled by an agency to qualify as agency records for purposes of FOIA, courts "consider a range of evidence." *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 409 (9th Cir. 2019), As noted above, the D.C. Circuit's test "look[s] to four factors to determine whether an agency controls a document: '(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 926-27 (D.C. Cir. 2011) (quoting *Burka*, 87 F.3d at 515). Although the Ninth Circuit has not "fully embrace[d]" this test, its guidance embraces a similarly "fact-driven approach to determining whether an agency controls a particular record such that it is subject to FOIA." *Kinnucan v. Nat'l Sec. Agency*, No. C20-1309 MJP, 2021 WL 6125809, at *4 (W.D. Wash. Dec. 28, 2021) (citing *Rojas*, 941 F.3d at 409). "As suggested by the D.C. Circuit," *Rojas* endorsed

looking to "evidence relating to the agency's use of documents (including its system for preserving, retrieving, or disposing of the documents, and any reliance on the documents by agency employees)[.]" 941 F.3d at 409.

Consistent with *Rojas*'s gloss on the D.C. Circuit's multi-factor test,[2] the relevant evidence in this case all points to the conclusion that the Offline Lexis Materials are not controlled by ICE, and thus are not agency records.  First, the agency lacks the ability to use and dispose of the Offline Lexis Materials as it sees fit.  O'Donnell Decl. ¶¶ 5-8 & Ex. A.  Rather, ICE's use of the Offline Lexis Materials is subject to the terms of its "non-exclusive, non-transferable limited license," which is limited by the "Restrictions on Use" and "Prohibited Uses" set forth in the Master Agreement.  *Id.*, Ex. A.  This factor—"whether the records at issue were subject to the free disposition of the agency," has long been considered a "key element of 'control.'"  *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912, 918 (N.D. Cal. 1998) (citing *Tax Analysts v. U.S. Dep't of Justice*, 913 F. Supp. 599, 603 (D.D.C. 1996) (*Tax Analysts II*)).  Under similar circumstances, courts have held that such contractual restrictions on use and transfer of records placed them outside the agency's control, and thus not subject to FOIA.

In *Tax Analysts II*—which, like *SDC Development* and *Baizer*, also involved electronic library materials—the court found that "although DOJ certainly possessed the West-provided data, its right to use, transfer and/or dispose of it was greatly restricted, and thus DOJ did not 'control' the data in any common sense reading of that word."  913 F. Supp. at 607.  In *Gilmore*, this Court similarly held that video conferencing software known as CLERVER, which the government did not own, "but merely possesse[d] a license to use . . . for government purposes," was not an agency record because "DOE's right to use CLERVER [was] similarly restricted."  4 F. Supp. 2d at 918-19.  Thus, the Court concluded, "DOE lack[ed] sufficient control over CLERVER to make it an agency record of DOE."  *Id.* at 919.  So too, here.  Pursuant to the Master Agreement, ICE's use of the Offline Lexis Materials is restricted by its

---

[2] *Rojas* suggests that the first factor in the D.C. Circuit test—pertaining to the intent of the requested document's creator—be given little weight, and that the fourth factor—regarding whether a document is "integrated" into an agency's record system may be "less helpful" in certain cases involving "emails and other electronic records," such as where "email and other electronic records may be automatically stored on an agency's server, and not 'filed' in a record system in any formal way."  941 F.3d at 409.

1    limited license in materially identical ways to the materials at issue in *Gilmore* and *Tax Analysts II*.  In

2    *Gilmore*, for example, the third party "own[ed] the copyright in CLERVER, but gave the government a

3    limited license to use CLERVER for government purposes only."  4 F. Supp. 2d at 922.  Likewise, in

4    *Tax Analysts II*, West had granted the DOJ a nonexclusive license for limited use of the JURIS

5    materials, which specifically provided that West remained the exclusive owner of the materials.  913 F.

6    Supp. at 604.  Here, ICE has "a non-exclusive, non-transferable limited license to access and use the

7    Legal Research Service for [its] own internal use," while RELX remains the owner of the materials.

8    O'Donnell Decl., Ex. A at pp. 1, 5.  Thus, ICE lacks sufficient control over the Offline Lexis Materials

9    to render them an agency record.  Plaintiff's efforts to distinguish *Gilmore* and *Tax Analysts II*, which

10   depend entirely on its mistaken assumption that ICE's ability to dispose of the Offline Lexis Materials is

11   unfettered (*see* Motion at 10-11), are thus unavailing.[3]

12       Second, ICE personnel do not use the Offline Lexis Materials to conduct any agency decision-

13   making.  Jones Decl. ¶ 7.  On the contrary, the Offline Lexis Materials are provided purely for the use of

14   detained noncitizens in ICE custody.  *Id.*  Third, the Offline Lexis Materials are in no way integrated

15   into the ICE's records or files.  Rather, they exist on standalone EHDs provided by RELX, which are

16   updated quarterly and serviced by RELX while in use and then returned to RELX, either when they are

17   replaced or at the end of the contract term.  *Id.* ¶ 9.  As this Court explained in *Baizer*, "[i]f an agency

18   integrates material into its files and relies on it in decision making, then the agency controls the material.

19   If, on the other hand, material is maintained solely for reference purposes or as a research tool, then the

20   indicia of control are lacking."  887 F. Supp. at 228.  Here, the Offline Lexis Materials are maintained

21   solely as a research tool—and in this case not even for the use of agency personnel, but that of detained

22   noncitizens.  Jones Decl. ¶ 7.  Moreover, responsibility for maintaining the Offline Lexis Materials rests

23   with the contractor, RELX, not the agency.  *Id.* ¶ 8.  Thus, the agency use factors weigh even more

---

25           [3] In addition to being premised on the incorrect assumption that ICE has the unrestricted ability
26   to freely disseminate the materials, Plaintiff's speculation that this would be "expected" because the
     "purpose of the electronic library materials is entirely different" as "a public resource," Motion at 11, is
27   equally unfounded.  The public has no access to the Offline Lexis Materials in ICE's possession.
     Detained noncitizens in ICE custody are not members of the general public, which is given no access to
28   the Offline Lexis Materials.  Jones Decl. ¶¶ 10-11.

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

heavily against a finding of control.  *See Tax Analysts II*, 913 F. Supp. at 607 (holding that "the West-provided data in JURIS is not an 'agency record' under FOIA" where it "does not provide information about the conduct of DOJ, and the disclosure of the data would not shed light on the conduct of any agency or official.").  Taken together, these factors confirm that "a document that could not reveal anything about agency decisionmaking is not an 'agency record.'"  *Judicial Watch*, 646 F.3d at 928.

Plaintiff attempts to resist this conclusion by claiming that the Offline Lexis Materials "are a direct result of ICE's decision-making."  Motion at 12.  Even if true, however, this does nothing to show that the Offline Lexis Materials themselves are *used in* agency decision-making, which is the relevant question for evaluating the issue of control.  *See Rojas*, 941 F.3d at 409 (explaining the relevance of "evidence relating to the agency's use of documents," including "any reliance on the documents by agency employees").  The evidence demonstrates that they are not, Jones Decl. ¶ 7, and Plaintiff offers no evidence to the contrary.  "The public cannot learn anything about agency decisionmaking from a document the agency neither created nor consulted, and requiring disclosure under these circumstances would do nothing to further FOIA's purpose of 'open[ing] agency action to the light of public scrutiny.'"  *Judicial Watch*, 646 F.3d at 927 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

Moreover, Plaintiff's suggestion that disclosure of the Offline Lexis Materials is necessary to reveal what information is made available to detained noncitizens is simply incorrect.  The SOW and Attachment B incorporated into the contract identify the databases that are included in the Offline Lexis Materials.  Jones Decl., Ex. A at pp. 11-12; Ex. B at pp. 1-3.  In addition, as ICE's license is non-exclusive, RELX may license those same databases commercially to other users.  Thus, not only is Plaintiff wrong to assert that disclosure is necessary to reveal agency decision-making about what information to provide to detained noncitizens—that information appears in the contract itself—but Plaintiff already has it.  *See SDC Dev.*, 542 F.2d at 1120 ("[T]he danger of agency secrecy which Congress sought to alleviate is not a consideration."); *Tax Analysts II*, 913 F. Supp. at 607 ("Preventing access to this database does not permit DOJ to insulate itself from public scrutiny of its operations and

1   regulatory decisions.").  Regardless, the evidence and relevant precedent demonstrates that control is

2   lacking, and thus the Offline Lexis Materials are not an agency record.[4]

3        **C.**     **ICE's Withholding of the Offline Lexis Materials Is Protected by Exemption 4**

4        For the reasons explained above, because the Offline Lexis Materials are not an agency record

5   subject to FOIA, the Court need not reach the question of whether, if they were an agency record, they

6   would qualify as exempt.  Even if the Court were to conclude otherwise, however, the record

7   demonstrates that ICE properly withheld the information pursuant to Exemption 4.

8        As noted above, to properly invoke Exemption 4, the agency must demonstrate that the

9   information it seeks to protect is "(1) commercial and financial information, (2) obtained from a person

10  or by the government, (3) that is privileged or confidential."  *Watkins*, 643 F.3d at 1194 (citation

11  omitted).  The first two elements are not in dispute.  *See* Motion at 14 n.12 ("Plaintiff does not contest

12  that the electronic law library constitutes 'commercial' information.  Plaintiff also does not contest the

13  second requirement[.]").  The Offline Lexis Materials are commercial information ICE obtains from

14  RELX pursuant to contract, subject to the terms of the limited license set forth in the Master Agreement.

15  Jones Decl., Ex. A; O'Donnell Decl., ¶¶ 5, 7, 9 & Ex. A.  The applicability of Exemption 4 thus boils

16  down to whether the information is "confidential."

17       In *Argus Leader*, the Supreme Court "suggest[ed] two conditions that might be required for

18  information communicated to another to be considered confidential."  139 S. Ct. at 2363.  "In one

19  sense," this requires that the information be "customarily kept private, or at least closely held, by the

20

21

22

---

23      [4] Other than its erroneous attempts to distinguish *Gilmore* and *Tax Analysts II*—both of which

24  are on point and held that the requested information did not qualify as an agency record—all of the cases
    Plaintiff cites in the section of its brief discussing the control issue are inapposite.  Indeed, of the five

25  cases cited on page 13 of Plaintiff's motion, only one even involved a dispute over whether the
    requested information was an agency record.  That case, *Berry v. Department of Justice*, 733 F.2d 1343

26  (9th Cir. 1984), held that pre-sentence investigation reports were agency records when in possession of
    either the Federal Bureau of Prisons or the United States Parole Commission.  *Berry* is so plainly

27  distinguishable that Plaintiff does not even attempt to analogize to its facts.  Critically, unlike here, the
    requested information was "prepared substantially to be relied upon in agency decisionmaking."  *Id.* at

28  1352.

person imparting it." *Id.* "In another sense, the information might be considered confidential only if the party receiving it provides some assurance that it will remain secret." *Id.*[5]

> ### 1. The Offline Lexis Materials Are Confidential Because They Are Customarily and Actually Treated as Private by Their Owner, RELX

To begin, it is important to stress that confidentiality, as interpreted by the Supreme Court in *Argus Leader*, focuses on how the information is treated "by the person imparting it," *id.*, which in this case is the contractor, RELX. The Offline Lexis Materials consist of electronic databases containing legal research materials (which the Master Agreement refers to as the Legal Research Service) and software necessary to utilize those databases (which the Master Agreement calls a Licensed Program). O'Donnell Decl. ¶ 9 & Ex. A, pp. 10-11. The databases are subject to certain intellectual property protections including copyright, and the software is a trade secret.[6] *Id.* ¶ 9 & Ex. A, p. 5. As the Master Agreement demonstrates, RELX provides the Offline Lexis Materials subject to a "non-transferable limited license to access and use the Legal Research Service for your own internal use." O'Donnell Decl., Ex. A at p. 1. ~~Each time the Offline Lexis Materials are accessed by a user at an ICE facility, the Master Agreement is displayed and the user must agree to the terms before proceeding. O'Donnell Decl. ¶ 5.~~ The license granted pursuant to the Master Agreement is limited by express "Restrictions on Use," which prevent the customer from, among other things, "copy[ing] all or any portion of the Legal Research Service," or "allow[ing] anyone other than yourself, your employees, and independent

---

[5] As to the latter condition, the Supreme Court in *Argus Leader* had "no need to resolve" whether it was actually required, leaving the question open for another day. 139 S. Ct. at 2363. While it is Defendants' position that an assurance of privacy is not required, if so, as discussed below, ICE provided such an assurance to RELX here in the Master Agreement.

[6] Although Plaintiff attempts to assure the Court that its FOIA Request "does not seek any source code or any confidential information," Motion at 4, that is exactly what Plaintiff seeks, and no disclaimer can make it otherwise. Plaintiff demands "a copy of the electronic law library in its native format." As explained above, the "electronic law library" is provided by RELX on an EHD; what is on the EHD are LexisNexis databases comprising the law library materials, and software that makes those databases function. Jones Decl. ¶¶ 4, 6. The software is specifically defined in the Master Agreement as a trade secret. O'Donnell Decl., Ex. A at p. 5, 11. The database contents are owned by RELX, subject to intellectual property protections, and provided to ICE pursuant to a limited license that prohibits, among other things, any infringing uses or making the materials available to any third parties. O'Donnell Decl. ¶¶ 5, 7-9 & Ex. A. The database contents do not function without the software. Jones Decl. ¶ 6; O'Donnell Decl. ¶ 9. Thus, contrary to Plaintiff's assertions, the FOIA Request does seek trade secret and confidential information. Accordingly, the requested information was properly withheld under Exemption 4.

16

contractors working solely on your behalf to use the Legal Research Service[.]" *Id.*, Ex. A at p. 2.  The license is further limited by express "Prohibited Uses," which include "mak[ing] any portion of the Legal Research Service available to third parties through any timesharing system, service bureau, the Internet, or any other similar technology now existing or developed in the future," or "remov[ing] or obscur[ing] any copyright notice or other notice or terms of use contained in the Legal Research Service." *Id.* at p. 3.

Examination of the Master Agreement, including but not limited to the provisions quoted above, amply demonstrates that RELX treats the Offline Lexis Materials as "at least closely held." *Argus Leader*, 139 S. Ct. at 2363.  Indeed, it remains the case post-*Argus Leader* that "information is confidential under Exemption 4 'if it is of the kind that would customarily not be released to the public by the person [or entity] from whom it was obtained.'" *Renewable Fuels Ass'n v. U.S. Env't Prot. Agency*, 519 F. Supp. 3d 1, 12 (D.D.C. 2021) (quoting *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992)).  Here, it is beyond dispute that RELX does not release the Offline Lexis Materials to the public.  Indeed, doing so would obviously undermine its business, which explains why it expressly prohibits customers from doing so in the Master Agreement. *See* O'Donnell Decl., Ex. A at pp. 2-3.

Plaintiff points to the language in the contract indicating that it requires RELX to "deploy both the custom interface online/tablet solution for 45,000 detainees and maintain/update 250 external hard drives across the entire ICE network of facilities," suggesting that this shows "ICE and Relx intended the electronic law library to be publicly available."  Motion at 16.  This is wrong on multiple levels.  As an initial matter, to the extent Plaintiff contends that this provision shows that RELX freely discloses the Offline Lexis Materials to 45,000 detained noncitizens, Plaintiff misreads the statement.  On its face, the "45,000" figure refers to the "online/tablet solution," which is entirely distinct from the Offline Lexis Materials, and which Plaintiff does not seek.[7]  Jones Decl., Ex. A at p.3.  The "250 external hard drives"

---

[7] It is worth noting that Plaintiff does not even contend that the online/tablet solution provided by RELX constitutes an agency record.  For the reasons discussed in Section IV.B above, the Offline Lexis Materials should not be treated any differently merely because they are provided in a format that functions in an offline environment.

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

on which RELX provides the Offline Lexis Materials service a smaller subset of the population of detained noncitizens.  Ultimately, however, this is a distinction without difference, as both the online version and the Offline Lexis Materials are provided subject to the terms of the Master Agreement.  As discussed above, the Master Agreement demonstrates that the Offline Lexis Materials are not customarily made available to the public; they are provided to paying customers like ICE pursuant to a limited license.  O'Donnell Decl., Ex. A.

Nor, contrary to Plaintiff's repeated but factually unsupported assertion, are the Offline Lexis Materials *actually* made freely available to "the public."  Detained noncitizens in ICE custody are not "the public."  Consistent with the Master Agreement, ICE does not provide access to the Offline Lexis Materials to members of the general public, but only to detained noncitizens in its custody.  Jones Decl. ¶ 11.  That is a far cry from making them "publicly available," and Plaintiff's attempt to equate ICE's provision of access to the Offline Lexis Materials to a subset of detained noncitizens in its custody with freely distributing those materials to "the public" is unsupported and unavailing.  Notably, Plaintiff offers zero evidence that the Offline Lexis Materials are made available (whether by RELX, ICE, or anyone else) freely to the public.  The record shows that is not the case.  Jones Decl. ¶¶ 10-11.  Because RELX does not release the Offline Lexis Materials to the public, but provides them only subject to the terms of the Master Agreement, they qualify for protection under Exemption 4.  *See Gilmore*, 4 F. Supp. 2d at 922 (finding that the government's acquisition from the copyright holder of "a limited license to use CLERVER for government purposes only satisfied the confidentiality requirement of Exemption 4); *see also Hooker v. U.S. Dep't of Health and Human Servs.*, 887 F. Supp. 2d 40, 61 n.18 (D.D.C. 2012) ("[T]he only appropriate approach for protecting copyrighted documents under FOIA is through application of Exemption 4.").

### 2. The Requested Information Is Provided to the Government under an Assurance of Privacy

*Argus Leader* expressly left open "whether information conveyed to the government may be withheld without an assurance of privacy," because in that case, "the assurance was undisputed."  *Pub. Justice Found. v. Farm Serv. Agency*, 538 F. Supp. 3d 934, 942 (N.D. Cal. 2021).  As a result, many courts have treated that potential second condition, i.e., whether the information was "provided to the

government under an assurance of privacy," 139 S. Ct. at 2366—as "relevant but not strictly required." *Wilson v. Fed. Commc'ns Comm'n*, No. 21-CV-895-RMM, 2022 WL 4245485, at *7 (D.D.C. Sept. 15, 2022) (collecting cases). Citing *Argus Leader*'s acknowledgment of the Ninth Circuit's *Benson* decision, however, at least one ruling from this Court has treated government assurances, either express or implied, as required. *Public Justice*, 538 F. Supp. 3d at 942 ("This order . . . acknowledges *Argus Leader*, but must apply the *Benson* standard.").

The question is essentially academic, however, because here, to the extent the Court considers whether the commercial information was "provided to the government under an assurance of privacy," *Argus Leader*, 139 S. Ct. at 2366, the record demonstrates that it was. ICE provided express assurances in the Master Agreement that it would restrict its use of the Offline Lexis Materials in accordance with the terms of the limited license granted by RELX. O'Donnell Decl. ¶¶ 5, 7-8 & Ex. A. This is more than sufficient to demonstrate the government's assurance. *See Argus Leader*, 139 S. Ct. at 2363 (finding an "express[] require[ment] or request" by the provider of the information, and the government's "agree[ment] to abide" by this "condition" showed that the defendant had "provide[d] some assurance that [the information] will remain secret"); *Am. Civil Liberties Union v. Fed. Bureau of Prisons*, No. CV 20-2320 (RBW), 2022 WL 17250300, at *8 (D.D.C. Nov. 28, 2022) (finding the information provider's express request that the government "maintain the information as confidential to the greatest extent possible under the law," coupled with the government's agreement to abide by that condition, constituted sufficient assurances for purposes of Exemption 4).

### 3. ICE Has Not Waived Confidentiality Because There Is No Evidence That the Offline Lexis Materials Have Been Disclosed to the Public

Because Plaintiff's waiver theory is premised on its unsupported attempt to establish a false equivalency between detained noncitizens in ICE custody and "the public," the argument lacks merit and must be rejected. Under what has been labeled the "public domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). "This exception is narrow and, if applicable, requires the information requested to (1) 'be as specific as the information previously released[,]' (2) 'match the information previously disclosed[,]' and (3) 'already have been

1  made public through an official and documented disclosure.'" *Ctr. for Med. Progress v. U.S. Dep't of*

2  *Health & Human Servs.*, No. CV 21-642 (BAH), 2022 WL 4016617, at *8 (D.D.C. Sept. 3, 2022)

3  (quoting *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  Importantly, the party "who asserts

4  that material is publicly available carries the burden of *production* on that issue." *Davis v. U.S. Dep't of*

5  *Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992).

6       Here, Plaintiff offers no evidence that the Offline Lexis Materials have been publicly disclosed,

7  much less in a "permanent public record" via an "official and documented disclosure." *Cottone*, 193

8  F.3d at 554; *Fitzgibbon*, 911 F.2d at 765.  Moreover, to the extent Plaintiff argues that ICE has

9  "disclosed" the Offline Lexis Materials "by publishing specific claims about its contents and features to

10  Congress and on the internet," Motion at 18, Plaintiff offers no authority to support this argument,

11  which, in any event, is without merit.  Reporting information about the library materials to Congress or

12  mentioning them on the internet is hardly the same as disclosing the actual Offline Lexis Materials in

13  native format—such that there is simply no "match" between the requested information and the

14  information previously disclosed. *Fitzgibbon*, 911 F.2d at 765.  Indeed, for the public domain doctrine

15  to apply, this match would have to be "identical." *Inner City Press/Cmty. on the Move v. Bd. of*

16  *Governors of Fed. Reserve Sys.*, 463 F.3d 239, 244 (2d Cir. 2006) (quoting *Niagara Mohawk Power*

17  *Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)); *see also Seife v. Food & Drug Admin.*,

18  No. 17-CV-3960 (JMF), 2019 WL 1382724, at *2 n. 3 (S.D.N.Y. Mar. 27, 2019) (rejecting the

19  plaintiff's contention that the public domain doctrine could apply "to information that is 'largely public'

20  or can be 'easily discerned' based on public information," instead reinforcing that "[t]he publicly

21  available information must be 'identical.'").  In this case, there is no match at all, as Plaintiff provides no

22  evidence that the Offline Lexis Materials have been publicly disclosed.

23       Plaintiff's purported analogy to the waiver found in *Watkins* is misplaced.  Indeed, *Watkins*

24  illustrates why no waiver has occurred here.  There, the court explained that a waiver occurs "when an

25  agency freely discloses to a third party confidential information covered by a FOIA exemption *without*

26  *limiting the third-party's ability to further disseminate the information.*" *Watkins*, 643 F.3d at 1198

27  (emphasis added).  The Court stressed that it was the government's "no-strings attached disclosure" that

28

1   "constitute[d] a waiver of Exemption 4." *Id.* at 1197.  Here, by contrast, there has been no disclosure to

2   "the public," and the provision of access to detained noncitizens comes with considerable "strings

3   attached" as set forth in the Master Agreement.  O'Donnell Decl., Ex. A.  Accordingly, Plaintiff's

4   waiver argument lacks merit and must be rejected.

5          **4.     Defendants' Assertion of Exemption 4 Satisfies the FOIA Improvement Act**

6          The FOIA Improvement Act of 2016 added to FOIA a "foreseeable harm" requirement, which

7   allows withholding of information "only if the agency reasonably foresees that the disclosure would

8   harm an interest protected by an exemption" or the "disclosure is prohibited by law."  5 U.S.C.

9   § 552(a)(8)(A)(i).  "In other words, even if an exemption applies, an agency still must release the record

10  if the disclosure would not reasonably harm an exemption-protected interest and is not prohibited by

11  law." *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1239 (W.D.

12  Wash. 2021).  To establish the harm to the exemption-protected interest resulting from disclosure, the

13  government may address the information categorically, so long as it is not done in a perfunctory fashion.

14  *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).

15         Here, the harm to the government's interest that would result from disclosure is obvious—if, as

16  Plaintiff argues, ICE's provision of access to the Offline Lexis Materials to detained noncitizens itself

17  nullified the Master Agreement and amounted to complete and free public disclosure of RELX's

18  commercial information, ICE would be unable to find a vendor to provide and update legal research

19  materials for detained noncitizens in the future.  O'Donnell Decl. ¶ 10.  This more than suffices to

20  establish that disclosure would harm the government's interests.  *See, e.g., Gilmore*, 4 F. Supp. 2d at

21  922-23 ("There can be no doubt that disclosure of CLERVER to Gilmore so that he can distribute

22  CLERVER on the internet will cause substantial harm to Sandia and its current owner Lockheed Martin.

23  If the technology is freely available on the Internet, there is no reason for anyone to license CLERVER

24  from Sandia, and the value of Sandia's copyright effectively will have been reduced to zero."); *Am. Civil*

25  *Liberties Union Found. of Ariz. v. U.S. Dep't of Homeland Sec.*, No. CV-14-02052-TUC-RM (BPV),

26  2017 WL 8895339, at *21-22 (D. Ariz. Jan. 26, 2017) (finding that disclosure of an equipment manual

27

28

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR

as to which the manufacturer had "made efforts to protect against widespread disclosure" "would impair the government's ability to obtain necessary information in the future").

1   **V.     CONCLUSION**

2        For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion

3   for summary judgment and grant summary judgment in Defendants' favor.

4                                                      Respectfully submitted,

5
                                                       ISMAIL J. RAMSEY
6                                                      United States Attorney

7   Dated: ~~February    ,~~August 6, 2024         By:      */s/ David M. DeVito*_____
                                                       DAVID M. DEVITO
8                                                      Assistant United States Attorneys
                                                       Attorneys for Defendants UNITED STATES
9                                                      IMMIGRATION AND CUSTOMS
                                                       ENFORCEMENT and UNITED STATES
10                                                     DEPARTMENT OF HOMELAND SECURITY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' [CORRECTED] CROSS-MSJ AND OPP. TO PL.'S MSJ
4:23-cv-03450 DMR