# EXHIBIT A

Redline Showing Changes to ECF No. 46
Defendants' [Corrected] Reply in Support of
Cross-Motion for Summary Judgment

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
DAVID M. DEVITO (CABN 243695)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7332
FAX: (415) 436-6748
david.devito@usdoj.gov

Attorneys for Defendants UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT and UNITED STATES
DEPARTMENT OF HOMELAND SECURITY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>           Plaintiff,<br><br>    v.<br><br>UNITED STATES IMMIGRATION AND<br>CUSTOMS ENFORCEMENT and UNITED<br>STATES DEPARTMENT OF HOMELAND<br>SECURITY,<br><br>           Defendants. | Case No. 4:23-cv-3450-DMR<br><br>**DEFENDANTS' [CORRECTED] REPLY IN<br>SUPPORT OF CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Date: May 2, 2024<br>Time: 1:00 p.m.<br>Place:  Zoom Videoconference<br><br>Hon. Donna M. Ryu |

**PREVIOUSLY FILED ON MARCH 26, 2024**

**ECF No. 46**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

I.   INTRODUCTION ............................................................................................................1

II.   ARGUMENT ..................................................................................................................2

    A.   Plaintiff Offers No Independent Evidence in Support of Its Motion or Opposition, Leaving Defendants' Evidence Undisputed ......................................2

    B.   The Master Agreement Applies to ICE's Use of the Offline Lexis Materials ....................2

    C.   The Offline Lexis Materials Are Not Agency Records ........................................5

        1.   Plaintiff Fails to Distinguish Controlling Precedent Holding that Electronic Library Materials Are Not Agency Records ..........................................5

        2.   The Control Factors Unanimously Indicate that ICE Does Not Control the Offline Lexis Materials ........................................8

    D.   Exemption 4 Protects the Offline Lexis Materials from Disclosure ..................................11

    E.   Plaintiff's Factually Unsupported Waiver Argument Fails Because ICE Discloses the Offline Lexis Materials Only to Authorized Users with "Strings Attached" .............................................15

III.   CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. Fed. Bureau of Prisons,*
No. CV 20-2320 (RBW), 2022 WL 17250300 (D.D.C. Nov. 28, 2022) ....................................... 14

*Am. Small Bus. League v. U.S. Dep't of Def.,*
411 F. Supp. 3d 824 (N.D. Cal. 2019) ........................................................................... 14

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.,*
Case No. 12-cv-04376-KAW, 2021 WL 3270666 (N.D. Cal. July 30, 2011) ............................ ~~14~~13

*Baizer v. U.S. Dep't of Air Force,*
887 F. Supp. 225 (N.D. Cal. 1995) .......................................................................... 1, 5, 7, 8

*Broemer v. Fed. Bureau of Investigation,*
No. CV 08-05515 MMM (RZx), 2010 WL 11474673 (C.D. Cal. May 7, 2010) ......................... 5

*Cause of Action Inst. v. Off. of Mgmt. & Budget,*
10 F.4th 849 (D.C. Cir. 2021) ................................................................................. 8, 9, 11

*Gilmore v. U.S. Dep't of Energy,*
4 F. Supp. 2d 912 (N.D. Cal. 1998) .............................................................................. 10

*Hooker v. Dep't of Health & Human Servs.,*
887 F. Supp. 2d 40 (D.D.C. 2012) ................................................................................ 12

*Hamdan v. U.S. Dep't of Justice,*
797 F.3d 759 (9th Cir. 2015) ..................................................................................... 3, 4

*Naumes v. Dep't of the Army,*
588 F. Supp. 3d 23 (D.D.C. 2022) ....................................................................... 12, 13, 14

*Naumes v. Dep't of the Army,*
No. 21-1670 (JEB), 2022 WL 17752206 (D.D.C. Dec. 19, 2022) ...................................... 13

*Orr v. Bank of Am., NT & SA,*
285 F.3d 764 (9th Cir. 2002) ........................................................................................ 2

*Rojas v. Fed. Aviation Admin.,*
941 F.3d 392 (9th Cir. 2019) ........................................................................................ 8

*SDC Development v. Mathews,*
542 F.2d 1116 (9th Cir. 1976) ................................................................................. 1, 5, 6, 7

*Soucie v. David,*
448 F.2d 1067 (D.C. Cir. 1971) ..................................................................................... 6

*Span v. U.S. Dep't of Justice,*
696 F. Supp. 2d 113 (D.D.C. 2010) ................................................................................ 2

*Tax Analysts v. United States Dep't of Justice,*
913 F. Supp. 599 (D.D.C. 1996) ............................................................................... 1, 10

*Watkins v. U.S. Bureau of Customs & Border Prot.,*
    643 F.3d 1189 (9th Cir. 2011) ................................................................................................................. 15

## I.      INTRODUCTION

Almost fifty years ago, the Ninth Circuit affirmed the rejection of a FOIA requester's attempt to obtain an electronic database of library reference materials from the government for free, holding that the materials did not constitute agency records.  *SDC Development v. Mathews*, 542 F.2d 1116 (9th Cir. 1976).  In the years since, courts including this one have consistently rejected FOIA requests for electronic library materials, including requests just like the one here seeking legal reference materials the government acquired from well-known providers of such information.  *Baizer v. U.S. Dep't of Air Force*, 887 F. Supp. 225 (N.D. Cal. 1995); *Tax Analysts v. United States Dep't of Justice*, 913 F. Supp. 599 (D.D.C. 1996) (*Tax Analysts II*).

Plaintiff[1] remains unable to identify any contrary authority, and thus in its opposition attempts to distinguish the uniform precedent based on immaterial or unsupported facts and, failing that, asks the Court to create a legal exception just for this case.  Plaintiff's arguments are unpersuasive.  Its attempt to dispute the uncontradicted evidence that the Master Agreement applies is meritless, as the agency declarations and the documents themselves confirm.  Similarly, Plaintiff's attempts to spin the relevant control factors—all of which support finding that the Offline Lexis Materials are not agency records— lack evidentiary support.  And Plaintiff's suggestion that the Court should disregard the longstanding control-based analysis and carve out an exception for cases involving electronic library materials related to the agency's fulfillment of a "constitutional obligation" was rejected by the Ninth Circuit in *SDC Development*.

Although the Court need not proceed beyond finding that the Offline Lexis Materials are not an agency record, they are in any event protected by Exemption 4.  Plaintiff's challenges on that front are equally flawed.  Exemption 4 protects copyrighted and trade secret information the government obtains from a third party, and the requisite degree of confidentiality can be maintained, as it is here, by provision of the information under a limited license, which assures the information provider that the

---

[1] Capitalized terms not defined herein are given the meaning accorded to them in Defendants' Cross-Motion for Summary Judgment, ECF No. 40 ("Defs.' X-MSJ").

government will abide by its stated restrictions.  Plaintiff's argument amounts to an assertion that this is simply not possible, and that providing the information to detained noncitizens in ICE custody under the terms of a limited license is tantamount to unfettered public disclosure.  Neither the evidence nor the applicable law supports such a result.  Accordingly, the Court should reject Plaintiff's arguments and hold that the Offline Lexis Materials are not agency records and, in the alternative, were properly withheld under Exemption 4.

## II.   ARGUMENT

### A.   Plaintiff Offers No Independent Evidence in Support of Its Motion or Opposition, Leaving Defendants' Evidence Undisputed

As an initial matter, the record in this case consists entirely of the evidence submitted by Defendants in support of their cross-motion, which included the Declaration of Jessica Jones (attaching the contract between ICE and RELX, Dkt. No. 41) and the Declaration of Shawn O'Donnell (attaching the Master Agreement, Dkt. No. 42).  Plaintiff's opposition is accompanied by no evidence, and its initial motion included only a declaration from counsel attaching the ICE-RELX contract and an email exchange between counsel.  Accordingly, from an evidentiary perspective, Defendants' showing stands uncontradicted.  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).  While Plaintiff's opposition advances a number of counterfactual arguments—*see, e.g.*, Opp. at 14 (arguing that "the requested records are well-integrated into ICE's systems and files")—it provides no evidence to support any of them.  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  Accordingly, the Court should disregard Plaintiff's factual assertions that are unsupported by admissible evidence.

### B.   The Master Agreement Applies to ICE's Use of the Offline Lexis Materials

Plaintiff attempts to dispute that the Master Agreement applies, despite having no contrary evidence of any kind, recognizing that the provisions of the Master Agreement doom its arguments on both the "agency record" and Exemption 4 issues.  The O'Donnell Declaration states, however, that "ICE's use of the Offline Lexis Materials is subject to the terms of the LexisNexis Master Agreement," and explains that "[b]y purchasing a subscription to the Lexis Nexis Research Service pursuant to the contract [between ICE and RELX], ICE is a party to the Master Agreement."  O'Donnell Decl. ¶ 5.  ICE validly contracted with RELX for the subscription to the LexisNexis Research Service, and the Master Agreement, which sets forth the terms of use for that service, accompanies that agreement.  *See* O'Donnell Decl., Ex. A at p.10 (defining "Agreement" to mean the "Master Agreement together with the "Order Form.").  Specifically, the Master Agreement provides that "Your use of a Legal Research Service is subject to this Master Agreement."  O'Donnell Decl., Ex. A at p.1.  The Master Agreement defines "you or your" to mean "the person or entity indicated on the signature page of the Order Form, the person or entity on whose behalf a click-through version of this Master Agreement is accepted, or any other person or entity that accesses or uses the Legal Research Service."  *Id.* at p. 11.  It likewise defines the "Order Form" as "the document specifying the Legal Research Service you ordered from us, the applicable charges, and any related terms and conditions."  *Id.*  Here, ICE's contract with RELX, under which ICE subscribed to the LexisNexis Legal Research Service, *see* Jones Decl. ¶ 4, is the "Order Form," and thus ICE's use of the Legal Research Service is subject to the Master Agreement. Moreover, "[e]ach time the Offline Lexis Materials are accessed by a user at an ICE facility, the Master Agreement is displayed and the user must agree to the terms before proceeding."  O'Donnell Decl. ¶ 5. So even if ICE was not bound by the Master Agreement by virtue of its contract with RELX for use of the LexisNexis Legal Research Service (which it is), the evidence would remain uncontradicted that the Master Agreement applies as a result of the user's assent to its terms at the time of use.

"Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith."  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015).  Plaintiff offers no evidence contradicting the O'Donnell Declaration, and its efforts to argue it out of existence are meritless.  Indeed, Plaintiff succeeds only in confirming the Master Agreement's clear application.

1    Plaintiff points to the Master Agreement's reference to LexisNexis being "a division of Reed Elsevier

2    Properties, Inc.," but then immediately concedes that Reed Elsevier Properties, Inc. "became Relx, Inc."

3    Opp'n at 11.  This is true, and shows that the entity identified on the Master Agreement is the same as

4    the one on the contract, and thus that the Master Agreement applies to the RELX-ICE relationship, just

5    as stated in the O'Donnell Declaration and demonstrated above.

6         Plaintiff's other efforts to dispute the applicability of the Master Agreement are equally

7    unavailing.  Plaintiff points to the 2010 copyright date on the Master Agreement to suggest, erroneously,

8    that it applies only to a "LexisNexis CD," and therefore cannot apply to the current materials provided

9    by RELX under the contract signed in 2022.  This ignores the plain language of the document.  It is

10   undisputed that the current version of the Offline Lexis Materials is provided to ICE on an electronic

11   hard drive ("EHD").  Jones Decl. ¶ 6.  By its terms, the Master Agreement applies to materials provided

12   on EHD, as its definition of "Distributed Media" includes "external hard drive, or other physical media

13   now existing or developed in the future on which we furnish the Legal Research Service."  O'Donnell

14   Decl., Ex. A at p.10.  As explained above, the Master Agreement provides that ICE's use of the Legal

15   Research Service "is subject to this Master Agreement," *id.* at p. 1, which, by its terms, covers the

16   current materials furnished on EHD, and is not limited to an outdated CD version, as Plaintiff wrongly

17   suggests.

18        Plaintiff also attempts to invoke inapposite government contracting law to claim that the

19   Defendants should have produced testimony about "who bound the government to the Master

20   Agreement, and . . . that person had authority to bind the government."  *See* Opp'n at 12.  Unlike the

21   cases Plaintiff cites, this not a contract action where the government disputes its obligation to an alleged

22   contractor, but a FOIA case in which the relevant government officials have submitted sworn and

23   uncontradicted testimony that the Master Agreement applies, supplying the terms of use for the Offline

24   Lexis Materials.  As explained above, the Master Agreement applies both by virtue of ICE's entry into

25   the current contract with RELX subscribing to those materials, as well as by each user's agreement at

26   the time of use.  Plaintiff offers no evidence to the contrary, nor any authority suggesting that specific

27   testimony about the contracting official's authority is required in this context.

28

Plaintiff also attempts to undermine the Master Agreement by complaining, oddly, that it was provided "for the first time, with [Defendants'] summary judgment brief." Opp'n at 4. This is not so much a challenge to the Master Agreement's applicability as an assertion that Plaintiff was somehow unfairly surprised by it. In all events, the argument is meritless. Since this is a FOIA action, in which discovery prior to summary judgment is not appropriate,[2] and in which discovery did not occur, this was not just proper—as Defendants' opposition and cross-motion for summary judgment was the first time Defendants were required to provide evidence in support of their position—but to be expected. Plaintiff's suggestion that the Master Agreement should have been provided earlier, in response to an email asking Defendants to voluntarily preview the evidence they would use in support of their defense, lacks merit. Defendants had no obligation to do so (as Plaintiff concedes by identifying none), nor any reason or ability to anticipate Plaintiff's arguments on the merits before they were made. Regardless, Plaintiff was not prejudiced in any way (and does not even suggest that it was).

In sum, Plaintiff's evidence-free challenges to the Master Agreement fail to create a genuine issue, much less overcome, ICE's sworn testimony that it applies. As demonstrated further below, the terms of the Master Agreement, coupled with the other undisputed evidence, are fatal to Plaintiff's arguments on the merits.

## C. The Offline Lexis Materials Are Not Agency Records

### 1. Plaintiff Fails to Distinguish Controlling Precedent Holding that Electronic Library Materials Are Not Agency Records

After failing to address the most relevant precedents from this Court and the Ninth Circuit in its opening brief, Plaintiff's belated attempt to distinguish them is unpersuasive. Plaintiff takes issue with Defendants "compar[ing] the electronic law library materials with computer programs, specialty databases, and program source code used by government employees for reference purposes," all of which Plaintiff acknowledges "courts have concluded are not records eligible for release under FOIA."

---

[2] *See Broemer v. Fed. Bureau of Investigation*, No. CV 08-05515 MMM (RZx), 2010 WL 11474673, at *2 (C.D. Cal. May 7, 2010) ("[T]he Ninth Circuit's holding in *Lane [v. Dep't of Interior*, 523 F.3d 1128 (9th Cir. 2008)] establishes that discovery in FOIA cases prior to discovery is inappropriate").

Opp'n at 1.  Here, presumably, Plaintiff is referring to *SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976) and *Baizer v. U.S. Dep't of Air Force*, 887 F. Supp. 225 (N.D. Cal. 1995), which Defendants discussed at length in their cross-motion.  *See* Defs.' X-MSJ, Dkt. No. 40 at 2, 10-11.  Contrary to the Plaintiff's framing, however, this does not require a "comparison" of dissimilar items— these cases specifically involved "electronic library materials," including electronic law library materials, which is exactly what Plaintiff seeks here.  As a result, they are directly on point and, in the case of *SDC Development*, binding.  There is no reason that the "reference library" materials stored in a "computer data bank," which were the subject of the request in *SDC Development*, 542 F.2d at 1117, should be treated differently because they involved a medical library rather than a law library.  Needless to say, they should not.

Plaintiff nonetheless claims that the Offline Lexis Materials at issue here are somehow "entirely different in kind"—even though from a factual standpoint they are fundamentally the same—because, according to Plaintiff, their disclosure "is critical for the public's understanding of ICE's decisions regarding the fulfillment of its constitutional obligation to detained immigrants, including what law library materials it views as 'adequate.'"  Opp'n at 1.  Plaintiff cites no authority for this "constitutional obligation" exception to the holding of *SDC Development*, which appears nowhere in that case or any of the decisions applying it.  Indeed, the plaintiff in *SDC Development* advanced a similar argument based on *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971)—that "any time an agency prepares a document 'in fulfillment of its function,' it becomes an agency record"—which the Ninth Circuit expressly rejected.  542 F.2d at 1121 (distinguishing *Soucie* because it involved a request for a report that was "the deliberative product of the agency" and explaining that "the *Soucie* court did not address the question of agency materials which are primarily of library reference nature").

Plaintiff's strained attempt to distinguish *SDC Development* and *Baizer* confirms just how identical those cases are to this one.  Although Plaintiff boldly proclaims that "[t]he materials requested here are entirely different in form and purpose," Opp'n at 8, Plaintiff fails to identify any meaningful distinction.  With respect to *SDC Development*, Plaintiff merely notes that the records were part of a medical library "established and updated by the National Library of Medicine," and "readily

disseminated for a Congressionally authorized fee." Opp'n at 8-9. Plaintiff offers no explanation of why this makes them different than the Offline Lexis Materials. In *SDC Development*, the agency decided what materials to include in the library, *see* 542 F.2d at 1117 (noting that "[t]he functions of the library are to acquire and preserve medical publications"), yet this did not affect the court's conclusion that "[t]he library material does not directly reflect the structure, operation, or decision-making functions of the agency," and thus was not an agency record. *Id.* at 1120. There, as here, the agency was "seeking to protect not its information, but rather its system for delivering that information." *Id.*

Plaintiff's contention that the materials requested in *Baizer* "are entirely different" is likewise incorrect. Just like this case, *Baizer* involved a request for "an electronic copy of" a "computerized legal information database" possessed by an agency. 887 F. Supp. at 226. In rejecting the request on the grounds that the database was not an agency record, the court observed that Baizer was "not the first to attempt to use the FOIA to force a federal agency to release a computer research database." *Id.* at 227. That was the plaintiff in *SDC Development*, which lost in a decision affirmed by the Ninth Circuit, which remains good law today. Here, as in *Baizer*, the information sought "is maintained for reference purposes only," and is "readily available both in public libraries and from other computerized reference services such as Lexis and Westlaw." *Id.* Indeed, in this case, the subject of the request is the very information ICE licenses from LexisNexis on a non-exclusive basis. This was held not to be an agency record in *SDC Development* or in *Baizer*, and that holding applies here as well.

Confronted with the indistinguishable facts of *SDC Development* and *Baizer*, Plaintiff attempts to conjure an exception unsupported by the reasoning of either case, by insisting that the computer research database should be deemed an agency record here because it is used "to meet a constitutional obligation." Opp'n at 9. The cases, however, say nothing about control—which is the key determinant of agency record status—hinging on whether the agency possesses the information to fulfill a "constitutional obligation." As noted above, *SDC Development* rejected a virtually identical argument. 542 F.2d at 1121. Nor is there any basis for assuming, as Plaintiff appears to, that the Air Force in *Baizer*, for example, did not possess the requested information to assist with its fulfillment of some constitutional or other important legal duty of the agency. Indeed, it is difficult to conceive of a reason

why an agency would maintain such materials that was unrelated to the fulfillment of some important duty it was obligated to perform.  Regardless, for purposes of determining whether information constitutes an agency record, the case law instructs that "[i]f an agency integrates material into its files and relies on it in decision making, then the agency controls the material.  If, on the other hand, material is maintained solely for reference purposes or as a research tool, then the indicia of control are lacking." *Baizer*, 887 F. Supp. at 228.  Plaintiff cannot credibly contend that, as a factual matter, the Offline Lexis Materials are not used "for reference purpose or as a research tool."  That is exactly what they are used for, just as it was in *SDC Development* and *Baizer*.  Even assuming Plaintiff is correct that the Offline Lexis Materials are provided to aid in the protection of constitutional rights, it remains indisputably true that the way they perform that function is by serving as a reference tool.  Accordingly, the Offline Lexis Materials are not agency records.

### 2. The Control Factors Unanimously Indicate that ICE Does Not Control the Offline Lexis Materials

Unable to distinguish these precedents or cite a single case holding that a computer research database was an agency record, Plaintiff instead attempts to twist the undisputed facts (which show unequivocally that RELX, not ICE, maintains control over the Offline Lexis Materials) in support of its position.  *See* Opp'n at 10-14.  This effort, too, lacks merit.

In evaluating control under the "totality of the circumstances," courts sometimes consider "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files."  *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 855 (D.C. Cir. 2021).  As Defendants explained in their opening brief, the Ninth Circuit declined to "fully embrace" the D.C. Circuit's test, discounting the importance of the first and fourth factors.  *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 409 (9th Cir. 2019).  Plaintiff contends the Court should ignore *Rojas*'s guidance regarding the control analysis because that case involved an issue of whether records were personal or related to agency business, while this one does not.  Opp'n at 8 n.6.  Defendants do not read *Rojas* so

narrowly, but the point is immaterial.  Indeed, Defendants would welcome the Court giving full weight to all four factors in the D.C. Circuit's test, because they weigh uniformly in Defendants' favor.

As to the first factor, Plaintiff confusingly argues that "the agency intended to and retains control over the electronic law library."  Opp'n at 10.  But the first factor looks to "the intent of the document's creator," *Cause of Action*, 10 F.4th at 855, not its recipient, and there is no question that RELX, not ICE, created the Offline Lexis Materials, which it licensed to ICE.  The Master Agreement makes clear RELX's intent to retain control over the Offline Lexis Materials by providing them only under a limited license subject to a host of restrictions.  O'Donnell Decl., Ex. A.  Plaintiff offers no evidence at all with respect to RELX's intent, much less any that contradicts the provisions of the Master Agreement.  Moreover, in addition to focusing erroneously on ICE's intent (which, in any event, was the same as RELX's), Plaintiff's effort to spin the facts as showing that ICE intended to somehow "retain" control over information it did not create, is baseless.

Citing provisions of the contract that specify what services RELX must provide, Plaintiff wrongly claims that these evince ICE's control.  *See* Opp'n at 10 (arguing that "ICE's contract and accompanying Statement of Work with Relx also lay out in painstaking detail the specific requirements, format, audience, screen display, content, research features, functionality, and form of the electronic library").  That the government, as part of the contracting process, told the contractor what services to provide says nothing about which party controls the actual provision of the service.  The evidence, which is detailed extensively in Defendants' motion, shows unequivocally that control of the Offline Lexis Materials rests with RELX, not ICE.  *See* Jones Decl. ¶ 8 ("Responsibility for programming and maintaining the Offline Lexis Materials, rests with the contractor, RELX, not the agency."); *see also* Defs.' Mot. at 4-7.  Indeed, the contract itself expressly provides that "the Service Provider [RELX], and not the Government, is responsible for the day-to-day operation of the electronic law library and all the management and quality control actions required to meet the terms of the Agreement."  Jones Decl., Ex. B at p. 65.  Plaintiff offers no evidence to the contrary.  And Plaintiff's effort to distort the contract provisions authorizing performance oversight by ICE for quality assurance purposes likewise do not show that ICE controls the provision of the service, but the opposite.  In fact, the contract obligates

1  RELX to "develop, implement, and maintain" the Quality Control Plan setting forth the methods RELX

2  uses to review its own performance, and to submit these Quality Control reports to ICE on a monthly

3  basis.  *Id.* at pp. 65-66.

4         Plaintiff also misleadingly presents a snippet from ICE's Performance-Based National Detention

5  Standards, which innocuously states that "facilities must make available in the law library any electronic

6  media provided by ICE/ERO, containing the required publications or other supporting legal research

7  platforms for detainees.  This may include . . . External Hard Drives developed by legal research service

8  vendors utilized by ICE."  Opp'n at 10 (citing ICE, Performance-Based National Detention Standards

9  2011 § 6.3, at 423).  Plaintiff emphasizes the words "provided by" in the first sentence to suggest that

10  ICE has a "direct and controlling role in the design and provision of the electronic law library."  *Id.*  The

11  cited document (which is not in evidence), however, says no such thing.  Rather, it is obviously referring

12  to the Offline Lexis Materials provided to ICE by RELX, which (as the document states) are made

13  available in the law libraries "for detainees."  As discussed above, the evidence demonstrates that those

14  materials are controlled by RELX, not ICE.

15         As to the second factor, the agency's ability to use and dispose of the records as it sees fit, the

16  Master Agreement extensively restricts ICE from doing so.  *See* O'Donnell Decl., Ex. A at pp. 2-3.

17  Plaintiff's argument to the contrary consists entirely of its unsupported claim that the Master Agreement

18  does not apply, which is wrong for the reasons explained above.[3]

19         On the third factor, the extent to which agency personnel have read or relied on the document,

20  Plaintiff takes another of the performance oversight contract provisions out of context to claim that "the

21  contract makes clear that ICE employees regularly read the contents of the electronic law library."

22  Opp'n at 13.  What this provision actually says, however, is that, to assure "Vendor Performance," the

23  Contracting Officer's Representative (i.e., a single ICE employee) "will review the electronic law library

24

25         [3] Similarly, Plaintiff's attempt to distinguish *Tax Analysts II* and *Gilmore v. U.S. Dep't of Energy*, 4 F. Supp. 2d 912 (N.D. Cal. 1998)—both of which rejected FOIA requests seeking information the government licensed from a third party because it was not an agency record, *see* Defs.' X-MSJ at 12-13, fails because it rests entirely on Plaintiff's unsupported and erroneous assertion that the Master Agreement does not apply.

26

27

28

to ensure that all the requirements and performance standards listed in the SOW are fulfilled."  Jones Decl., Ex. B at p.66.  This provision supplies no evidence that any ICE personnel use the Offline Lexis Materials for any purpose beyond making sure RELX adequately performs the contract.  The record remains undisputed that, as the agency has stated, "[t]he Offline Lexis Materials are maintained for the use of detained noncitizens in ICE custody," and "ICE personnel do not use the Offline Lexis Materials to conduct any agency research or decision-making."  Jones Decl. ¶ 7.

Finally, on the fourth factor, the degree to which the document was integrated into the agency's record system or files, Plaintiff again distorts the record, arguing that because ICE uploads the contents of the EHDs supplied by RELX to law library computers, this somehow "integrates" the Offline Lexis Materials into ICE's "record system and files."  Opp'n at 14.  It does not.  The contract makes clear that the Offline Lexis Materials provided by RELX are a "Self-Contained Legal Research System" furnished on a standalone EHD.  Jones Decl., Ex. A at p. 9.  RELX prepares these EHDs and ships them to ICE, which uploads the contents to computers in detention facilities that are not connected to the internet, and then ships the EHDs back to RELX.  Jones Decl. ¶¶ 6, 9.  The process is repeated quarterly for updates, with RELX providing technical support for any installation or troubleshooting issues.  *Id.* ¶ 9.  Contrary to Plaintiff's unsupported characterization, no "integration" occurs.  Of course, the database materials on the EHD need to be loaded onto a computer, or they would be of no use to anyone.  But that act alone hardly constitutes "integration."  *See Cause of Action Inst.*, 10 F.4th at 859 (concluding that internet browsing histories "were not integrated into the agency's systems or records," despite "resid[ing] on the agencies' systems," because "an agency does not necessarily 'control' every document found in its digital storage").

Simply stated, all the relevant control factors, and thus the "totality of the circumstances," indicate that the Offline Lexis Materials are not an agency record subject to FOIA.

### D.      Exemption 4 Protects the Offline Lexis Materials from Disclosure

Plaintiff's challenge to Defendants' invocation of Exemption 4 is equally without merit.  On this point, Plaintiff's opposition is premised on its flawed and unsupported effort to equate detained noncitizens in ICE custody with "the public."  Plaintiff claims that providing the materials to detained

noncitizens subject to the restrictions imposed by the Master Agreement is the same as providing them

freely to members of the general public with no restrictions of any kind.  The evidence, however,

remains uncontradicted that ICE provides access only to detained noncitizens, and not to members of the

general public.  Jones Decl. ¶¶ 8, 10-11.  ~~Plaintiff's false equivalence between "the public" and~~

~~individuals in ICE custody ignores this evidence, as well as the evidence that the detained noncitizens~~

~~themselves must agree to the Master Agreement before using the Offline Lexis Materials.  O'Donnell~~

~~Decl. ¶ 5.~~  Detained noncitizens—like government employees—are not considered members of "the

public" for these purposes, but are instead the only people with access to the detention facility law

libraries, for whose benefit ICE obtains the Offline Lexis Materials from RELX.  Just as an agency

giving access to information to government employees to enable the performance of their job

functions—even though in some contexts those employees would also be considered members of "the

public" generally—is not a public disclosure, nor is provision of the Offline Lexis Materials to detained

noncitizens for legal research purposes while in custody such a public disclosure.  Under Plaintiff's

conception of "the public," an agency that licensed information from a contractor could not show it to

anyone without losing the protection of its license, and thus confidentiality for purposes of Exemption 4.

Unsurprisingly, this position stands bereft of authority.

Exemption 4 is "the only appropriate approach for protecting copyrighted documents under

FOIA."  *Hooker v. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 61 n.18 (D.D.C. 2012), *aff'd*,

No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014).  Plaintiff does not dispute this point of law

or provide any authority holding otherwise.  Nor does Plaintiff expressly argue that protecting

copyrighted information by providing it to the government under a limited license is inadequate to

maintain confidentiality—though that is the clear upshot of Plaintiff's position, which is legally

untenable.  "There is no reason . . . that a party should be able to use FOIA as an end run around the

protections afforded by copyright to access information it would otherwise have to pay for, nor should

the Act be read to place agencies in the position of having to disclose information that could later lead to

infringement suits."  *Naumes v. Dep't of the Army*, 588 F. Supp. 3d 23, 40 (D.D.C. 2022).  That is

precisely what Plaintiff seeks to do here—obtain access for free to information it would otherwise have

to pay for—and the Court should accordingly reject the attempt as improper.

In *Naumes*, which involved a request for survey questions that came from copyrighted sources,

the court rejected the plaintiff's argument "that to establish confidentiality, Defendant must show 'that

the millions of people who regularly take the [survey at issue], voluntarily or involuntarily, are bound by

any confidentiality agreement or secure test procedures.'" 588 F. Supp. 3d at 41. There, the court

ordered the defendant to "contact the copyright holders . . . and inform the Court as to their position on

the release of questions from their copyrighted materials," *id.*, before ultimately granting summary

judgment in favor of the defendant, *see Naumes v. Dep't of the Army*, No. 21-1670 (JEB), 2022 WL

17752206, at *6 (D.D.C. Dec. 19, 2022). Here, that information is already before the Court in the form

of the Master Agreement between the agency and the copyright holder, RELX. And the Master

Agreement could not be clearer in prohibiting disclosure to the public. Among other things, under

"Prohibited Uses," the Master Agreement provides:

> You may not, nor may you permit others to:
>
> 1.4.1   use the Legal Research Service in any fashion that may infringe any copyright,
> intellectual property right, or proprietary or property right or interest of us or our
> Suppliers; or
>
> 1.4.2   store in a retrieval system, transfer, publish, distribute, display to others,
> broadcast, sell, or sublicense all of any portion of the Legal Research Service, except as
> expressly provided in Section 1.2; or
>
> [. . .]
>
> 1.4.4   make any portion of the Legal Research Service available to third parties through
> any timesharing system, service bureau, the Internet, or any other similar technology now
> existing or developed in the future.

O'Donnell Decl., Ex. A at p.3.

Plaintiff also argues that confidentiality cannot attach because RELX does not impose "internal

access controls" or a "non-disclosure agreement regarding the electronic library's contents." Opp'n at

16. In the context of copyrighted materials, such extreme secrecy measures are not necessary to

establish that the information is "at least closely held" to qualify for the protection of Exemption 4. The

court in *Naumes* rejected a similar argument (even in the absence of a license agreement between the

1    agency and the copyright holder), noting that the "materials were already copyrighted at the time the

2    Army received them . . . , so adding an additional layer of protection would not necessarily have been

3    needed."  588 F. Supp. 3d at 41.  Plaintiff's reliance on *Animal Legal Defense Fund v. U.S. Food &*

4    *Drug Admin*., Case No. 12-cv-04376-KAW, 2021 WL 3270666 (N.D. Cal. July 30, 2011) is misplaced.

5    There, the Court found that Exemption 4 did not apply because there was "no evidence in the record as

6    to the specific steps taken" by the information's owner to maintain confidentiality.  *Id.* at *5.  Here, in

7    contrast, the steps taken by RELX are set forth in the Master Agreement.  Moreover, *ALDF* does not

8    suggest, as Plaintiff argues, that non-disclosure agreements are necessarily required for protecting

9    confidentiality, particularly in the context of copyrighted information, which was not at issue in that

10   case.  *ALDF* only discussed the use of non-disclosure agreements because the defendants offered

11   evidence that the information at issue had been subject to such an agreement as part of a corporate

12   acquisition.  The court deemed that inadequate because it did not show that any such confidentiality-

13   maintaining steps were taken prior to the acquisition, which was the relevant time period.  *Id.*

14          Plaintiff's argument that the Master Agreement does not constitute an assurance from ICE to

15   RELX that it will maintain the information closely held is likewise unsupported.  To the extent such

16   assurances are required, express written assurances as clear as the use restrictions and prohibitions set

17   forth in the Master Agreement are more than adequate.  Courts have accepted far less formal assurances

18   as sufficient.  *See Am. Small Bus. League v. U.S. Dep't of Def.*, 411 F. Supp. 3d 824, 834 (N.D. Cal.

19   2019) (holding that "written documentation or express assurances by the government" are not required

20   and "[a]n implied assurance suffices"); *Am. Civil Liberties Union v. Fed. Bureau of Prisons*, No. CV 20-

21   2320 (RBW), 2022 WL 17250300, at *8 (D.D.C. Nov. 28, 2022) (finding a declaration stating that the

22   government "agreed to abide" by confidentiality requests from information submitters "during in-person

23   meetings and/or telephone conference calls" sufficient evidence of assurance).  Plaintiff's only

24   counterargument is to point out that the Master Agreement contemplates the possibility of the

25   LexisNexis Legal Research Service being made available in a public library setting.  Opp'n at 17.  Here,

26   again, Plaintiff ignores that disclosure pursuant to the Master Agreement, even in a public library, would

27   occur subject to the recipient's acceptance of the limited license and agreement to abide by extensive

28

restrictions.  O'Donnell Decl., Ex. A at p. 4 (requiring that a library user "require patrons who wish to use the Legal Research Service to agree to abide by the terms of the notice set forth [in] Section 1.5.5. before their use of the Legal Research Service").  Plaintiff's argument also conflates the provision of limited use-based access in a library setting with free disclosure of the complete electronic law library in its native format as sought by Plaintiff's request, which there is no evidence RELX provides to anyone. Accordingly, Plaintiff's challenges to Defendants' withholding of the Offline Lexis Materials under Exemption 4 lack merit and the Court should uphold the exemption.[4]

  **E. Plaintiff's Factually Unsupported Waiver Argument Fails Because ICE Discloses the Offline Lexis Materials Only to Authorized Users with "Strings Attached"**

  Plaintiff's waiver argument is simply a repackaged version of its unsupported arguments, discussed above, that (a) the provision of information pursuant to a limited license is ineffective to protect confidentiality for purposes of Exemption 4; and (b) providing the information to any detained noncitizen in ICE custody, even under a limited license, amounts to free and unfettered disclosure to the general public.  Controlling precedent makes clear, however, that a waiver only occurs when the government discloses "confidential information to the public" "without any limits on further dissemination."  *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1197 (9th Cir. 2011).  This case presents the opposite situation from *Watkins*, where the government made a "no-strings-attached disclosure" of the requested information "without limiting the third-party's ability to further disseminate the information," *id.* at 1197-98, whereas here, disclosure occurs only subject to the Master Agreement, which expressly limits further dissemination.  Consequently, no waiver has occurred.

## III. CONCLUSION

  For the foregoing reasons, Plaintiff's motion for summary judgment should be denied and Defendants' cross-motion granted.

---

[4] Plaintiff does not contest Defendants' showing that their interests would be foreseeably harmed by disclosure, and thus that the requirements of the FOIA Improvement Act of 2016 are satisfied here. *See* Defs.' X-MSJ at 21.

1   //
2   //
3   //
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED: ~~March 26~~August 6, 2024                    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


 /s/ *David M. DeVito*
DAVID M. DEVITO
Assistant United States Attorney